1  SHERYL MOULTON
   IN PRO PER
2  P.O. Box 223581
   Carmel, CA  93922
3  Telephone: (408) 840-2907

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12 SHERYL MOULTON, individually and on      ) Case No.: CV07-05861 JW
   behalf of all others similarly situated,  )
13                                            ) **PLAINTIFF MOULTON'S**
                                              ) **CONSOLIDATED: NOTICE AND (1)**
14              Plaintiffs,                    ) **MOTION FOR LEAVE TO AMEND**
                                              ) **COMPLAINT, MOTION FOR LEAVE**
15        vs.                                  ) **TO AMEND OPPOSITION TO**
                                              ) **DEFENDANTS' MOTION TO DISMISS,**
16 EUGENE BURGER MANAGEMENT                    ) **(2) MOTION TO DISQUALIFY**
   CORPORATION, a California Corporation;      ) **DEFENDANTS' LEGAL COUNSEL;**
17 EUGENE J. BURGER; KEVIN BERG;              ) **AND (3) MOTION TO STRIKE**
   KAREN BRIGG; PHIL FRINK &                   ) **DEFENDANTS' MOTION TO DISMISS**
18 ASSOCIATES, INC.; PHILLIP E. FRINK;        ) **OR, IN THE ALTERNATIVE,**
   GAYLE A. KERN, LTD; GAYLE A. KERN;          ) **PLAINTIFF'S OPPOSITION TO**
19 ULLA CHRISTENSEN, both as individual       ) **DEFENDANTS' MOTION TO DISMISS**
   and Lakeside Plaza Board Director;          )
20 MICHAEL GRADY, both as individual and      )
   Lakeside Plaza Board Director; DANIEL       )
21 JOSEPH, both as individual and Lakeside    )
   Plaza Board Director; FRANK A. PERAU,       )
22 both as individual and Lakeside Plaza Board )
   Director; RICH SVIHLA, both as individual   )
23 and Lakeside Plaza Board Director;          )
   LAKESIDE PLAZA CONDOMINIUM                  )
24 ASSOCIATION; and DOES 1-500.               )
                                              )
25                                            )
                                              )
26                                            )
                                              )
27              Defendants.                    )

28
                            – 1 –

1  **TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE** that Plaintiff *pro se* hereby moves this Court for leave to

3  amend her Complaint. Plaintiff did not have adequate time to prepare a complaint due to the

4  impending illegal foreclosure of her home. Furthermore, Plaintiff seeks leave to amend the

5  opposition to Defendants' Motion to Dismiss.

6  Plaintiff moves this Court for its order to disqualify Defendant Gayle Kern from

7  representing her co-defendants. Plaintiff moves this Court for its order to strike Defendants'

8  Motion to Dismiss or, in the alternative, Plaintiff respectfully requests Defendants' Motion to

9  Dismiss be denied.

10  This motion to disqualify counsel is based on the grounds fiduciary exemption to

11  attorney-client privilege, willful violations of Fair Debt Collection Practices Act, conspiracy to

12  defraud, breach of fiduciary duty, and breach of contract. Gayle A. Kern's representation of her

13  co-defendants represents a <u>clear conflict of interest</u> (as Kern is also a co-defendant in this case).

14  Furthermore, the opposition to Defendants' Motion to Dismiss is based on the grounds

15  there are several federal questions in this matter -Fair Debt Collection Practices Act, Racketeer

16  Influenced and Corrupt Organizations Act ("RICO") §§1961, 1962 1964, et seq. causing this

17  Court to have proper jurisdiction.  Plaintiff's other causes of action include injunction relief,

18  declaratory relief, breach of contract, retaliation, non-uniform enforcement, tortious interference

19  with real estate sale, breach of fiduciary duty, conversion, defamation, extortionate extension of

20  credit, fraud, conspiracy to defraud, fraudulent recordation of an illegal foreclosure/lien,

21  negligence, unconscionability, unfair business practice, Restatement of Torts §§ 549, 552, 652.

22  In the alternative to a Motion to Strike, Defendants' Motion to Dismiss should be denied

23  as there are serious triable issues at hand.

24  The "debt" and pending illegal foreclosure in question should be rendered as null and

25  void namely because:

26  1) They are unequally enforced against Plaintiff, but not among other homeowners

27  (fraud/misrepresentation/tortious interference);

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1      2) They are illegal pursuant to Fair Debt Collection Practices Act (as it has not been

2  validated);

3      3) They breach contract (CC&Rs) which specify homeowner vote required for special

4  assessment;

5      4) They are illegal pursuant to legislation and precedent case law; and

6      5) Plaintiff's home is protected by Homestead Declaration, federal and state laws.

7      The Motion is based upon this Notice of Motion and the accompanying Memorandum of

8  Points and Authorities, the concurrently filed Declaration of Sheryl Moulton, and

9  evidence/exhibits attached hereto, such further papers as Plaintiff Moulton may file in

10  connection with this motion, such further evidence or argument as may be presented at or before

11  hearing on this motion and all pleadings, files and records in this action.

12

13

14  Dated: December 23, 2007                    Respectfully submitted,

15                                               SHERYL MOULTON

16                                               By:_____/s/*Sheryl Moulton*_____

17                                                     Sheryl Moulton
                                                        In Pro Per

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit by Plaintiff Sheryl Moulton is brought pursuant to the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and several other federal questions causing this Court to have proper jurisdiction – including Racketeer Influenced and Corrupt Organizations Act ("RICO") §§1961, 1962 1964, et seq. Plaintiff's other causes of action include injunction relief, declaratory relief, breach of contract, retaliation, non-uniform enforcement, tortious interference with real estate sale, breach of fiduciary duty, conversion, defamation, extortionate extension of credit, fraud, conspiracy to defraud, fraudulent recordation of an illegal foreclosure/lien, negligence, unconscionability, unfair business practice, Restatement of Torts §§ 549, 552, 652.

Moulton seeks declaratory and injunctive relief from the imminent foreclosure of her home, as well as actual and punitive damages as well as injunctive relief for harm caused by the wrongful foreclosure of her home for her declination to pay an invalid, unequally enforced illegal assessment (a proration of a nearly $400,000 special assessment that **required** a homeowner vote).

Plaintiff *pro se* hereby moves this Court for leave to amend her Complaint. Plaintiff did not have adequate time to prepare a complaint due to the impending illegal foreclosure of her home. Furthermore, Plaintiff seeks leave to amend the opposition to Defendants' Motion to Dismiss.

Plaintiff moves this Court for its order to disqualify Defendant Gayle Kern from representing her co-defendants. Plaintiff moves this Court for its order to strike Defendants' Motion to Dismiss or, in the alternative, Plaintiff respectfully requests Defendants' Motion to Dismiss be denied.

This motion to disqualify counsel is based on the grounds fiduciary exemption to attorney-client privilege, willful violations of Fair Debt Collection Practices Act, conspiracy to

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  defraud, breach of fiduciary duty, and breach of contract. Gayle A. Kern's representation of her

2  co-defendants represents a <u>clear conflict of interest</u> (as Kern is also a co-defendant in this case).

3        Furthermore, the opposition to Defendants' Motion to Dismiss is based on the grounds

4  there are several federal questions in this matter -Fair Debt Collection Practices Act, Racketeer

5  Influenced and Corrupt Organizations Act ("RICO") §§1961, 1962 1964, et seq. causing this

6  Court to have proper jurisdiction.  Plaintiff's other causes of action include injunction relief,

7  declaratory relief, breach of contract, retaliation, non-uniform enforcement, tortious interference

8  with real estate sale, breach of fiduciary duty, conversion, defamation, extortionate extension of

9  credit, fraud, conspiracy to defraud, fraudulent recordation of an illegal foreclosure/lien,

10 negligence, unconscionability, unfair business practice, Restatement of Torts §§ 549, 552, 652.

11       In the alternative to a Motion to Strike, Defendants' Motion to Dismiss should be denied

12 as there are serious triable issues at hand.

13       The following renders the "debt" and pending illegal foreclosure in question as null and

14 void namely because:

15       1) the debt is unequally enforced against Plaintiff, but not among other homeowners

16 (fraud/misrepresentation/tortious interference);

17       2) illegal pursuant to Fair Debt Collection Practices Act (as it has not been validated);

18       3) breaches contract (CC&Rs) which specify homeowner vote required for special

19 assessment;

20       4) illegal pursuant to legislation and precedent case law; and

21       5) Plaintiff's home is protected by Homestead Declaration, state and federal laws.

22

23       Furthermore, Plaintiff and other Lakeside Plaza homeowners have been refused access to

24 financial records (or copies thereof) and refused financial records for several years' of

25 assessments totaling approximately $1,000,000 (including nearly $1/2 million from an illegally

26 assessed special assessment). Defendants' refusal to provided financial records is a blatant and

27 willful violation of Fair Debt Collection Practices Act, federal and state laws. Defendants'

28

– 5 –

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1   refusal to Lakeside Plaza financial records seems to suggest it is perfectly fine to accept

2   homeowners' money, but just not account for how/where homeowners' money it is spent.

3       On December 10, 2007, Defendants Ulla Christensen, Michael Grady, Daniel Joseph,

4   Frank A. Perau, Rich Svihla, filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for

5   failure to state a claim upon which relief can be granted.

6       First, Plaintiff Moulton objects to the motion for a 12(b)(6) dismissal as there are valid

7   claims that were properly pled in Plaintiff's Complaint, namely, the fact Plaintiff's home is

8   facing an illegal foreclosure due to an invalid "debt".

9       Second, Defendants' attorney, Gayle A. Kern is a co-defendant in this matter involving

10  conspiracy to defraud and should be disqualified as Defendants' counsel.

11      Third, Kern should be disqualified per fiduciary exemption to attorney-client privilege.

12      Fourth, Kern's representation is a clear conflict – Kern cannot possibly represent her

13  clients to the best of her ability if she is also their co-defendant.

14      Fourth, Plaintiff contends Defendants' motion has not made a showing of good cause.

15      The following renders the "debt" and pending illegal foreclosure in question as null and

16  void namely because: 1) the debt is unequally enforced against Plaintiff, but not among other

17  homeowners (fraud/misrepresentation/tortious interference); 2) illegal pursuant to Fair Debt

18  Collection Practices Act (as it has not been validated); 3) breaches contract (CC&Rs) which

19  specify homeowner vote required for special assessment; 4) illegal pursuant to legislation and

20  precedent case law; and 5) Plaintiff's home is protected by Homestead Declaration, state and

21  federal laws..

22      This matter involves an unequally enforced homeowners association special assessment

23  (which breaches contract/CC&Rs), illegally enforced against Plaintiff causing her the foreclosure

24  and loss of her home. The special assessment in question was originally approximately $400,000

25  (Plaintiff's proration of "debt" was approximately $1,700). However, Defendants have conspired

26  to inflate this "debt" of $1,700 to nearly $4,000 (without any validation of this "debt" to this

27  Court or Plaintiff).

28

– 6 –

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1

2

## II.    STATEMENT OF FACTS

3      Plaintiff Sheryl Moulton purchased a condo in the Lakeside Plaza Condominium

4 Association ("Association") on or about November 2005. The condominium community is

5 subject to Declaration of Covenants, Conditions, and Restrictions ("CC&Rs").

6      The mortgage for said condo was originally with Century 21 Mortgage, but later sold to

7 Chase Mortgage.

8      Lakeside Plaza Condominium Association was formerly managed by Eugene Burger

9 Management Corporation ("EBMC), owned by Eugene J. Burger, and its agents Kevin Berg and

10 Karen Brigg.

11      Defendant Eugene J. Burger, was previously up on criminal indictments (case later

12 settled allegedly per Rule of Lenity) charging six counts of theft from a program receiving

13 federal funds and aiding and abetting (18U.S.C. § 666(a)(1)(A); six counts of money-laundering

14 and aiding and abetting in violation of 18 U.S.C. § 1956(a)(1)(B)(i); thirty-three counts of

15 violating the Anti-Kickback Act and aiding and abetting (41 U.S.C. § 53 and 18 U.S.C.; and one

16 count of obstruction of justice and aiding and abetting in violation of 18 U.S.C. § 1505. The

17 indictment alleged that Burger was the owner of Eugene Burger Management Corporation

18 ("EBMC"), a property management company which was the management agent for **50 - 70**

19 **multi-family housing developments in several states**. United States v. BURGER, 2000 U.S.

20 Dist. LEXIS 22066 (N.D.Cal.). *See* Exhibit 1

21      Eugene Burger, yet again, was implicated in another matter involving a conviction for

22 insurance fraud. Defendant Michael B. Kuimelis , doing business as MBK Insurance, pled guilty

23 in federal district court in San Francisco, CA , to one felony count of criminal contempt and was

24 fined $20,000 and sentenced to three years probation, six months electronic home detention, and

25 150 hours of community service. Kuimelis submitted invoices for insurance premiums under

26 Eugene Burger Manage -( EBMC ) master insurance policy included a commission and a service

27 fee of 15-percent, in addition to the true cost of insurance. The service fee was then split between

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1  MBK and EBMC . Kuimelis failed to disclose the true percent that he retained from the master

2  insurance policy, and **tried to cover up his acts by tampering with a government witness.** In

3  addition, EBMC's portion of the service fee was paid to the Friandes Group, Inc of Friandes.

4  Eugene Burger's wife was president of Friandes at the time. <u>United States Department of</u>

5  <u>Housing and Urban Development</u> *Office of Inspector General Semiannual Report to Congress*

6  *April 1, 2002 - September 30, 2002 See* Exhibit 2

7      Kern regularly serves as a "collection agent" for homeowners associations (many of them

8  managed by Eugene Burger Management Corporation), upon information and belief. She also

9  regularly processes condominium liens and foreclosures – thereby, constituting a "collection

10  agent" under Fair Debt Collection Practices Act ("FDCPA").

11      Defendants Ulla Christensen, Michael Grady, Daniel Joseph, Frank A. Perau, and Rich

12  Svihla are Lakeside Plaza Condominium Association Board Directors. These Defendants are

13  being sued **both** as individuals and as in the capacities as Lakeside Plaza Board Directors, as

14  Plaintiff alleges the have acted in bad faith and have conspired to defraud homeowners of nearly

15  $400,000 special assessments (without a required homeowner vote), and have processed

16  foreclosures on those unwilling to pay the extortionate illegal special assessment. Furthermore,

17  Plaintiff has witnesses and evidence proving some have not paid the special assessment, and that

18  it the nearly $400,000 special assessment is unequally enforced.

19      Defendant Phil Frink & Associates, Inc. is upon belief and information is a "collection

20  agency" owned by Phillip E. Frink.  The "foreclosure" of Plaintiff's home was processed by

21  collection agency, Phil Frink & Associates, Inc.

22      One underlying issue here is contractual - whether the Association may levy a special

23  assessment of nearly $400,000 against homeowners (without a homeowner vote) when it is in

24  direct violation of law and Lakeside Plaza CC&Rs.

25      The foreclosure of Plaintiff's home not uniformly enforced, meanwhile other

26  homeowners have not paid the special assessment and have no foreclosure proceedings against

27  them. Plaintiff has evidence and witnesses proving non-uniform enforcement and fraud.

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

### III.    ARGUMENT

2    The "debt" and pending illegal foreclosure in questions should be rendered as null and

3    void namely because:

4    1) they are unequally enforced against Plaintiff, but not among other homeowners

5    (fraud/misrepresentation/tortious interference);

6    2) they are illegal pursuant to Fair Debt Collection Practices Act (as it has not been

7    validated);

8    3) they breach contract (CC&Rs) which specify homeowner vote required for special

9    assessment;

10    4) they are illegal pursuant to legislation and precedent case law; and

11    5) Plaintiff's home is protected by Homestead Declaration, federal and state laws.

12

13    ### BREACH OF CONTRACT/CC&Rs – SPECIAL ASSESSMENT REQUIRES

14    ### HOMEOWNER VOTE

15    Defendants breach CC&Rs state that a special assessment **requires** homeowner vote –

16    there was no homeowner vote for the nearly $400,000 special assessment:

17        § 6.2 (in relevant part)

18            In the event any special assessment…when added to the annual
            assessment causes the **total annual assessment** for said calendar
19            year to be **more than 25% higher** than the annual assessment for
            the prior year, the **vote or written consent of both classes of**
20            **members shall be required for such special assessmen**t;
            (emphasis added) *See* Exhibit 3
21

22

23    Plaintiff's normal HOA dues were $143.09 monthly, however, with the illegal special

24    assessment, Plaintiff's dues were raised to $285.07 monthly. The difference is $141.98, nearly

25    100% (99.2%) increase in monthly dues. To almost double monthly fees fixed-income,

26    especially on elderly, disabled, and fixed-income homeowners, it was not only a breach of

27    contract, it was simply extortionate.

28

– 9 –

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1

2  **STATE LAW VIOLATION – GOVERNOR VETOED BILL AB396 ASSESSMENTS**

3  **WITHOUT HOMEOWNER VOTE**

4        June 15, 2007, Governor Jim Gibbons vetoed Assembly Bill 396. This bill would have

5  allowed homeowners associations to increase assessment without homeowner vote. *See* Exhibits

6  4,5

7        Nearly one month later **after** Governor Gibbons' veto of assessments without

8  homeowner vote, in bad faith, the Lakeside Plaza Board had a Lien recorded against Plaintiff's

9  home July 5, 2007. *See* Exhibit 6 This lien was recorded, in bad faith, nearly 1 month after

10  Governor Gibbons vetoed Assembly Bill 396 ("AB 396"). Governor Gibbons **vetoed** the bill that

11  would have allowed increased assessments without a homeowner vote, therefore, rendering the

12  lien and later foreclosure as null and void. However, in spite of this vetoed bill, the Defendants,

13  in bad faith, still pursue foreclosure proceedings against Plaintiff home, therefore, the reason for

14  this legal action – to save Plaintiff's home from illegal foreclosure.

15        While Defendants contend funding the reserves is mandatory per state law – state law

16  also **requires homeowner vote for increased assessments** per Governor Gibbons' veto of AB

17  396. Per NRS 116.3115(2)(b), State law allows that "the association shall establish *adequate*

18  reserves, but not *fully* funded – there is a crucial difference between the two – the difference

19  between a homeowner facing foreclosure.

20        The Board had the option to assess over a 4-5 year period of time (which would have

21  complied with CC&Rs that provides for assessments less than **25% per year increase do not**

22  **require a homeowner vote**). However, a nearly 100% increase in assessments is exorbitant and

23  extortionate – and homeowners did not approve.

24

25            **NRS 116.3115  Assessments for common expenses; funding of**
            **adequate reserves; collection of interest on past due**

26            **assessments; calculation of assessments for particular types of**
            **common expenses; notice of meetings regarding assessments**

27            **for capital improvements**…

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

2.  Except for assessments under subsections 4 to 7, inclusive:

(a) All common expenses, including the reserves, must be assessed against all the units in accordance with the allocations set forth in the declaration pursuant to subsections 1 and 2 of <u>NRS 116.2107</u>.

(b) The association shall establish adequate reserves, funded on a reasonable basis, for the repair, replacement and restoration of the major components of the common elements. The reserves may be used only for those purposes, including, without limitation, repairing, replacing and restoring roofs, roads and sidewalks, and must not be used for daily maintenance. The association may comply with the provisions of this paragraph through a funding plan that is designed to allocate the costs for the repair, replacement and restoration of the major components of the common elements over a period of years if the funding plan is designed in an actuarially sound manner which will ensure that sufficient money is available when the repair, replacement and restoration of the major components of the common elements are necessary.

Arbitrator's decision <u>Friedrich v. Rancho Bel Air Homeowner's Association (Carson City, NV)</u> also reinforces the fact that boards obtain a favorable vote from residents to implement special assessments.  *See* Exhibit 7

**FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS - UNEQUALLY ENFORCED "DEBT" – ACTS OF OMISSION/FRAUD/MISREPRESENTATION**

Furthermore, the defendants have engaged in an act or omission prohibited by the FDCPA. 15 U.S.C. § 1692 et seq. this alleged "debt" is **<u>unequally enforced</u>**. Furthermore, Defendants even admit that a homeowner was allowed certain "accommodations" for paying the assessment. Plaintiff made this same request, and was denied. *See* Exhibit 8.

Defendants even admit a homeowner was provided special accommodations. *See also* Defendants' Motion to Dismiss Exhibit "D" ¶19.

Lakeside Plaza Condominium Association Board Directors instituted a nearly $400,000 special assessment against homeowners without a required homeowner vote. Defendants even admit that a minority of people chose **not** to pay the reserve *See* Defendants' Motion to Dismiss

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  (3:3-4), and yet, there are only 2 foreclosures proceedings (including the foreclosure of

2  Plaintiff's home). *See* Exhibit 9. There are 6 other homeowners with liens (one as far back as

3  January 2006), however, these homeowners have no foreclosures (notices of default) recorded

4  against their properties.

5      Furthermore, Plaintiff is prepared to present witnesses who will testify they did not pay

6  the illegal special assessment in its entirety, and yet, they, too, have **no** liens, **no** foreclosures

7  against their homes –again, unequal enforcement.

8      Nevada Revised Statute ("NRS") **116.2107 provides that a homeowners association**

9  **CC&Rs (Declaration) may not discriminate in favor (of certain units)**:

10
11          **NRS 116.2107  Allocation of allocated interests.**
              1.  The declaration must allocate to each unit:
12          (a)      In a condominium, a **fraction or percentage of undivided
            interests in the common elements and in the common expenses
13          of the association (**NRS 116.3115**)** and a portion of the votes in
            the association;…
14

15          **2.**      The declaration must state the formulas used to establish
            allocations of interests. **Those allocations may not discriminate
16          in favor of units owned by the declarant or an affiliate of the
            declarant. (emphasis added).**
17

18

19      Only **one day** after Plaintiff Moulton filed her Complaint against Defendants, Defendant

20  Lakeside Plaza Condominium Association then, in turn, sued co-defendant Eugene Burger

21  Management Corporation[1]. Lakeside Plaza Condo v. Eugene Burger Mgt. Case No. CV07-

22

23  _____

24      [1] Defendant Eugene J. Burger, was previously up on criminal indictments (case later settled allegedly per
    Rule of Lenity) charging six counts of theft from a program receiving federal funds and aiding and abetting
25  (18U.S.C. § 666(a)(1)(A); six counts of money-laundering and aiding and abetting in violation of 18 U.S.C. §
    1956(a)(1)(B)(i); thirty-three counts of violating the Anti-Kickback Act and aiding and abetting (41 U.S.C. § 53 and
26  18 U.S.C.; and one count of obstruction of justice and aiding and abetting in violation of 18 U.S.C. § 1505. The
    indictment alleged that Burger was the owner of Eugene Burger Management Corporation ("EBMC"), a property
27  management company which was the management agent for **50 - 70 multi-family housing developments in
    several states**. United States v. BURGER, 2000 U.S. Dist. LEXIS 22066 (N.D.Cal.).
28
                                    – 12 –

02674, Second Judicial District Court State of Nevada, Washoe County.  *See* Exhibit 10

Lakeside Plaza Condominium Association's complaint alleges EBMC's non-uniform

enforcement of their collection policies:

> Lakeside Plaza Condominium Association v. EBMC Complaint ¶ 9:
>
> Defendant EBMC knew that a homeowners association **may not apply different collection policies to different members** and knew that the adoption of any policy is within the sole discretion of the Board of Directors of Lakeside Plaza." *See* Exhibit 10

> Lakeside Plaza Condominium Association v. EBMC Complaint ¶ 27:
> The community manager is required to remind an Association to comply with all laws in accordance with its obligations of NAC 116.300(14). *See* Exhibit 10

> Lakeside Plaza Condominium Association v. EBMC Complaint ¶ 30:
> Defendant EBMC knew, or should have known, that the very nature of the common interest community prohibits any disparate treatment of members. *See* Exhibit 10

> Lakeside Plaza Condominium Association v. EBMC Complaint ¶ 17:
> On information and belief, taking the actions that it did, defendant EBMC acted for reasons of self-interest and gain. *See* Exhibit 10

This case, along with other Lakeside Plaza homeowners' litigation [2] regarding the

illegally imposed special assessment, proves there are serious triable issues regarding this matter.

**FAIR DEBT COLLECTION PRACTICES ACT VIOLATION - NO VALIDATION OF ALLEGED DEBT**

---

Burger, yet again, was implicated in another matter involving a conviction for insurance fraud. United States Department of Housing and Urban Development *Office of Inspector General Semiannual Report to Congress April 1, 2002 - September 30, 2002*

[2] Friedman v. Lakeside Plaza Condo, Case No. CV07-01774, Second Judicial District Court State of Nevada, Washoe County) – Lakeside Plaza condominium owner's lawsuit to revoke the nearly $400,000 assessment illegally assessed Lakeside Plaza homeowners without a required homeowner vote.

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1      First and foremost, an illegal, invalid debt renders foreclosure illegal. Defendants have

2 yet to VALIDATE any debt owed as required by Fair Debt Collection Practices Act to this Court

3 or to Plaintiff. Defendants claim in their Motion to Dismiss that approximately $4,000 is due,

4 and yet, their own exhibit shows only approximately $1,600 due. *See* Defendants' Motion to

5 Dismiss Exhibit "C" The $4000 needs to be **validated and proven** – Defendants fail to validate

6 this "debt" even to this Court.

7      Furthermore, Defendants and Defendant Gayle Kern have provided varying amounts due.

8 A letter dated January 9, 2007 from Defendant Karen Brigg/EBMC demanded Plaintiff pay in

9 full $1,761.25. *See* Exhibit 11

10      January 15, 2007, Defendant Frank Perau emailed a letter to Plaintiff in violation of

11 FDCPA (i.e. misrepresentation of "debt" amount due, retaliation and threats of additional legal

12 fees to attempting to get validation of said "debt", etc.. *See* Exhibit 12 Perau's email stated:

13
14      First, EBMC should not have sent you the "delinquent notice" that
      you received.  Your account has already been forwarded to our
      legal counsel to begin the collection of your past due assessments.

15
16      Second, the information contained in the "delinquent notice" was
      incorrect.  The clerk that sent the notice indicates that you have a

17      delinquent sum of $1,761.25.  That amount is the "total" amount
      owed on your account (as shown on the ledger).  You have missed

18      your last five (5) payments for the Reserve Fund Assessment.  That
      delinquency is $709.90 ($141.98 x 5).

19
20      However, upon examining your ledger I noticed that EBMC's
      accounting department had failed to post additional charges to your

21      account and that will be dealt with on Tuesday, January 16.  You
      see, pursuant to NRS 116.3115(6) **the association has the right to**

22      **assess all expenses to an owner for all costs that arise out of**
      **that owner's misconduct.**  You should have been charged for all

23      attorney's fees/costs that the association incurred to write you
      letters regarding your violations of our governing documents and

24      to notice you of and to attend your hearing as a result of those
      violations.  Again, those charges will be added and you will

25      receive a new statement of your account.
26

27      The January 15, 2007 letter from Defendant Perau stated a delinquency of $709.90,

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

One month later, a letter dated February 15, 2007 from Defendant Gayle Kern entitled "Notice of Intent to Proceed with Notice of Delinquent Assessment and Foreclosure" stated "Our records reflect that as of February 1, 2007, you owe the amount of $1,040.24 for the Special Reserve Assessment through February. *See* Exhibit 13 Unfortunately, you have failed to make arrangements or bring the account current. In addition you are now responsible for attorney's fees and costs in the amount of $205.00 for a total now due of $1,245.24" – a difference of $535.34, and yet all these discrepant varying total amounts due, and no validation under FDCPA.

FDCPA provides that a letter used by attorneys in debt collection, that made **blanket statement of different amounts** that debtors might owe depending on when their delinquent payments began, did not "state amount of debt owed," in context of Fair Debt Collection Practices Act (FDCPA), since letter put those debtors that were not delinquent in making payments at risk of being deceived that they owed full amount when, in fact, they may not. Consumer Credit Protection Act, § 809(a)(1), as amended, 15 U.S.C.A. §1692g(a)(1).

Plaintiff's lawsuit is not the only legal action taken against these Defendants for this wrongful, fraudulent assessment. *See*  Friedman v. Lakeside Plaza Condo, CV07-01774 District Court, Reno, Nevada. *See* also Defendants' Motion to Dismiss Exhibit "D".

Furthermore, Plaintiff and other Lakeside Plaza homeowners have been refused access to financial records (or copies thereof) and refused financial records for several years' of assessments totaling approximately $1,000,000 (including nearly $1/2 million from an illegally assessed special assessment). Defendants' refusal to provided financial records is a blatant and willful violation of Fair Debt Collection Practices Act, federal and state laws. Defendants' refusal to Lakeside Plaza financial records seems to suggest it is perfectly fine to accept homeowners' money, but just not account for how/where homeowners' money it is spent.

> **NRS 116.31175 Maintenance and availability of books, records and other papers of association: General requirements; exceptions; general records concerning certain violations; enforcement by Ombudsman; limitations on amount that may be charged to conduct review.**
> 1.    Except as otherwise provided in this subsection, the executive board of an association shall, upon the written request of

a unit's owner, make available the books, records and other papers of the association for review during the regular working hours of the association, including, without limitation, all contracts to which the association is a party and all records filed with a court relating to a civil or criminal action to which the association is a party.

(c) Must be maintained in an organized and convenient filing system or data system that allows a unit's owner to search and review the general records concerning violations of the governing documents.

(b) The minutes of a meeting of the executive board which must be maintained in accordance with NRS 116.31083.

**NRS 116.31177  Maintenance and availability of certain financial records of association; provision of copies to units' owners and Ombudsman.**

1.  The executive board of an association shall maintain and make available for review at the business office of the association or some other suitable location within the county where the common-interest community is situated or, if it is situated in more than one county, within one of those counties:

(a) The financial statement of the association;

(b) The budgets of the association required to be prepared pursuant to NRS 116.31151; and

(c) The study of the reserves of the association required to be conducted pursuant to NRS 116.31152.

2.  The executive board shall provide a copy of any of the records required to be maintained pursuant to subsection 1 to a unit's owner or the Ombudsman within 14 days after receiving a written request therefore. The executive board may charge a fee to cover the actual costs of preparing a copy, but not to exceed 25 cents per page.

(Added to NRS by 1999, 2997; A 2003, 2246)

**NRS 116.3118  Maintenance and availability of certain financial records necessary to provide information required for resale of units; right of units' owners to inspect, examine, photocopy and audit records of association.**

1.  The association shall keep financial records sufficiently detailed to enable the association to comply with NRS 116.4109.

2.  All financial and other records of the association must be:

(a) Maintained and made available for review at the business office of the association or some other suitable location within the

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

county where the common-interest community is situated or, if it is situated in more than one county, within one of those counties; and

    (b) Made reasonably available for any unit's owner and his authorized agents to inspect, examine, photocopy and audit.

    (Added to NRS by 1991, 571; A 1995, 2231; 2003, 2247)

**NRS 116.31183  Retaliatory action prohibited.**  An executive board, a member of an executive board or an officer, employee or agent of an association shall not take, or direct or encourage another person to take, any retaliatory action against a unit's owner because the unit's owner has:

    1.  Complained in good faith about any alleged violation of any provision of this chapter or the governing documents of the association; or

    2.  Requested in good faith to review the books, records or other papers of the association.

    (Added to NRS by 2003, 2218)

## FAIR DEBT COLLECTION PRACTICES ACT DEEMS HOMEOWNER ASSOCIATION FEES & ASSESSMENTS AS "DEBTS"

The HOA sought to dismiss on the ground that HOA dues are not "consumer debt" arising out of a "transaction" under the FDCPA.  Ninth Circuit, stated that FDCPA "debt" is not limited to credit extensions, claiming because the services provided by the HOA in exchange for dues are primarily for personal, family, or household purposes, the HOA dues constitute "consumer debt."

In the context of the Fair Debt Collection Practices Act (FDCPA), a "debt" is created whenever a transaction creates an obligation to pay; a "transaction" must involve, at a minimum, some kind of business dealing or other consensual obligation. Consumer Credit Protection Act, § 803, as amended, 15 U.S.C.A. § 1692a.

Condominium assessments are debts within the definition of the FDCPA. Ladick v. Van Gemert, 146 F.3d 1205, 1207 (10th Cir.), cert. denied, 525 U.S. 1002, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998); Newman v. Boehm, Pearlstein and Bright, Ltd., 119 F.3d 477, 482 (7th Cir.1997); Fuller v. Becker and Poliakoff, P.A., 192 F.Supp.2d 1361, 1368 (M.D.Fla.2002); Thies v. Law Offices of William A. Wyman, 969 F.Supp. 604, 608 (S.D.Cal.1997); Bryan v.

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    _Clayton,_ 698 So.2d 1236, 1237 (Fla. 5th DCA 1997), _rev. denied,_ 707 So.2d 1123 (Fla.1998),

2    _cert. denied,_ 524 U.S. 933, 118 S.Ct. 2334, 141 L.Ed.2d 706 (1998).

3        Because no offer or extension of credit is required, an obligation to pay association dues

4    is covered by the FDCPA. Caron v. Charles E. Maxwell, P.C., 48 F.Supp.2d 932, 935

5    (D.Ariz.1999). As long as a transaction creates an obligation to pay, a debt is created for

6    purposes of the FDCPA.; Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 924 (11th

7    Cir.1997).

8        The court noted that Riter had been overturned by the Seventh Circuit in Newman v.

9    Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477 (7th Cir. 1997) (past-due condominium fees are

10   a debt under the FDCPA because assessments used to improve or maintain commonly-owned

11   areas qualify as personal, family, or household uses and confer a direct benefit on residents). The

12   court held that the fact that many households may use or benefit from a common area does not

13   logically diminish the primary nature of the service.

14       The court analogized to a consumer debt owed to a health club, whose facilities are

15   jointly used by many. Newman v. Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477 (7th Cir.

16   1997)

17       However, in Bass v. Stolper, Kiritzinsky, Brewster & Neider, S.C., 111 F.2d 1322, 1326

18   (7th Cir. 1997), the Seventh Circuit ruled that FDCPA debt need not involve an extension of

19   credit. All that is required is a transaction creating an obligation to pay (e.g., a dishonored

20   check). The court held that the purchase of the homes was the underlying "transaction," even if

21   the precise amount and timing of future dues had not yet been determined.

22       The court also held that the subject of the transaction, as well as the intended use of the

23   dues, satisfied the "personal, family, or household purpose" requirement, even if the dues were

24   used to improve or maintain commonly-owned areas and more than a single household stood to

25   benefit. The HOA's argued that the dues were more like taxes, which are not considered "debts"

26   under the FDCPA because they generally are used for communal rather than personal, family, or

27   household purposes. The court held, however, that the dues here had a more specific household

28

– 18 –

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1    purpose than taxes collected by a governmental entity because they served to improve and

2    maintain commonly-owned areas used by each unit owner.

3        Ladick v. Gemert, 146 F.3d 1205 (10th Cir. 1998): A homeowner sued an HOA law firm

4    over demand letters for condominium fees that allegedly failed to include the "validation notice"

5    required by section 1692g of the FDCPA, and failed to disclose that the law firms were

6    attempting to collect a debt and that any information obtained would be used for that purpose, as

7    required by section 1692e(11). The law firm argued that the condo fee was more like a tax than a

8    debt, because the HOA was similar to a municipality. The court noted that in Snow v. Riddle,

9    143 F.2d 1350 (10th Cir. 1998), the Tenth Circuit had followed the Seventh Circuit and several

10   other courts in ruling that FDCPA debt did not require an extension of credit. (See also Duffy v.

11   Landberg, 133 F.3d 1120, 1123-24 (8th Cir. 1998); Charles v. Lundgren & Assoc., P.C., 119

12   F.3d 739, 742 (9th Cir. 1997); Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 924 (11th

13   Cir. 1997).) The court also held that the dues arose out of a "transaction," rejecting the HOA's

14   argument that the homeowner's condo purchase agreement was a transaction or agreement with

15   the previous homeowner rather than with the HOA itself.

16       Following the Seventh Circuit's reasoning in Newman and the Virginia district court's

17   reasoning in Thies, the court held that the obligation to pay condo assessments arises in

18   connection with the purpose of the condo itself. The court also followed the reasoning of

19   Newman and Thies in concluding that the assessment has a primarily personal, family, or

20   household purpose despite its communal aspects.

21       Maintenance assessments from recreational property memberships were "debts," subject

22   to Fair Debt Collection Practices Act (FDCPA), on basis that assessments were for personal or

23   family purposes; interests that consumers bought in recreational vehicle parks were for personal

24   or family purposes, consumers' maintenance assessments arose out of purchase of interest in

25   parks, and assessments were used to maintain parks for benefit of parks. Consumer Credit

26   Protection Act, § 803, as amended, 15 U.S.C.A. § 1692a.

27

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1    **DEFENDANTS GAYLE A. KERN, LTD, GAYLE A. KERN, PHIL FRINK &**

2    **ASSOCIATES, INC., PHILLIP E. FRINK ARE DEBT COLLECTORS**

3    Because Congress repealed the exemption for attorneys who collected a debt as an

4    attorney on behalf of and in the name of a client in an earlier version of this statute, Congress

5    intended that lawyers be subject to the Fair Debt Collection Practices Act (FDCPA) whenever

6    they meet the "debt collector" definition. Consumer Credit Protection Act, § 803, as amended, 15

7    U.S.C.A. § 1692a. *See also* <u>Heintz v. Jenkins</u>, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d

8    395 (1995).

9    Consumers established that attorneys "regularly collected or attempted to collect debts"

10   and were "debt collectors," for purposes of Fair Debt Collection Practices Act (FDCPA), where

11   attorneys admitted that they did collection and foreclosure work and listed collection and

12   foreclosure as their practice areas in firm profile. Consumer Credit Protection Act, § 803, as

13   amended, 15 U.S.C.A. § 1692a.

14   Language used in letter by attorneys in debt collection, that stated that debtors would

15   incur "a substantial amount of attorney's fees and costs, which debtors are personally liable for

16   and which can also constitute a judgment against any property debtors own, was a "false

17   representation" and "misleading" to a least sophisticated consumer, in context of Fair Debt

18   Collection Practices Act (FDCPA), since an unsophisticated consumer would have very likely

19   interpreted letter to mean that there was no chance in prevailing once lawsuit was filed.

20   Consumer Credit Protection Act, § 807, as amended, 15 U.S.C.A. § 1692e.

21   January 15, 2007, Defendant Frank Perau emailed a letter to Plaintiff stating, "Your

22   account has already been forwarded to our legal counsel to begin the collection of your past due

23   assessments." *See* Exhibit 12. In a February 15, 2007 letter from Defendant Gayle Kern, she

24   directed Plaintiff to make payment at her law office: "Payment of $1,245.24 must be made to the

25   Lakeside Plaza Condominium Association, care of my address identified above at 5421 Kietzke

26   Lane, Suite 200, Reno, NV 89511." *See* Exhibit 13

27

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Defendant Gayle Kern regularly serves as a "collection agent" for homeowners associations (many of them managed by Eugene Burger Management Corporation), upon information and belief. She also regularly processes condominium liens and foreclosures – thereby, constituting a "collection agent" under Fair Debt Collection Practices Act ("FDCPA").

A law firm that is occasionally engaged in collection activities is considered a "collector" *See* 131 Cong Rec. H10534-H10536 (daily ed., Dec. 2, 1985), *See* also <u>National Consumer Law Center, Fair Debt Collection</u> 4.2.2., 4.2.6.3 (Boston: 2d ed. 1991 & 1994 Supp.).

## **HOMESTEAD DECLARATION VIOLATION – INVALID CONDO RIDER RENDERS LIEN AND FORECLOSURE INVALID**

January 31, 2006, Plaintiff recorded a Homestead Declaration on her property. *See* Exhibit 14. Plaintiff's original property purchase was $130,500. Homestead Exemption provides for up to $350,000 exemption. A new bill was recently signed protecting up to $550,000.

A Condominium Rider between Lakeside Plaza Condominium Association, Century 21, and Plaintiff was recorded November 15, 2005, on Plaintiff's home title. *See* Exhibit 15. However, Chase Mortgage now holds the mortgage on Plaintiff's home, and, upon belief and information, no new condominium rider was agreed upon by Chase Mortgage and there is allegedly **no prior consent** with Chase Mortgage, rendering the present Condo Rider as null and void – as Century 21 no longer owns the home loan.

Plaintiff contends per NRS 115.010(3)(b), Chase Mortgage is allegedly not a party consenting to the condo rider to Plaintiff's mortgage, nor does the condo rider provide for a successor clause, thereby rendering the present condo rider as null and void, and associated liens and foreclosures as null and void. Therefore, without prior consent by Chase Mortgage, Plaintiff's home cannot be foreclosed upon, as provided by the Homestead Declaration which protects Plaintiff's home from a forced a sale:

> **Section 1.  NRS 115.010** is hereby amended to read as follows:
> 115.010  1.  The homestead is not subject to forced sale on execution or any final process from any court, except as otherwise

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

provided by subsections 2, 3 and 5, and NRS 115.090 **[.] *and except as otherwise required by federal law*….**

   3. Except as otherwise provided in subsection 4, the exemption provided in subsection 1 does not extend to process to enforce the payment of obligations contracted for the purchase of the property, or for improvements made thereon, including any mechanic's lien lawfully obtained, or for legal taxes, or for:

   (a) Any mortgage or deed of trust thereon executed and given; or

   (b) **Any lien to which prior consent has been given through the acceptance of property subject to any recorded declaration of restrictions, deed restriction, restrictive covenant or equitable servitude, specifically including any lien in favor of an association pursuant to NRS 116.3116 or 117.070, (emphasis added)**

Furthermore, February 5, 2007, a second mortgage transacted in California was recorded against Plaintiff's property. Again, the condo rider has no legal effect on this second mortgage, nor was there prior consent by the second mortgagee. This California security interest against Plaintiff's property takes a first charge over the "debt" and wrongful foreclosure in question.

**CONSTITUTIONAL RIGHTS VIOLATIONS, JUDICIAL MISCONDUCT, MALICIOUS PROSECUTION –MUST BE HEARD IN FORUM OTHER THAN NEVADA COURTS FOR A FAIR HEARING**

**QUESTION FINANCIALS + QUESTION ASSESSMENTS = DEATH THREATS, ARREST THREATS**

August 17, 2006, John Coleman, a Eugene Burger Management Corporation contractor and co-defendant Frank Perau's good friend, made death threats to Plaintiff and her friend. Plaintiff has a Reno Police report, audio recording, and witness of the incident. EBMC's contractor, John Coleman made the death threats to Plaintiff and her friend allegedly to intimidate Plaintiff from further investigating Lakeside Plaza financials (which are managed by Eugene Burger Management Corporation).

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

March 5, 2007, Plaintiff was directed to view financials records at Gayle A. Kern's. Per NRS 116.31175, the financials may be reviewed during the regular working hours, Plaintiff, on a break from work, made an attempt to validate the "debt" in question and review finances, however, this invitation was insincere and merely a sham to further harass and intimidate Plaintiff from obtaining financial records.

Instead, Gayle Kern's office called the police on Plaintiff. *See* Exhibit 16. Plaintiff has witness and evidence of the police call. *See* Exhibit 16

This call to police is a blatant violation of state and federal law (Fair Debt Collection Practices Act § 1692 & NRS 116.31183):

> **NRS 116.31183  Retaliatory action prohibited.** An executive board, a member of an executive board or an officer, employee or agent of an association shall not take, or direct or encourage another person to take, any retaliatory action against a unit's owner because the unit's owner has:
>     1.  Complained in good faith about any alleged violation of any provision of this chapter or the governing documents of the association; or
>     2.  Requested in good faith to review the books, records or other papers of the association.
>     (Added to NRS by 2003, 2218)

August 9, 2007, nearly one year later after the EBMC contractor's death threat, Plaintiff was wrongfully detained by Reno Police while in the company of friends on private property at Lakeside Plaza. Plaintiff was singled out –as no one else was detained by Reno Police. Plaintiff alleges this was done by Defendants with the sole intent to further harass and intimidate Plaintiff into not further investigating Lakeside Plaza financials. In fact, a few nights before, Defendant Joseph asked if Plaintiff had ever been "on the bench" [arrested] which suggests the Defendant Joseph (and other defendants) had allegedly intended to conspire to have Plaintiff detained by police with the sole intent to further harass and intimidate Plaintiff into not further investigating Lakeside Plaza financials.

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    A senior couple, Lakeside Plaza homeowners Carol and Gwen Slabotzky (allegedly, on

2    advice of Defendant Gayle Kern, Esq.), were threatened with an Aggravated Harassment

3    Stalking Order by Defendant Perau (allegedly, on advice of Defendant Gayle Kern, Esq.)

4    Perau v. Slabotzky, Sparks, NV Justice Court.

5    Plaintiff Moulton was also served an Aggravated Harassment Stalking Order Perau v.

6    Moulton, Sparks, NV Justice Court See Exhibit 17. This petition was made allegedly, on advice

7    of Defendant Gayle Kern, Esq. allegedly for Plaintiff's questioning of the financial records and

8    illegal special assessments.  An Aggravated Harassment & Stalking Order bears the inherent

9    threat of arrest, loss of liberty, and violations of constitutional rights.

10    Sparks Police arrived at Plaintiff's door threatening to arrest Plaintiff alleging she could

11    not assert the constitutionally protected Right to Freedom of Speech. Plaintiff has video and

12    audio evidence of the Sparks Police arrest threat.

13    Plaintiff contends, upon belief and information, Defendants Gayle Kern, Defendant Frank

14    Perau and Eugene Burger Management Corporation contractor, John Coleman conspired to

15    abuse judicial process and commit perjury all in an attempt to get Plaintiff arrested.

16    Time and time again, the State of Nevada has violated the constitutional rights of

17    Plaintiff, her friends, and other Lakeside Plaza homeowners. Due to the repeated violations of

18    civil liberties and constitutional rights, Plaintiff returned to her home state of California hoping

19    to achieve justice in this matter. Therefore, because Plaintiff fears loss of liberty returning to

20    Nevada to prosecute this case for fear of false arrest, justice must be found in another venue.

21

22    **VENUE IS PROPER IN CALIFORNIA**

23    Venue is proper as the majority of defendants reside and/or do business in California.

24    Plaintiff is an almost lifelong resident of California. Furthermore, a California real estate security

25    interest is directly affected by the outcome of this case.

26    Venue is proper as time and time again, the State of Nevada has violated the

27    constitutional rights of Plaintiff, her friends, and other Lakeside Plaza homeowners. Plaintiff's

28

– 24 –

1    contends there will be a possible prejudicial environment if this matter is heard is heard in

2    Nevada. Plaintiff fears loss of liberty and violation of constitutional rights if she returns to

3    Nevada to prosecute this case, therefore, justice must be found in another venue – as she has

4    suffered from Nevada's malicious prosecution, judicial misconduct, death threats, intimidation,

5    and harassment – all in the name of trying to validate a "debt" (illegal special assessment) and

6    for trying to investigate Lakeside Plaza financial records.

7         Given the fact Plaintiff's constitutional rights and liberties have been repeatedly denied

8    by police and local courts, Defendant/attorney Gayle Kern has significant ties to the State of

9    Nevada courts, and Defendant Eugene Burger Management Corporation's Karen Brigg was on

10    the Nevada Real Estate Commission -Plaintiff's intent is to have "level playing field" and

11    respectfully requests this Court hear this matter.

12         Plaintiff (an almost lifelong California resident) returned to California to preserve her

13    constitutional rights (as they were continually being denied in Nevada).

14         Federal-court abstention is inappropriate in this case under <u>Younger v. Harris</u>, 401 U.S.

15    37 (1971), as the Supreme Court has held that absent "bad faith, harassment or any other unusual

16    circumstance," federal-court abstention is appropriate where a plaintiff invokes federal

17    jurisdiction as a basis for obtaining injunctive relief against state-court criminal proceedings. *Id.*

18    at 53-54.  The matter at hand involves nothing but bad faith, harassment or any other unusual

19    circumstances, therefore, federal abstention would be inappropriate.

20         The Supreme Court later held that "[t]he policies underlying <u>Younger</u> are fully applicable

21    to noncriminal judicial proceedings when important state interests are involved." <u>Middlesex</u>

22    <u>County Ethics Comm'n v. Garden State Bar Ass'n,</u> 457 U.S. 423, 432 (1982).

23    **<u>Younger's</u> abstention criteria**

24         There are three requirements for proper invocation of <u>Younger</u> abstention:

25             (1) there must be on-going state judicial proceedings; (2) those

26             proceedings must implicate important state interests; and (3) there
               must be an adequate opportunity in the state proceedings to raise

27             constitutional challenges." <u>Sun Ref. & Mktg. Co. v. Brennan,</u> 921
               F.2d 635, 639 (6th Cir. 1990) (citation omitted).

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1

2

3

4

5

6

> So long as the constitutional claims of respondents can be determined in the state proceedings and **so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain.**" Middlesex, 457 U.S. at 435. We review de novo a district court's decision to abstain. Berger v. Cuyahoga County Bar Ass'n, 983 F.2d 718, 721 (6th Cir. 1993).

7

8

Federal-court abstention does not apply in "bad faith, harassment or any other unusual circumstance[s]".

9

10

11

12

13

14

Furthermore, venue is proper in California as a large percentage of the Defendants either reside and/or do business in California. EBMC is headquartered in California, Eugene J. Burger, upon belief and information resides in California, Karen Brigg, upon belief and information, works and/or resides in California. Daniel Joseph does business in California. Gayle A. Kern, Esq. practices in California. Gayle A. Kern, Ltd. does business in California. Plaintiff resides in California.

15

16

17

18

Furthermore, February 5, 2007, a second mortgage transacted in California was recorded against Plaintiff's property. Again, the condo rider has no legal effect on this second mortgage, nor was there prior consent by the second mortgagee. This California security interest against Plaintiff's property takes a first charge over the "debt" and wrongful foreclosure in question.

19

20

Fair Debt Collection Practices Act provides for the action to be in California, where Plaintiff resides and where the majority of parties reside and/or do business.

21

22

23

## THIS COURT HAS JURISDICTION PER FEDERAL QUESTION – FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA"), RACKEETER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), CONSTITUTIONAL RIGHTS

24

25

Jurisdiction is appropriate in federal court per Fair Debt Collection Practices Act 15 USC 1692k § 813(d):

26

27

28

> (d) An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from

– 26 –

1

2

the date on which the violation occurs.

3      This matter includes a federal question jurisdiction, subject matter jurisdiction would lie

4  only if here were diversity jurisdiction, governed by 28 U.S.C. 1332(a)(1).There is **also** diversity

5  in this case. This is a multi-party, multi-state case.

6      In the future, if this matter becomes a class action, there are many California Lakeside

7  Plaza homeowners that have expressed interest in suing EBMC and/or the Board.

8

9  **PERSONAL JURISDICTION IS IN CALIFORNIA**

10

11      Plaintiff asserts personal jurisdiction in California as the majority of defendants who do

12  business and/or are residents of California and a California security interest exists on Plaintiff's

13  home.

14          **California's Long Arm Statute**, Cal. Civ. Proc. Code S 410.10.
15          See Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062, 65 (9th
    Cir.'90). Section 410.10 provides for personal jurisdiction 'on any
16          basis not inconsistent with the Constitution of this state or of the
    United States.'
17
18          'A court may exercise either general or specific jurisdiction over a
    nonresident defendant.' Sher v. Johnson, 911 F.2d 1357, 61 (9th
19          Cir.'90).

20      **Some criteria for invoking local jurisdiction are if a defendant committed**

21  **'intentional actions' Core-Vent Corp. v. Nobel..., 11 F.3d 1482, 85 (9th Cir.'93), at 1486.**

22

23  **DEFENDANTS/ATTORNEY GAYLE KERN DUAL REPRESENTATION IS A CLEAR**

24  **CONFLICT OF INTEREST**

25      Gayle Kern, Esq., upon belief and information, has represented EBMC (former Lakeside

26  Plaza property manager), and also serves as counsel for Lakeside Plaza Condominium

27  Association. Kern also serves as resident agent for Phil Frink & Associates. While although,

28

– 27 –

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

upon belief and information, Kern has represented EBMC, she is representing Lakeside Plaza

Condominium Association in a suit against one of her alleged previously clients, EBMC

Lakeside Plaza Condo v. Eugene Burger Mgt, Case No. CV07-02674, Second Judicial District

Court State of Nevada, Washoe County. Furthermore, Kern is representing the Defendants, and

yet, she, too, is also a co-defendant.

Citing Cendant Corp. Sec. Litin., 124 F. Supp. 2d 235 (D.N.J. 2000); see also Bobokoski

v. Bd. of Educ., No. 90-C-5737, 1991 WL 140I50 (N.D. 111. July 23, 1991).

> In granting a motion to disqualify under Rule 1.7 in a class
> action securities fraud case, the court in Cendant Corp. held that a
> lawyer could not represent the named defendant in a case in which
> it also represented a former officer of that company who was
> a critical and potentially adverse witness in the matter. In
> describing the many hazards of such a dual representation, the
> court observed: as a general matter examining one's own client as
> an adverse witness on behalf of another client, or conducting third
> party discovery of one client on behalf of another client, is likely to
> pit the duty of loyalty to each client against the duty of loyalty to
> the other; (2) to risk breaching the duty of confidentiality to the
> client-witness; and (3) present a tension between the lawyer's own
> pecuniary interest in continued employment by the client-witness
> and the lawyer's ability to effectively represent the litigation client.
> The first two of these hazards are likely to present a direct
> adverseness of interest falling within Rule 1.7(a); all three may
> constitute material limitations on the lawyer's representation, so as
> to come under Rule 1.7(b).'

Cendant Corp., 124 F. Supp. 2d at 241-42 (emphasis omitted) (quoting ABA Formal Opinion

No. 92-367 (October 16, 1 992)).8 The court emphasized that Rule 1.7 is violated where there is

a mere "possibility of a breach occurring;" actual improper conduct is not required to establish a

violation. Id.at 243,244. … the rule is intended not to prevent actual conflicts but to bolster the

public's confidence in the integrity of the legal profession. Id. at 245.

If Gayle Kern represents the defendants, allegedly she will be violating Nevada Rules of

Professional Conduct Rule 1.7-1.8:

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

<u>**Nevada Rules of Professional Conduct**</u>

**Rule 1.7.  Conflict of Interest: Current Clients.**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) The representation of one client will be directly adverse to another client; or

(2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) The representation is not prohibited by law;

(3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) Each affected client gives informed consent, confirmed in writing.

[Added; effective May 1, 2006.]


**FIDUCIARY EXEMPTION TO ATTORNEY-CLIENT PRIVILEGE**

There is a fiduciary exemption to attorney-client privilege. A homeowners association can be compared to the Employee Retirement Income Act ("ERISA") in the sense both require the protection of interests of participants (in the case of HOA, homeowners), both require disclosure and reporting to participants (in the case of HOA, homeowners).

Rules of Professional Conduct require Gayle Kern to avoid contributing to a violation of the Code of Conduct. Defendant Kern's dual representation gives her undeniable influence over how Defendants will respond to discovery and testify at trial. In effect, Defendant Kern's representation of Defendants permits the class to influence Defendants' participation in the case, thus stripping Defendants of her presumed neutrality. *See* <u>Pioneer Hotel, Inc. v. NLRB</u>, 182 F.3d 939,944 (D.C. Cir. 1999) (analyzing ex parte contacts  under Canon 3B(7)); <u>Clifford v. United</u>

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  States, 136 F.3d 144, 149 n.6 (D.C. Cir. 1998) (disqualification of judge for impartiality proper

2  under certain circumstances pursuant to Canon 3E(l)); United States v. Barry, 961 F.2d 260, 263

3  (D.C. Cir. 1992) (analyzing out-of-court comments by judge under Canon 3A(6)).

4  Rentclub, Inc., 811 F. Supp. at 655 (appearance of impropriety arises from inference that

5  attorney induced another to breach a confidence).

6      Defendant Kern's dual representation raises another ethical dilemma in the form of a

7  potential conflict of interest between her clients. Courts have interpreted the rule as presenting an

8  ethical barrier to a lawyer representing both a party in interest and a co-defendant in the same

9  matter. See In re Cendant Corp. Sec. Litin., 124 F. Supp. 2d 235 (D.N.J. 2000); see also

10  Bobokoski v. Bd. of Educ., No. 90-C-5737, 1991 WL 140I50 (N.D. 111. July 23, 1991).

11      In granting a motion to disqualify under Rule 1.7 in a class action securities fraud case,

12  the court in Cendant Corp. held that a lawyer could not represent the named defendant in a case

13  in which it also represented a former officer of that company who was a critical and potentially

14  adverse witness in the matter. In describing the many hazards of such a dual representation, the

15  court observed:

16          [A]s a general matter examining one's own client as an adverse
17          witness on behalf of another client, or conducting third party
            discovery of one client on behalf of another client, is likely to
18          pit the duty of loyalty to each client against the duty of loyalty to
            the other; (2) to risk breaching the duty of confidentiality to the
19          client-witness; and (3) present a tension between the lawyer's own
            pecuniary interest in continued employment by the client-witness
20          and the lawyer's ability to effectively represent the litigation client.
21          The first two of these hazards are likely to present a direct
            adverseness of interest falling within Rule 1.7(a); all three may
22          constitute material limitations on the lawyer's representation, so as
23          to come under Rule 1.7(b).'

24      Cendant Corp., 124 F. Supp. 2d at 241-42 (emphasis omitted) (quoting ABA Formal

25  Opinion No. 92-367 (October 16, 1 992)).8 The court emphasized that Rule 1.7 is violated where

26  there is a mere "possibility of a breach occurring;" actual improper conduct is not required to

27  establish a violation. Id.at 243,244…[T]he rule is intended not to prevent actual conflicts but

28

– 30 –

1    to bolster the public's confidence in the integrity of the legal profession. Id. at 245.

2         Disqualification motions involving representation of both a witness and a party in the

3    same matter arise frequently in the criminal context. *See*, e.g, Wheat v. United States, 486 U.S.

4    153, 160 (1988). While conflicts of interest in the criminal arena require a heightened concern

5    for defendants' Sixth Amendment rights, equal judicial caution about permitting counsel to

6    represent witnesses and parties in the same matter applies in civil cases. Compare Perillo v.

7    Johnson, 205 F.3d 775, 808 (5th Cir. 2000) (conflict between former and present clients raised

8    suspicion concerning defense strategies in criminal case) Cendant Corp., supra.

9         Defendant Kern should be disqualified from representing defendants in this matter of

10   conspiracy to defraud, breach of contract, FDCPA, and RICO violations. Defendant Kern co-

11   conspired to threaten Plaintiff's liberty and freedom.

12

13   **SUPPLEMENTAL JURISDICTION**

14        Supplemental jurisdiction is the authority of United States federal courts to hear

15   additional claims substantially related to the original claim even though the court would lack the

16   subject-matter jurisdiction to hear the additional claims independently. 28 U.S.C. § 1367 is a

17   codification of the Supreme Court's rulings on ancillary jurisdiction (Owen Equipment &

18   Erection Co. v. Kroger, 437 U.S. 365 (1978)) and pendent jurisdiction (United Mine Workers of

19   America v. Gibbs, 383 U.S. 715 (1966)) and a superseding of the Court's treatment of pendent

20   party jurisdiction (Finley v. United States, 490 U.S. 545 (1989)).

21        By default, courts have supplemental jurisdiction over "all other claims that are so related

22   . . . that they form part of the same case or controversy" (§ 1367(a)). This means a federal court

23   hearing a federal claim can also hear substantially related state law claims, thereby encouraging

24   efficiency by only having one trial at the federal level rather than one trial in federal court and

25   another in state court.

26

27

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1    **MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) MUST BE DENIED**

2           In support of its motion to dismiss, Defendants Christensen, Grady, Joseph, Perau &

3    Svihla argue that Plaintiff's claims do not adequately state a claim. However, Defendants

4    provide no authority deviating from the liberal pleading standards under Fed. R. Civ. P. 8.

5           Due to "time being of the essence" to prevent the illegal foreclosure of Plaintiff's home,

6    Plaintiff, pro se, hastily drafted the Complaint to prevent the illegal foreclosure of her home

7           Therefore, in the alternative, Plaintiff respectfully requests leave to amend her complaint.

8

9    **FEDERAL RULES OF CIVIL PROCEDURE PROVIDE OTHER MEANS TO DEFINE**

10   **THE FACTS AND ISSUES**

11          More extensive pleading of facts is unnecessary because the Federal Rules of Civil

12   Procedure provide other means to define the facts and issues. (Moore's Federal Practice, Civil

13   §8.04[I]). As the U.S. Supreme Court, referencing Fed. R. Civ. P. 8(a)(2), conclusively stated in

14   Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992,998, 152 L.Ed. 2d 1(2002):

15

16               This simplified notice pleading standard relies on liberal discovery
                 rules and summary judgment motions to define disputed facts and
17               issues and to dispose of unmeritous claims.

18   **CONGRESS INTENDED TO ENCOURAGE, RATHER THAN DISCOURAGE,**

19   **PRIVATE ENFORCEMENT OF THE LAW**

20          U.S. Supreme Court, in concurrence with Congress, has allowed some leniency in

21   pleading standards with respect to allegations of fraud in instances where fraud takes place over

22   a duration of time and involves many co-conspirators.

23          Quoting Justice Stevens in Bell Atlantic Corporation v. Twombly,

24               In antitrust cases, [for example]… 'the proof is largely in the hands
25               of the alleged conspirators,' . . . dismissals prior to giving the
                 plaintiff ample opportunity for discovery should be granted very
26               sparingly." Hospital Building Co. v. Trustees of Rex Hospital, 425
                 U. S. 738, 746 (1976) (quoting Poller v. Columbia Broadcasting
27               System, Inc., 368 U. S. 464, 473 (1962)); see also Knuth v. Erie-

28
     ────────────────── – 32 – ──────────────────

Crawford Dairy Cooperative Assn., 395 F. 2d 420, 423 (CA3 1968) ("The 'liberal' approach to the consideration of antitrust complaints is important because inherent in such an action is the fact that all the details and specific facts relied upon cannot properly be set forth as part of the pleadings"). Bell Atlantic Corporation v. Twombly  Id 46

Moreover, the fact that the Sherman Act [for instance,] authorizes the recovery of treble damages and attorney's fees for successful plaintiffs indicates that Congress intended to encourage, rather than discourage, private enforcement of the law. See Radovich v. National Football League, 352 U. S. 445, 454 (1957) and attorney's fees for successful plaintiffs indicates that Congress intended to **encourage**, rather than discourage, private enforcement of the law. See Radovich v. National Football League, 352 U. S. 445, 454 (1957) (emphasis added) Id 45

But it should go without saying in the wake of Swierkiewicz that a heightened production burden at the summary judgment stage **does not translate into a heightened pleading burden at the complaint stage.** (emphasis added) Id 45

**PRO SE LITIGANTS HELD TO LESS STRINGENT PLEADING STANDARDS**

Furthermore, Pro se complaints, which are held to less stringent standards than pleadings by lawyers, should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)).

**PLAINTIFF NEED NOT "IDENTIFY" THE DISPUTED INFORMATION TO STATE A CLAIM UNDER "FDCPA" § 1692, ET SEQ.**

The statutes itself provides no support for Defendants' position, as it says nothing about identifying the dispute. Fair Debt Collection Practices Acts states:

(c) The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

– 33 –

1    Furthermore, FDCPA § 1692 claims are not subject to the heightened standards for

2 pleading in Fed.R.Civ.P. 9(b).

3

4 **PLEADING NEED NOT BE SPECIFIC PER FED. R. CIV. P. 8(a)(2).**

5    Whether Kern is liable, and whether the "corporate veil" should be pierced, are factual

6 issues best resolved on summary judgment or at trial. *See* <u>West v. Costen</u>, 558 F.Supp. 564, 584-

7 85 (W.D.Va.1983).

8    This case presents the antecedent question of what a plaintiff must plead in order to state

9 a claim. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

10 claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of

11 what the … claim is and the grounds upon which it rests," <u>Conley v. Gibson</u>, <u>355 U. S. 41</u>.

12    Moreover, the complaint does not have to be particularly specific or detailed. Fed. R. Civ.

13 P. 8(a)(2) requires only a "short and plain statement of the claim." Fed. R. Civ. P. 8(e) calls for

14 the "simple, concise and direct" averments in pleadings. Fed. R. Civ. P. 8(f) states that pleadings

15 are to be construed as to do substantial justice" Regarding what level of detail and specificity is

16 required in complaints, the Sixth Circuit Court of Appeal, in describing the standard of review

17 for a Rule 12(b)(6) motion, stated:

18

19            Under the liberal federal system of notice pleading, all that a
             plaintiff must do in a complaint is give a defendant 'fair notice of
20           what the plaintiff's claim is and the grounds upon which it rests.'
             <u>Vector Research v. Howard & Howard Atty. P.C.</u>, 76 F.3d 692,
21           697 (6th Cir. 1996).

22    See also <u>Haines v. Kerner</u>, 404 U. S. 519, 521 (1972) (per curiam), <u>Conley v. Gibson</u>,

23 355 U. S. 41 (1957).

24    In <u>Swierkiewicz</u>, 534 U. S., at 511, U.S Supreme Court observed that Rule 8(a)(2) does

25 not contemplate a court's passing on the merits of a litigant's claim at the pleading stage. Rather,

26 the "simplified notice pleading standard" of the Federal Rules "relies on liberal discovery rules

27 and summary judgment motions to define disputed facts and issues and to dispose of

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1   unmeritorious claims." Id., at 512; see Brief for United States et al. as Amici Curiae in

2   Swierkiewicz v. Sorema N. A., O. T. 2001, No. 00–1853, p. 10 (stating that a Rule 12(b)(6)

3   motion is not "an appropriate device for testing the truth of what is asserted or for determining

4   whether a plaintiff has any evidence to back up what is in the complaint" (internal quotation

5   marks omitted)).

6         The Third Circuit relied on Leimer's admonition in Continental Collieries, Inc. v. Shober,

7   130 F. 2d 631 (1942), which the Conley Court also cited in support of its "no set of facts"

8   formulation. In a diversity action the plaintiff alleged breach of contract, but the District Court

9   dismissed the complaint on the ground that the contract appeared to be unenforceable under state

10  law. The Court of Appeals reversed, concluding that there were facts in dispute that went to the

11  enforceability of the contract, and that the rule at the pleading stage was as in Leimer: "No

12  matter how likely it may seem that the pleader will be unable to prove his case, he is entitled,

13  upon averring a claim, to an opportunity to try to prove it." 130 F. 3d, at 635.

14

15         Quoting Justice Stevens in Bell Atlantic Corporation v. Twombly,

16         Leatherman v. Tarrant County Narcotics Intelligence and
           Coordination Unit, 507 U. S. 163 (1993). By requiring a plaintiff
17         to "state with factual detail and particularity the basis for the claim
           which necessarily includes why the defendant-official cannot
18         successfully maintain the defense of immunity." Leatherman, 507
           U. S., at 167 (internal quotation marks omitted). We found this
19         language inconsistent with Rules 8(a)(2) and 9(b) and emphasized
           that motions to dismiss were not the place to combat discovery
20         abuse: "In the absence of [an amendment to Rule 9(b)], federal
           courts and litigants must rely on summary judgment and control of
21         discovery to weed out unmeritorious claims sooner rather than
           later." Id., at 168–169.In ruling on a defendant's motion to dismiss
22         a complaint, the Court "must accept as true all of the factual
           allegations contained in the complaint." Swierkiewicz v. Sorema
23         N. A., 534 U.S., at 514,  Bell Atlantic Corporation Id 43

24
25         Leimer v. State Mut. Life Assur. Co. of Worcester, Mass., 108 F.
26         2d 302 (CA8 1940), the plaintiff alleged that she was the
           beneficiary of a life insurance plan and that the insurance company
27         was wrongfully withholding proceeds from her. In reversing the

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

District Court's grant of the defendant's motion to dismiss, the Eighth Circuit noted that court's own longstanding rule that, to warrant dismissal, "'it should appear from the allegations that a cause of action does not exist, rather than that a cause of action has been defectively stated.'" Id., at 305 (quoting Winget v. Rockwood, 69 F. 2d 326, 329 (CA8 1934)).The Leimer court viewed the Federal Rules—specifically Rules 8(a)(2), 12(b)(6), 12(e) (motion for a more definite statement), and 56 (motion for summary judgment)—as reinforcing the notion that "there is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." 108 F. 2d, at 306. The court refuted in the strongest terms any suggestion that the unlikelihood of recovery should deter-mine the fate of a complaint: "No matter how improbable it may be that she can prove her claim, she is entitled to an opportunity to make the attempt, and is not required to accept as final a determination of her rights based upon inferences drawn in favor of the defendant from her amended complaint." Ibid. Bell Atlantic Corporation Id 39

Under the relaxed pleading standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in. The merits of a claim would be sorted out during a flexible pretrial process and, as appropriate, through the crucible of trial. See Swierkiewicz, 534 S. 506, 508, n. 1 (2002); see Overstreet v. North Shore Corp., 318 U. S. 125, 127 (1943)

**FED. R. CIV. P. 12(b)(6) MOTION MUST BE DENIED –AS MOTIONS MUST BE CONSTRUED IN LIGHT MOST FAVORABLE TO NON-MOVING PARTY**

It is well established that in resolving 12(b)(6) motions, the Court must construe the complaint in the light most favorable to the Plaintiff. Cahill v. Liberty Mutual Ins. Co., 89 F.3d 336 -338 (9th. Cir. 1996) citing National Wildlife Federation v. Espy, 45 F.3d 1337 (9th Cir. 1995). The U.S. Supreme Court express a corollary principle in Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

A complaint should not be dismissed for failure to state a claim
underline it appears beyond doubt that the plaintiff can prove no set of

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1
2
facts in support of his claim which would entitle him to relief.
(emphasis added).

3
4
5
6
This Court must consider Plaintiff's Opposition to Defendants' Motion to Dismiss in "the light most favorable to …the nonmoving part." *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, (1970), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

7
**GENUINE ISSUE**

8
9
10
There is a genuine issue of material fact which requires trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986), Beard v. Whitley County REMC, 840 F.2d 405, 410 (7th Cir. 1988).

11
12
13
14
The non-moving party only has to show substantial evidence that a *dispute* of material facts exists, regardless of the strength of that evidence. The facts remain – there is a foreclosure of Plaintiff's home, there are CC&Rs that state a homeowner vote is **required** for special assessments – there was no homeowner vote.

15
16
17
18
"Summary judgment should not be granted `where the non-moving party has not had the opportunity to discover information that is essential to his opposition.'" Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1521-22 (10th Cir. 1992) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)).

19
20
21
22
23
24
"The protection afforded by Rule 56(f) is an alternative to a response in opposition to summary judgment under 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment." Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986) (*quoting* 10A Wright, Miller, & Kane, Federal Practice and Procedure §2740 (1983)). *See*, Miller v. United States Department of Transportation, 710 F.2d 656, 666 (10th Cir. 1983)

25
26
27
"[D]iscovery is strongly favored and generally denying the right to have full discovery on all pertinent issues before a summary judgment is granted would be error, particularly in the face of a Rule 56(f) affidavit."

28

– 37 –

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    Consistent with its underlying policy, courts treat Rule 56(f) motions and affidavits

2    liberally: "'Unless dilatory or lacking in merit, the motion should be liberally treated.'"

3    <u>Committee for the First Amendment v. Campbell</u>, 962 F.2d 1517, 1521-22 (*quoting* James W.

4    Moore & Jeremy C. Wicker, Moore's Federal Practice ¶ 56.24 (1988)). *See*, <u>Jensen v. Redev.</u>

5    <u>Agency</u>, 998 F.2d 1550, 1554 (10th Cir. 1993); <u>RTC Mortgage Trust 1994-S3 v. Guadalupe</u>

6    <u>Plaza</u>, 918 F.Supp. 1441, 1448 (D.N.M. 1996).

7

8    There is a genuine issue of material fact which requires trial. *Anderson v. Liberty Lobby,*

9    *Inc.* 477 U.S. 242, 248 (1986), *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.

10    1988).

## IV.    <u>CONCLUSION</u>

11    On the basis of the foregoing points and authorities, Plaintiff Sheryl Moulton respectfully

12    requests that this Court grant Plaintiff's Motion for Leave to Amend Complaint, grant Plaintiff's

13    Motion for Leave to Amend the Opposition to Defendant's Motion to Dismiss.

14    Plaintiff respectfully moves this Court for its order to disqualify Defendant Gayle Kern

15    from representing her co-defendants. Plaintiff moves this Court for its order to strike Defendants'

16    Motion to Dismiss or, in the alternative, Plaintiff respectfully requests Defendants' Motion to

17    Dismiss be denied.

18    This motion to disqualify counsel is based on the grounds fiduciary exemption to

19    attorney-client privilege, willful violations of Fair Debt Collection Practices Act, conspiracy to

20    defraud, breach of fiduciary duty, and breach of contract. Gayle A. Kern's representation of her

21    co-defendants represents a <u>clear conflict of interest</u> (as Kern is also a co-defendant in this case).

22    Furthermore, the opposition to Defendants' Motion to Dismiss is based on the grounds

23    there are several federal questions in this matter -Fair Debt Collection Practices Act, Racketeer

24    Influenced and Corrupt Organizations Act ("RICO") §§1961, 1962 1964, et seq. causing this

25    Court to have proper jurisdiction.  Plaintiff's other causes of action include injunction relief,

26    declaratory relief, breach of contract, retaliation, non-uniform enforcement, tortious interference

27    with real estate sale, breach of fiduciary duty, conversion, defamation, extortionate extension of

– 38 –

1   credit, fraud, conspiracy to defraud, fraudulent recordation of an illegal foreclosure/lien,

2   negligence, unconscionability, unfair business practice, Restatement of Torts §§ 549, 552, 652.

3   In the alternative to a Motion to Strike, Defendants' Motion to Dismiss should be denied as there

4   are serious triable issues at hand.

5

6

7   Dated: December 23, 2007                    Respectfully submitted,

8                                               SHERYL MOULTON

9                                               By:_____/s/Sheryl Moulton_____

10                                                     Sheryl Moulton
                                                       In Pro Per

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1

## DECLARATION

2     I, SHERYL MOULTON, declare as follows:

3     I am the Plaintiff in this matter representing myself pro se. I am responsible for

4   the day-to-day management of this matter. As such, I have personal, firsthand knowledge of the

5   facts stated in this declaration.

6     I declare under penalty of perjury under the laws of the United States of America that the

7   foregoing is true and correct, and that this declaration was executed December 24, 2007 in

8   Sunnyvale, California.

9

10   */s/Sheryl Moulton*
     Sheryl Moulton

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1

**PROOF OF SERVICE**

2

3

     I, the undersigned, declare that I am over the age of 18, and am not a party to this action. I am employed by:_____PO Box 223642 Carmel, CA 93922_____

4

_____

5

     On the date below I served a copy, with all exhibits, of the following document(s):

6

**PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, AND EXHIBITS**

7

8

9

on the interested part in this action by placing a true copy thereof addressed to the following:

10

**SEE ATTACHED SERVICE LIST**

11

☒    **BY ELECTRONIC MAIL TRANSMISSION (E-MAIL).** I caused a true copy of the foregoing document(s) to be transmitted to each of the parties on the attached service list at the email address as last given by that person on any document which he or she has filed in this action and served upon this office.

12

13

☒    **BY ECF.** I caused such documents to be e-filed with the Court which were then served via the ECF filing system.

14

15

☐    **BY REGULAR MAIL.** I caused such envelopes to be deposited in the United States mail, at Reno, Nevada with postage thereon fully prepaid, individually addressed to the parties as indicated on the attached service list. I am readily familiar with the practice of collection and processing correspondence in mailing. It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to. (Fed R. Civ. P. 5(b)(2)(B).

16

17

18

19

☐    **BY FACSIMILE TRANSMISSION.** I caused a true copy of the foregoing document(s) to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

20

21

☐    **BY PERSONAL SERVICE:** I caused to be delivered such envelope by hand to the addressee(s).

22

23

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on December 24, 2007

24

25

                         / s / *John Cowell*

26

                            John Cowell

27

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

<u>**SERVICE LIST**</u>

2

3   Attorney for ULLA CHRISTENSEN, both as
    individual and Lakeside Plaza Board Director;
4   MICHAEL GRADY, both as individual and
    Lakeside Plaza Board Director; DANIEL
5   JOSEPH, both as individual and Lakeside
    Plaza Board Director; FRANK A. PERAU,
6   both as individual and Lakeside Plaza Board
    Director; RICH SVIHLA, both as individual
7   and Lakeside Plaza Board Director;
    GAYLE A. KERN
8   5421 Kietzke Lane, Suite 200
    Reno, Nevada  89511
9   Email: gaylekern@kernltd.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND
COMPLAINT, MOTION FOR LEAVE TO AMEND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
(2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS