1  SHERYL MOULTON
   IN PRO PER
2  P.O. Box 223581
   Carmel, CA 93922
3  Telephone: (408) 840-2907

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

12  SHERYL MOULTON, individually and on       )  Case No.: CV07-05861 JW
    behalf of all others similarly situated,   )
13                                             )  **PLAINTIFF'S OPPOSITION TO**
                                               )  **DEFENDANTS GAYLE A. KERN'S**
14                 Plaintiffs,                  )  **AND GAYLE A. KERN, LTD.'S**
                                               )  **MOTION TO QUASH SERVICE OF**
15        vs.                                   )  **PROCESS AND TO DISMISS FOR**
                                               )  **INSUFFICIENCY OF SERVICE; LACK**
16  EUGENE BURGER MANAGEMENT               )  **OF PERSONAL JURISDICTION; AND**
    CORPORATION, a California Corporation;    )  **IMPROPER VENUE; OPPOSITION TO**
17  EUGENE J. BURGER; KEVIN BERG;        )  **JOINDER IN MOTION TO DISMISS OF**
    KAREN BRIGG; PHIL FRINK &            )  **DEFENDANTS CHRISTENSEN,**
18  ASSOCIATES, INC.; PHILLIP E. FRINK;   )  **GRADY, JOSEPH, PERAU AND**
    GAYLE A. KERN, LTD; GAYLE A. KERN;   )  **SVIHLA**
19  ULLA CHRISTENSEN, both as individual   )
    and Lakeside Plaza Board Director;        )
20  MICHAEL GRADY, both as individual and   )  Pending Hearing:
    Lakeside Plaza Board Director; DANIEL    )  DATE:      February 25, 2008
21  JOSEPH, both as individual and Lakeside  )  TIME:      9:00 A.M.
    Plaza Board Director; FRANK A. PERAU,    )  DEPT:      8
22  both as individual and Lakeside Plaza Board )
    Director; RICH SVIHLA, both as individual  )
23  and Lakeside Plaza Board Director;        )
    LAKESIDE PLAZA CONDOMINIUM         )
24  ASSOCIATION; and DOES 1-500.           )
                                               )
25                 Defendants.                  )
                                               )
26  _____  )

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

First and foremost, Plaintiff has been suffering from walking pneumonia the past 2 weeks and requests leniency with respect to the format of this Opposition. Furthermore, Plaintiff had to contend with getting repairs for a water leak in her Lakeside Plaza condo over the past several days. Plaintiff respectfully requests this Opposition be viewed to a less stringent standard.

Furthermore to economize on time of this Court (and Plaintiff), this filing, along with Docket #18, shall be incorporated and serve as response to Defendant's Motion to Quash, Service of Process and to Dismiss for Insufficiency of Service; Lack of Personal Jurisdiction; and Improper Venue; Joinder in Motion to Dismiss of Defendants Christensen, Grady, Joseph, Perau and Svihla.

Through this motion, Defendants Kern, Gayle A. Kern, Ltd., et al., seek to quash service of process and dismiss this lawsuit, claiming that they do no business in California, and that they have insufficient contacts with this district to be sued here. Although Defendants have claimed, in no uncertain terms, that they do not do business in this district (or California), the facts belie this nonsense, and requiring Defendants' to defend these claims before this Court comports with traditional notions of fair play and substantial justices. In light of Defendants' actions, it is Defendants Perau and Kern that have acted in bad faith, both through the filing of the trumped up Aggravated Harassment & Stalking Order, and through the filing of their motion to dismiss and quash.

To begin with, Defendants' contacts with California and with this judicial district are significant, continuous and systematic, such that Defendants are subject to general personal jurisdiction before this Court. In any event, Defendants are subject to limited personal jurisdiction because, inter alia, Defendants do significant business with Lakeside Plaza homeowners (and Plaintiff) who reside in this judicial district.

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE; LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

## II.    THE LEGAL STANDARD

PROCESS OF SERVICE IS PROPER

Pursuant to Fed.R.Civ.P. 4, service upon an individual within a judicial district of the United States is proper if it is: 1) pursuant to the law of the state in which the district court is located or in which service is effected, Fed.R.Civ.P. 4(e)(1), or, 2) effected by

> serving the individual personally or by leaving a copy of the complaint and summons at the individual's dwelling house or by delivering the summons and complaint to an agent authorized by appointment or by law to receive service of process." Fed. R.Civ.P. 4(e)(2).

Service of Defendants Gayle A. Kern, Gayle A. Kern, Ltd, Lakeside Plaza Condominium Association, and Phil Frink & Associates was effected in Nevada. Just as, several other remaining defendants in this case (from California) will be served pursuant in conjunction with California law.

Nevada state law mandates that corporations and other business entities must have registered agents; and all legal process must be served through the registered agent.

> **NRS 14.020  Artificial persons doing business in Nevada to appoint resident agents; service of process, demand or notice; staffing of registered office; fine for failure to staff registered office. [Effective through June 30, 2008.]**
>
> 1. Every corporation, miscellaneous organization described in chapter 81 of NRS, limited-liability company, limited-liability partnership, limited partnership, limited-liability limited partnership, business trust and municipal corporation created and existing under the laws of this State, any other state, territory or foreign government, or the Government of the United States, doing business in this State shall appoint and keep in this State a resident agent who resides or is located in this State, upon whom all legal process and any demand or notice authorized by law to be served upon it may be served in the manner provided in subsection 2. The corporation, miscellaneous organization, limited-liability company, limited-liability partnership, limited partnership, limited-liability limited partnership, business trust or municipal corporation shall file with the Secretary of State a certificate of acceptance of appointment signed by its resident agent. The certificate must set

– 3 –

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE; LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

forth the full name and street address of the resident agent. A certificate of change of resident agent must be filed in the manner provided in title 7 of NRS if the corporation, miscellaneous organization, limited-liability company, limited-liability partnership, limited partnership, limited-liability limited partnership, business trust or municipal corporation desires to change its resident agent. A certificate of name change of resident agent must be filed in the manner provided in title 7 of NRS if the name of a resident agent is changed as a result of a merger, conversion, exchange, sale, reorganization or amendment.

2.  All legal process and any demand or notice authorized by law to be served upon the corporation, miscellaneous organization, limited-liability company, limited-liability partnership, limited partnership, limited-liability limited partnership, business trust or municipal corporation may be served upon the resident agent personally or by leaving a true copy thereof with a person of suitable age and discretion at the address of the registered office shown on the current certificate of acceptance filed with the Secretary of State.

3.  Unless the registered office is the home residence of the resident agent, the registered office of a corporation, miscellaneous organization, limited-liability company, limited-liability partnership, limited partnership, limited-liability limited partnership, business trust or municipal corporation must be staffed during normal business hours by:

(a) The resident agent; or

(b) One or more natural persons who are:

(1) Of suitable age and discretion to receive service of legal process and any demand or notice authorized by law to be served upon the corporation, miscellaneous organization, limited-liability company, limited-liability partnership, limited partnership, limited-liability limited partnership, business trust or municipal corporation

Gayle Kern *is* the registered agent for Lakeside Plaza Condominium Association, Phil Frink & Associates, and Gayle A. Kern, Ltd., as filed with the Nevada Secretary of State *See* Exhibit 1. Gayle Kern's law office received the Complaint - Kern does not apparently deny that fact. Gayle Kern's law office had a person of legal age who received the filings. The fact that the registered agents' office was served, makes it proper service per NRS 14.020.

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

If Kern contends service was improper, then perhaps, she is in violation of NRS

14.030(4) which requires street address of registered agent to be staffed:

> **NRS 14.030  Service of process when artificial person fails to appoint registered agent or when street address of registered agent is not staffed. [Effective July 1, 2008.]**
>    1.  If any artificial person described in NRS 14.020 fails to appoint a registered agent, or fails to file a statement of change of registered agent pursuant to NRS 77.340 before the effective date of a vacancy in the agency pursuant to NRS 77.330 or 77.370, on the production of a certificate of the Secretary of State showing either fact, which is conclusive evidence of the fact so certified to be made a part of the return of service, or if the street address of the registered agent of the artificial person is not staffed as required pursuant to NRS 14.020, which fact is to be made part of the return of service, the artificial person may be served with any and all legal process, or a demand or notice described in NRS 14.020, by delivering a copy to the Secretary of State.

Plaintiff contends that Defendants have the burden of showing that the Gayle Kern's law firm is not a proper agent to receive legal documents.

Plaintiff contends that Defendants had valid service of process because the defendant's employee accepted the papers therefore giving Defendants timely notice of the law.

Plaintiff has, in good faith, made every attempt at serving Gayle Kern, registered agent. Kern is not the only evading service; Plaintiff, in good faith, attempted to mail court filings to Defendant Daniel Joseph (whose counsel was unbeknownst to Plaintiff at the time). Defendant Joseph refused mail service. *See* Exhibit

"[I]f a defendant actually receives a copy of the summons and complaint within the permitted time, he cannot have the action dismissed on the ground that the manner of service contravenes the rules." The defendant acknowledged receiving the summons and complaint within the pertinent time period by retaining counsel and filing a motion to dismiss.

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  Defense counsel received a copy of the summons and complaint before the summons expired.

2  This is adequate to show that the service informed defendant of the action. Indeed, defendant

3  does not argue to the contrary.

4       Furthermore, if Defendants still claim they have not been served. They have now been

5  served, yet again, because attached to this Opposition, Defendants will find a complete copy of

6  the original Complaint served upon the Defendants as Exhibit 1. Email service (through E-

7  Filing) should be sufficient service. Email service (via ECF e-filing) is equivalent to in-hand

8  service then the Supreme Court's plurality decision in <u>Burnham v. Superior Court</u>.

9

10  **III. PERSONAL JURISDICTION AND APPLICATION OF TRANSIENT RULE**

11  **IS PROPER**

12       Here we have a case where a lawyer actively practices in California, where there is hardly

13  any violation of Due Process. In fact, it is Plaintiff's constitutional rights (First and Fourteenth

14  Amendments) that are being violated by the State of Nevada by Defendants' abuse of judicial

15  process and malicious prosecution. Tampering with witnesses seems to be commonplace[1]

16       "A defendant that was not personally served with process within
17       the state must have a sufficient level of personal or business
       contacts with the state in which the court sits that the defendant
18       could reasonably expect to be sued there. These contacts are
       generally referred to by the term of art <u>minimum contacts</u>.
19       Generally speaking, a party is subject to personal jurisdiction in a
       state if the party has *purposely availed* itself of the resources of
20       protection of the state, and if the exercise of jurisdiction does not
       offend *traditional notions of fair play and substantial justice. See*
21

22  _____

23  [1] Eugene Burger, yet again, was implicated in another matter involving a conviction for insurance fraud. Defendant
24  Michael B. Kuimelis , doing business as MBK Insurance, pled guilty in federal district court in San Francisco, CA ,
   to one felony count of criminal contempt and was fined $20,000 and sentenced to three years probation, six months
25  electronic home detention, and 150 hours of community service. Kuimelis submitted invoices for insurance
   premiums under Eugene Burger Manage -( EBMC ) master insurance policy included a commission and a service
26  fee of 15-percent, in addition to the true cost of insurance. The service fee was then split between MBK and EBMC .
   Kuimelis failed to disclose the true percent that he retained from the master insurance policy, and **tried to cover up**
27  **his acts by tampering with a government witness.** In addition, EBMC's portion of the service fee was paid to the
   Friandes Group, Inc of Friandes. Eugene Burger's wife was president of Friandes at the time. <u>United States</u>
28  <u>Department of Housing and Urban Development</u> *Office of Inspector General Semiannual Report to Congress April*
   *1, 2002 - September 30, 2002*

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

International Shoe v. Washington. Leading cases finding minimum contacts sufficient for personal jurisdiction are *International Shoe* and Burger King v. Rudzewicz. Leading cases finding insufficient contacts for personal jurisdiction are World-Wide Volkswagen Corp. v. Woodson and Kulko v. Superior Court." Wikipedia http://en.wikipedia.org/wiki/Personal_jurisdiction

If this matter were to be tried in Nevada, Plaintiff will likely have no justice, as Defendants Perau and Kern have conspired to trump up an Aggravated Harassment & Stalking Order against Plaintiff. Once Plaintiff enters Nevada, Plaintiff alleges Defendants will attempt to, once again, have Plaintiff arrested on trumped up charges. Plaintiff alleges there are serious crimes at stake here, and the only way to cover it up is to intimidate the one who is investigating this matter - Plaintiff.This will serve no justice for Plaintiff, for the mortgage company, the California holder of security interest, and all the California Lakeside Plaza homeowners – if this matter is moved to Nevada. If Plaintiff is falsely detained, so goes justice for all. Plaintiff is homeowners hope to get answers and justice. These are low-income homeowners – many are elderly – they cannot afford $100,000 legal representation to fight crime.

Plaintiff heavily relies on Burnham v. Superior Court, 495 U.S. 604 (1990) and the "minimum contact" standard, although, Plaintiff contends Defendants have *significant* contacts with California (which is well-above the "minimum contact" threshold and more than satisfies jurisdiction).

In Burnham, during a trip to California to conduct business and visit his children, petitioner Burnham, a New Jersey resident, was served with a California court summons and his estranged wife's divorce petition. The California Superior Court denied his motion to quash the service of process, and the State Court of Appeal denied mandamus relief, rejecting his contention that the Due Process Clause of the Fourteenth Amendment prohibited California courts from asserting jurisdiction over him because he lacked "minimum contacts" with the State. The latter court held it to be a valid predicate for *in personam* jurisdiction that he was personally served while present in the forum State.

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE; LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

*Shaffer*, 433 U.S. at 218 (STEVENS, J., concurring in judgment); *see also* Burger King Corp. v. Rudzewicz, 471 U. S. 462, 476 (1985) ("[t]erritorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there"); Glen, An Analysis of "Mere Presence" and Other Traditional Bases of Jurisdiction, 45 Brooklyn L. Rev. 607, 611-612 (1979). Thus, proposed revisions to the Restatement (Second) of Conflict of Laws § 28, p. 39 (1986), provide that "[a] state has power to exercise judicial jurisdiction over an individual who is present within its territory unless the individual's relationship to the state is so attenuated as to make the exercise of such jurisdiction unreasonable. [Footnote 2/11]"

By visiting the forum State, a transient defendant actually "avail[s]" himself, Burger King, supra, at 471 U. S. 476, of significant benefits provided by the State. His health and safety are guaranteed by the State's police, fire, and emergency medical services; he is free to travel on the State's roads and waterways; Page 495 U. S. 638

he likely enjoys the fruits of the State's economy as well. Moreover, the Privileges and Immunities Clause of Article IV prevents a state government from discriminating against a transient defendant by denying him the protections of its law or the right of access to its courts. [Footnote 2/12] *See Supreme Court of New Hampshire v. Piper,* 470 U. S. 274, 281, n. 10 (1985); *Baldwin v. Fish and Game Comm'n of Montana,* 436 U. S. 371, 387 (1978); *see also Supreme Court of Virginia v. Friedman,* 487 U. S. 59, 64-65 (1988). Subject only to the doctrine of *forum non conveniens,* an out-of-state plaintiff may use state courts in all circumstances in which those courts would be available to state citizens. Without transient jurisdiction, an asymmetry would arise: a transient would have the full benefit of the power of the forum State's courts as a plaintiff while retaining immunity from their authority as a defendant. *See* Maltz, Sovereign Authority, Fairness, and Personal Jurisdiction: The Case for the Doctrine of Transient Jurisdiction, 66 Wash.U.L.Q. 671, 698-699 (1988).

The potential burdens on a transient defendant are slight. "*[M]odern transportation and communications have made it much less burdensome for a party sued to defend himself*" in a State outside his place of residence. Burger King, 471 U.S. at 474, quoting McGee v.

1    *International Life Insurance Co.,* 355 U. S. 220, 223 *(1957). That the defendant has already*

2    *journeyed* Page 495 U. S. 639 *at least once before to the forum -- as evidenced by the fact that he*

3    *was served with process there -- is an indication that suit in the forum likely would not be*

4    *prohibitively inconvenient. Finally, any burdens that do arise can be ameliorated by a variety of*

5    *procedural devices.* [Footnote 2/13] *For these reasons, as a rule the exercise of personal*

6    *jurisdiction over a defendant based on his voluntary presence in the forum will satisfy the*

7    *requirements of due process.* [Footnote 2/14] *See* 495 U. S. *11, supra.* Page 495 U. S. 640

8        Later years, however, saw the weakening of the *Pennoyer* rule. In the late 19th and early

9    20th centuries, changes in the technology of transportation and communication, and the

10   tremendous growth of interstate business activity led to an "inevitable relaxation of the strict

11   limits on state jurisdiction" over nonresident individuals and corporations. *Hanson v. Denckla,*

12   357 U. S. 235, 260 (1958) (Black, J., dissenting). States required, for example, that nonresident

13   corporations appoint an in-state agent upon whom process could be served as a condition of

14   transacting business within their borders, *see, e.g., St. Clair v. Cox,* 106 U. S. 350 (1882), and

15   provided in-state "substituted service" for nonresident motorists who caused injury in the State

16   and left before personal service could be accomplished, *see, e.g., Kane v. New Jersey,* 242 U. S.

17   160 (1916); *Hess v. Pawloski,* 274 U. S. 352 (1927). We initially upheld these laws under the

18   Due Process Clause on grounds that they complied with *Pennoyer's* rigid requirement of either

19   "consent," *see, e.g., Hess v. Pawloski, supra,* at 274 U. S. 356, or "presence," *see, e.g.,*

20   *Philadelphia & Reading R. Co. v. McKibbin,* 243 U. S. 264, 265 (1917). As many observed,

21   Page 495 U. S. 618 however, the consent and presence were purely fictional. *See, e.g.,* 1 J. Beale,

22   Treatise on the Conflict of Laws 360, 384 (1935); *Hutchinson v. Chase & Gilbert, Inc.,* 45 F.2d

23   139, 141 (CA2 1930) (L. Hand, J.). Our opinion in *International Shoe* cast those fictions aside,

24   and made explicit the underlying basis of these decisions: due process does not necessarily

25   require the States to adhere to the unbending territorial limits on jurisdiction set forth in

26   *Pennoyer.* The validity of assertion of jurisdiction over a nonconsenting defendant who is not

27   present in the forum depends upon whether "the quality and nature of [his] activity" in relation to

28

--- 9 ---

the forum, 326 U.S. at 319, renders such jurisdiction consistent with "*traditional notions of fair play and substantial justice.*" *Id.* at *326 U. S. 316* (citation omitted). *Subsequent cases have derived from the International Shoe standard the general rule that a State may dispense with in-forum personal service on nonresident defendants in suits arising out of their activities in the State. See generally Helicopteros Nacionales de Colombia v. Hall, 466 U.S. at 414-415. As International Shoe suggests, the defendant's litigation-related "minimum contacts" may take the place of physical presence as the basis for jurisdiction:*

"Historically, the jurisdiction of courts to render judgment *in personam* is grounded on their *de facto* power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding on him. *Pennoyer v. Neff,* 95 U. S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that, in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

> For "transitory actions" may be brought in any court that has jurisdiction of the defendant, and anyone "personally present" in a state is subject to its "jurisdiction," "whether he is permanently or only temporarily there" Restatement, Conflict of Laws §§ 77-78 (1934)

Defendants are subject to personal jurisdiction in California, and subject to the strictures of the FDCPA. Gayle Kern is an attorney, Gayle A. Kern, Ltd. is her law firm. Kern is an attorney registered with the State Bar of California. *See* Exhibit Furthermore, Kern complains that she it is too much of burden to travel to San Jose, CA, and yet, she allegedly frequently travels to Las Vegas for clients (which is much farther than travel to San Jose, CA.  Travel to Las Vegas is approximately 450 miles, whereas travel to San Jose is only approximately 250 miles (almost half the traveling distance). *See* Exhibit Given the fact Defendant Gayle Kern is a practicing California

1    Upon belief and information, Defendant Dan Joseph does business only miles south of

2    San Jose (Gilroy, CA) and has family living in Northern California. Joseph, allegedly owns

3    ParfumLink.com that conducts business at The Outlets in Gilroy, Bldg A. Highway 1 and

4    Leavesly Road 8155 Arroyo Circle, Gilroy, CA 95020 *See* Exhibit

5    Frank Perau, upon belief and information, had a California corporation, United Medical

6    Equipment & Supplies, Inc. Upon belief and information, Perau has close ties to California as he

7    has family in Northern California. *See* Exhibit

8

9    A.          Defendants Conduct Significant and Substantial Business in California
                 and in this District, Making Defendants Subject to this Court's General
10               Personal Jurisdiction

11

12   The evidence of record, substantial monthly income and illegal special assessment from

13   California Lakeside Plaza homeowners, conclusively demonstrates Defendants consistent,

14   pervasive, and daily business in California and in this judicial district. Defendants claim that they

15   do conduct virtually no business in California, but this simply is not the case. A significant

16   amount of monthly income is derived from California Lakeside Plaza homeowners.

17

18   GENERAL JURISDICTION

19       *General jurisdiction* exists when an out-of-state party has
         extensive, *systematic and continuous* dealings with the state in
20       which the court sits. When a court has general jurisdiction over a
         party, the court has personal jurisdiction over any dispute
21       involving the party. Thus, a court's general jurisdiction power is
         equivalent to its power based on presence within the state. As an
22       example, a corporation may advertise and sell so many products
         for such a long time within a state that it is subject to personal
23       jurisdiction for any claim against it, even if the claim involves
         activity that occurred only outside the state. A leading Supreme
24       Court case denying general jurisdiction over a defendant is
25       Helicopteros Nacionales de Colombia v. Hall, 466 US 408 (1984).
         Conversely, a court's *specific jurisdiction* power over a party, when
26       the party does not have systematic and continuous contacts with
27       the state, is specific to cases that have a substantial connection to

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

the party's in-state activity. <u>Wikipedia</u>
<u>http://en.wikipedia.org/wiki/Personal_jurisdiction</u>

Defendants are no strangers to California. Not to mention Defendants send regular mail, bills demanding extortion money (illegal, unequally enforced special assessments) to California residents. *See* Exhibit. Plaintiff contends general jurisdiction applies as Defendants have regular, systematic, and continuous dealings with California (California residents) who own Lakeside Plaza condos.

A large percentage of California Lakeside Plaza homeowners will be affected by the outcome of this case. *See* Exhibit Upon belief and information, 191 demand letters were mailed to Lakeside Plaza homeowners, many of them California residents. The fact Defendants knowingly and blatantly violated federal and state laws, clearly indicates a minimum of 191 counts of mail fraud and RICO.

Money was extorted from California Lakeside Plaza homeowners given the fact the nearly half-million dollar assessment was unequally enforced and instituted without a required homeowner vote. Many payments to Lakeside Plaza on the "debt" in question were made in California drafted on Plaintiff's California checks from Plaintiff's California checking account. The outcome of this case is in the interest of California, as many Lakeside Plaza homeowners are residents of California. *See* Exhibit

Defendant asserts that it has no offices or employees in California.

> [E]stablishing such contacts in a forum state is unnecessary to be able to assert personal jurisdiction over a defendant; the mere fact that a business had economic gain from customers in Illinois who procured its services is enough to show that a business purposefully availed itself of the privilege of conducting activities within Illinois. <u>International Star Registry of Illinois</u>, 1999 WL 300285 (N.D.Ill) at *6.

Although the Defendant Kern argues that the communications between Defendants Gayle A. Kern, Gayle Kern Firm and Plaintiff Sheryl Moulton were insignificant, and few and far between, "it is the quality of contacts, not their number that determine whether they amount to

– 12 –

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  purposeful availment for jurisdiction purposes. A single act may be sufficient to find that

2  business was transacted ..." <u>International Star Registry of Illinois</u>, 1999 WL 300285 (N.D.Ill) at

3  *7.

4           Direct business activity conducted over the internet is sufficient to establish minimum

5  contact and purposeful availment; however, even if a contract were to be considered insufficient

6  to establish personal jurisdiction, additional e-mail and telephone contacts between the parties

7  evidence the existence of business transactions between the plaintiff and defendant. Thus,

8  defendant has established sufficient minimum contacts with California that bringing Defendants

9  into the jurisdiction of this court would meet due process standards of fair play and substantial

10 justice.

11 Finally, the Defendant claims that the FDCPA does not pertain to lawyers, and that the motion to

12 dismiss should be granted on that ground. However, FDCPA does not exempt attorneys from the

13 FDCPA. Plaintiff has found no statutory clause exempting lawyers from the FDCPA.

14 Furthermore, defendants provide no other definitive support toward this claim. Thus, it is an

15 insufficient basis on which to grant a motion to dismiss.

16           The exercise of jurisdiction over a nonresident defendant turns on whether 'the defendant

17 has such minimum contacts with the state that the assertion of jurisdiction does not violate

18 "traditional notices of fair play and substantial justice." <u>Snowney v. Harrah's Entertainment</u>,

19 Inc., 35 Ca. 4th 1054, 1061 (Cal. 2005), <u>cert. denied</u>, 126 S. Ct. 659 (U.S. 2005), quoting <u>Vons</u>

20 <u>Companies, Inc. v. Seabest Foods, Inc.</u>, 14 Cal. 4th 434, 464, 58 Cal. Rptr. 2d 899 (1996) and

21 <u>International Shoe Co. v. Washington</u>, 326, U.S. 310, 316 (1945).

22           Further, "[a] defendant whose contact with a state are 'substantial' or 'continuous and

23 systematic' can be hailed into court in that state in any action, even if the action is unrelated to

24 those contact." <u>Bancroft & Masters, Inc. v. Augusta National, Inc.</u> 223 F.3d 1082, 1086 (9th Cir.

25 2000), citing <u>Helicopteros Nationales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415 (1984). This

26 is known as general jurisdiction. Determining whether a corporate defendant's contacts in a

27 particular case are substantial and continuous turns on the "economic reality of the defendants'

28 activities rather than a mechanical checklist." <u>Tuazon v. R.J. Reynolds Tobacco Co.</u>, 433 F.3d

1    1163, 1173 (9ᵗʰ Cir. 2006). citing <u>Gates Learject Corp. v. Jensen</u>, 743 F.2d 1325, 1331 (9ᵗʰ Cir.

2    1984).

3    However, where the contacts are part of the defendant's core business, and the contacts

4    are significant (millions of dollars in revenues) this supports the imposition of general

5    jurisdiction. *See* <u>Tuazon</u>, 433 F.3d at 1174. Over 60% of Lakeside Plaza homeowners reside out

6    of state – most of those out-of-state Lakeside Plaza homeowners reside in California. A

7    significant amount of income (and illegally assessed special assessments/extortion money)

8    comes from California victims via United States mail (mail fraud/RICO).

9    Even if a defendant's contact with a state are not continuous or systematic, a court may

10   exercise specific jurisdiction.

11

12   <u>VENUE IS PROPER – THIS ACTION SHOULD NOT BE TRANSFERRED TO NEVADA</u>

13   It is only proper to transfer venue to a court where the case originally could have been

14   brought (i.e., the "transferee court must have proper subject matter jurisdiction, proper venue,

15   and be able to exercise personal jurisdiction" over the non-moving party). <u>Shell v. Shell Oil Co.</u>,

16   165 F.Supp. 2d 1096, 1103 (C.D. Cal 2001). Such is not the case here, as the Nevada Court

17   would not have personal jurisdiction over Plaintiff Moulton. Moulton does not live in Nevada.

18   Moulton lives and works in Santa Clara County. Although, Moulton formerly lived in Nevada,

19   Moulton was threatened by Defendants (death threat, Aggravated Harassment & Stalking Order,

20   false arrest) – needless to say, Plaintiff left Nevada for peace and justice.

21   It would completely violate Plaintiff's constitutional rights to return to Nevada (as arrest

22   threats have been made to Plaintiff by Sparks Police alleging for asserting the Right to Redress

23   and Freedom of Speech regarding the illegal foreclosure and alleged embezzlement of Lakeside

24   Plaza funds.) It would pose tremendous burden and expense on Plaintiff to return to Nevada.

25   Furthermore, Plaintiff has a significant number of California witnesses that would like to testify

26   at trial. It would pose burden on Plaintiff's witnesses to travel to Nevada for trial.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1    "Typically, a court should give a plaintiff's choice of forum great deference unless the

2    defendant can show that other factors of convenience clearly outweigh the plaintiff's choice of

3    forum", citing <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986).

4    It appears that Defendants are simply attempting to forum shop with its present motion.

5    In any event, the mere fact that local litigation is inconvenient for Defendants is not a compelling

6    reason to transfer. Requiring a non-resident to defend locally is not constitutionally unreasonable

7    "in this era of fax machines and discount air travel". Sher v. Johnson, 911 F.2d 1357 (9th Cir.

8    1990). Moreover, Defendants have significant ties to California (namely Northern California),

9    making a change of venue contrary to interest of justice. Defendants' motion should be denied it

10    its entirety.

11    Venue is proper because a significant part of the acts and omissions giving rise to his

12    claim did occur in the Northern District, thereby satisfying the requirements of § 1391(a) for

13    diversity jurisdiction and of § 1391(b) for federal question jurisdiction.

14    Should this case be moved to Nevada, Plaintiff will most likely continue to suffer violations of

15    Due Process as explained in Plaintiff's Opposition to Defendants Motion to Dismiss. In Nevada,

16    Plaintiff has already suffered deprivation: to her life (death threats), liberty (false arrest &

17    continued threats of arrest), and property (illegal foreclosure) without due process of the law – all

18    a scheme by Defendants to allegedly intimidate Plaintiff from prosecuting this matter.

19    Defendants suffer no deprivation of Fourteenth Amendment rights, therefore, this Court must

20    weigh the amount of harm and deprivation of Constitutional rights a change of venue will have

21    on the parties. Clearly, harm to Plaintiff clearly outweighs any perceived constitutional violation

22    of defendants.

23    It is not in Nevada's interest to protect the victimized homeowners; Nevada has already

24    proven that by threatening homeowners' liberties and Constitutional rights. Plaintiff requests a

25    level playing field, non-bias venue to hear this case.

26    Defendants Kern is a lawyer who practices in California, which shows that it is not all

27    that difficult for her to come there.

28

1    A large percentage of witnesses and victimized homeowners LIVE in California (mostly

2    in Northern California). It is more convenient to call upon these California residents as witnesses

3    here in California, than in Nevada. Burden will be significant for California witnesses to travel to

4    Nevada.

5    The Due Process Clause of the Fourteenth Amendment protects *persons* against

6    deprivation of life, liberty, or property without due process of law "[N]or shall any State deprive

7    any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend.

8    XIV, § 1. 160 See Int'l Shoe Co. v. Washington, 326 U.S. 310, 319–

9

10   Furthermore, it is in the State of California:

11   1) Plaintiff received bills for said illegal special assessment,
     2) Plaintiff submitted payments to Lakeside Plaza Condominium Association,

12   3) Plaintiff made her down payment on her condominium purchase and began the process
     of finalizing her condo purchase,

13   4) where a California real estate security in the Nevada condo was recorded against her

14   property.
     5) by forcing Plaintiff to move from Nevada in fear for her life and liberty due to

15   harassment and retaliation under FDCPA, Defendants have forced Plaintiff to incur

16   significant damages in California (legal costs, additional housing and storage costs,
     moving costs, – all which occurred here in California). The bulk of the damages occurred

17   here in California, as Plaintiff is under tremendous stress and in fear for her life – the
     bulk of possibly punitive damages – occurring here in California.

18

19

20   FEDERAL QUESTION JURISDICTION IS PROPER

21   The fraudulent lien (unequally enforced special assessment) against Plaintiff's condo

22   violates Fair Debt Collection Practices Act, it also defrauds the mortgage company (Chase

23   Mortgage) and a California security interest held against Plaintiff's home. *See* Exhibit

24   SUBJECT MATTER JURISDICTION IS PROPER

25   Gayle A. Kern and Gayle A. Kern, Ltd., are "debt collectors" pursuant to Fair Debt

26   Collection Practices Act, therefore, jurisdiction is proper.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

THE REMAINDER OF THIS OPPOSITION IS COMPRISED OF PLAINTIFF'S DOCKET #18 AND WILL BE INCORPORATED IN THIS FILING.

This lawsuit by Plaintiff Sheryl Moulton is brought pursuant to the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and several other federal questions causing this Court to have proper jurisdiction – including Racketeer Influenced and Corrupt Organizations Act ("RICO") §§1961, 1962 1964, et seq. Plaintiff's other causes of action include injunction relief, declaratory relief, breach of contract, retaliation, non-uniform enforcement, tortious interference with real estate sale, breach of fiduciary duty, conversion, defamation, extortionate extension of credit, fraud, conspiracy to defraud, fraudulent recordation of an illegal foreclosure/lien, negligence, unconscionability, unfair business practice, Restatement of Torts §§ 549, 552, 652.

Moulton seeks declaratory and injunctive relief from the imminent foreclosure of her home, as well as actual and punitive damages as well as injunctive relief for harm caused by the wrongful foreclosure of her home for her declination to pay an invalid, unequally enforced illegal assessment (a proration of a nearly $400,000 special assessment that **required** a homeowner vote).

Plaintiff *pro se* hereby moves this Court for leave to amend her Complaint. Plaintiff did not have adequate time to prepare a complaint due to the impending illegal foreclosure of her home. Furthermore, Plaintiff seeks leave to amend the opposition to Defendants' Motion to Dismiss.

Plaintiff moves this Court for its order to disqualify Defendant Gayle Kern from representing her co-defendants. Plaintiff moves this Court for its order to strike Defendants' Motion to Dismiss or, in the alternative, Plaintiff respectfully requests Defendants' Motion to Dismiss be denied.

This motion to disqualify counsel is based on the grounds fiduciary exemption to attorney-client privilege, willful violations of Fair Debt Collection Practices Act, conspiracy to defraud, breach of fiduciary duty, and breach of contract. Gayle A. Kern's representation of her co-defendants represents a <u>clear conflict of interest</u> (as Kern is also a co-defendant in this case).

– 17 –

1    Furthermore, the opposition to Defendants' Motion to Dismiss is based on the grounds

2    there are several federal questions in this matter -Fair Debt Collection Practices Act, Racketeer

3    Influenced and Corrupt Organizations Act ("RICO") §§1961, 1962 1964, et seq. causing this

4    Court to have proper jurisdiction.  Plaintiff's other causes of action include injunction relief,

5    declaratory relief, breach of contract, retaliation, non-uniform enforcement, tortious interference

6    with real estate sale, breach of fiduciary duty, conversion, defamation, extortionate extension of

7    credit, fraud, conspiracy to defraud, fraudulent recordation of an illegal foreclosure/lien,

8    negligence, unconscionability, unfair business practice, Restatement of Torts §§ 549, 552, 652.

9    In the alternative to a Motion to Strike, Defendants' Motion to Dismiss should be denied

10   as there are serious triable issues at hand.

11   The following renders the "debt" and pending illegal foreclosure in question as null and

12   void namely because:

13   1) the debt is unequally enforced against Plaintiff, but not among other homeowners

14   (fraud/misrepresentation/tortious interference);

15   2) illegal pursuant to Fair Debt Collection Practices Act (as it has not been validated);

16   3) breaches contract (CC&Rs) which specify homeowner vote required for special

17   assessment;

18   4) illegal pursuant to legislation and precedent case law; and

19   5) Plaintiff's home is protected by Homestead Declaration, state and federal laws.

20

21   Furthermore, Plaintiff and other Lakeside Plaza homeowners have been refused access to

22   financial records (or copies thereof) and refused financial records for several years' of

23   assessments totaling approximately $1,000,000 (including nearly $1/2 million from an illegally

24   assessed special assessment). Defendants' refusal to provided financial records is a blatant and

25   willful violation of Fair Debt Collection Practices Act, federal and state laws. Defendants'

26   refusal to Lakeside Plaza financial records seems to suggest it is perfectly fine to accept

27   homeowners' money, but just not account for how/where homeowners' money it is spent.

28

– 18 –

1    On December 10, 2007, Defendants Ulla Christensen, Michael Grady, Daniel Joseph,

2  Frank A. Perau, Rich Svihla, filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for

3  failure to state a claim upon which relief can be granted.

4    First, Plaintiff Moulton objects to the motion for a 12(b)(6) dismissal as there are valid

5  claims that were properly pled in Plaintiff's Complaint, namely, the fact Plaintiff's home is

6  facing an illegal foreclosure due to an invalid "debt".

7    Second, Defendants' attorney, Gayle A. Kern is a co-defendant in this matter involving

8  conspiracy to defraud and should be disqualified as Defendants' counsel.

9    Third, Kern should be disqualified per fiduciary exemption to attorney-client privilege.

10   Fourth, Kern's representation is a clear conflict – Kern cannot possibly represent her

11  clients to the best of her ability if she is also their co-defendant.

12   Fourth, Plaintiff contends Defendants' motion has not made a showing of good cause.

13   The following renders the "debt" and pending illegal foreclosure in question as null and

14  void namely because: 1) the debt is unequally enforced against Plaintiff, but not among other

15  homeowners (fraud/misrepresentation/tortious interference); 2) illegal pursuant to Fair Debt

16  Collection Practices Act (as it has not been validated); 3) breaches contract (CC&Rs) which

17  specify homeowner vote required for special assessment; 4) illegal pursuant to legislation and

18  precedent case law; and 5) Plaintiff's home is protected by Homestead Declaration, state and

19  federal laws..

20   This matter involves an unequally enforced homeowners association special assessment

21  (which breaches contract/CC&Rs), illegally enforced against Plaintiff causing her the foreclosure

22  and loss of her home. The special assessment in question was originally approximately $400,000

23  (Plaintiff's proration of "debt" was approximately $1,700). However, Defendants have conspired

24  to inflate this "debt" of $1,700 to nearly $4,000 (without any validation of this "debt" to this

25  Court or Plaintiff).

26

27              **II.    STATEMENT OF FACTS**

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1      Plaintiff Sheryl Moulton purchased a condo in the Lakeside Plaza Condominium

2   Association ("Association") on or about November 2005. The condominium community is

3   subject to Declaration of Covenants, Conditions, and Restrictions ("CC&Rs").

4      The mortgage for said condo was originally with Century 21 Mortgage, but later sold to

5   Chase Mortgage.

6      Lakeside Plaza Condominium Association was formerly managed by Eugene Burger

7   Management Corporation ("EBMC), owned by Eugene J. Burger, and its agents Kevin Berg and

8   Karen Brigg.

9      Defendant Eugene J. Burger, was previously up on criminal indictments (case later

10  settled allegedly per Rule of Lenity) charging six counts of theft from a program receiving

11  federal funds and aiding and abetting (18U.S.C. § 666(a)(1)(A); six counts of money-laundering

12  and aiding and abetting in violation of 18 U.S.C. § 1956(a)(1)(B)(i); thirty-three counts of

13  violating the Anti-Kickback Act and aiding and abetting (41 U.S.C. § 53 and 18 U.S.C.; and one

14  count of obstruction of justice and aiding and abetting in violation of 18 U.S.C. § 1505. The

15  indictment alleged that Burger was the owner of Eugene Burger Management Corporation

16  ("EBMC"), a property management company which was the management agent for **50 - 70**

17  **multi-family housing developments in several states**. United States v. BURGER, 2000 U.S.

18  Dist. LEXIS 22066 (N.D.Cal.). *See* Exhibit 1

19     Eugene Burger, yet again, was implicated in another matter involving a conviction for

20  insurance fraud. Defendant Michael B. Kuimelis , doing business as MBK Insurance, pled guilty

21  in federal district court in San Francisco, CA , to one felony count of criminal contempt and was

22  fined $20,000 and sentenced to three years probation, six months electronic home detention, and

23  150 hours of community service. Kuimelis submitted invoices for insurance premiums under

24  Eugene Burger Manage -( EBMC ) master insurance policy included a commission and a service

25  fee of 15-percent, in addition to the true cost of insurance. The service fee was then split between

26  MBK and EBMC . Kuimelis failed to disclose the true percent that he retained from the master

27  insurance policy, and **tried to cover up his acts by tampering with a government witness.** In

28  addition, EBMC's portion of the service fee was paid to the Friandes Group, Inc of Friandes.

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1    Eugene Burger's wife was president of Friandes at the time. <u>United States Department of</u>

2    <u>Housing and Urban Development</u> *Office of Inspector General Semiannual Report to Congress*

3    *April 1, 2002 - September 30, 2002 See* Exhibit 2

4        Kern regularly serves as a "collection agent" for homeowners associations (many of them

5    managed by Eugene Burger Management Corporation), upon information and belief. She also

6    regularly processes condominium liens and foreclosures – thereby, constituting a "collection

7    agent" under Fair Debt Collection Practices Act ("FDCPA").

8        Defendants Ulla Christensen, Michael Grady, Daniel Joseph, Frank A. Perau, and Rich

9    Svihla are Lakeside Plaza Condominium Association Board Directors. These Defendants are

10   being sued **both** as individuals and as in the capacities as Lakeside Plaza Board Directors, as

11   Plaintiff alleges the have acted in bad faith and have conspired to defraud homeowners of nearly

12   $400,000 special assessments (without a required homeowner vote), and have processed

13   foreclosures on those unwilling to pay the extortionate illegal special assessment. Furthermore,

14   Plaintiff has witnesses and evidence proving some have not paid the special assessment, and that

15   it the nearly $400,000 special assessment is unequally enforced.

16       Defendant Phil Frink & Associates, Inc. is upon belief and information is a "collection

17   agency" owned by Phillip E. Frink.  The "foreclosure" of Plaintiff's home was processed by

18   collection agency, Phil Frink & Associates, Inc.

19       One underlying issue here is contractual - whether the Association may levy a special

20   assessment of nearly $400,000 against homeowners (without a homeowner vote) when it is in

21   direct violation of law and Lakeside Plaza CC&Rs.

22       The foreclosure of Plaintiff's home not uniformly enforced, meanwhile other

23   homeowners have not paid the special assessment and have no foreclosure proceedings against

24   them. Plaintiff has evidence and witnesses proving non-uniform enforcement and fraud.

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1

## III.    ARGUMENT

2  The "debt" and pending illegal foreclosure in questions should be rendered as null and

3  void namely because:

4  1) they are unequally enforced against Plaintiff, but not among other homeowners

5  (fraud/misrepresentation/tortious interference);

6  2) they are illegal pursuant to Fair Debt Collection Practices Act (as it has not been

7  validated);

8  3) they breach contract (CC&Rs) which specify homeowner vote required for special

9  assessment;

10  4) they are illegal pursuant to legislation and precedent case law; and

11  5) Plaintiff's home is protected by Homestead Declaration, federal and state laws.

12

13  ## BREACH OF CONTRACT/CC&Rs – SPECIAL ASSESSMENT REQUIRES

14  ## HOMEOWNER VOTE

15  Defendants breach CC&Rs state that a special assessment **requires** homeowner vote –

16  there was no homeowner vote for the nearly $400,000 special assessment:

17  § 6.2 (in relevant part)

18  In the event any special assessment…when added to the annual
19  assessment causes the **total annual assessment** for said calendar
    year to be **more than 25% higher** than the annual assessment for
20  the prior year, the **vote or written consent of both classes of
    members shall be required for such special assessmen**t;
21  (emphasis added) *See* Exhibit 3

22

23  Plaintiff's normal HOA dues were $143.09 monthly, however, with the illegal special

24  assessment, Plaintiff's dues were raised to $285.07 monthly. The difference is $141.98, nearly

25  100% (99.2%) increase in monthly dues. To almost double monthly fees fixed-income,

26  especially on elderly, disabled, and fixed-income homeowners, it was not only a breach of

27  contract, it was simply extortionate.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  **STATE LAW VIOLATION – GOVERNOR VETOED BILL AB396 ASSESSMENTS**
2  **WITHOUT HOMEOWNER VOTE**

3      June 15, 2007, Governor Jim Gibbons vetoed Assembly Bill 396. This bill would have

4  allowed homeowners associations to increase assessment without homeowner vote. *See* Exhibits

5  4,5

6      Nearly one month later **after** Governor Gibbons' veto of assessments without

7  homeowner vote, in bad faith, the Lakeside Plaza Board had a Lien recorded against Plaintiff's

8  home July 5, 2007. *See* Exhibit 6 This lien was recorded, in bad faith, nearly 1 month after

9  Governor Gibbons vetoed Assembly Bill 396 ("AB 396"). Governor Gibbons **vetoed** the bill that

10 would have allowed increased assessments without a homeowner vote, therefore, rendering the

11 lien and later foreclosure as null and void. However, in spite of this vetoed bill, the Defendants,

12 in bad faith, still pursue foreclosure proceedings against Plaintiff home, therefore, the reason for

13 this legal action – to save Plaintiff's home from illegal foreclosure.

14     While Defendants contend funding the reserves is mandatory per state law – state law

15 also **requires homeowner vote for increased assessments** per Governor Gibbons' veto of AB

16 396. Per NRS 116.3115(2)(b), State law allows that "the association shall establish *adequate*

17 reserves, but not *fully* funded – there is a crucial difference between the two – the difference

18 between a homeowner facing foreclosure.

19     The Board had the option to assess over a 4-5 year period of time (which would have

20 complied with CC&Rs that provides for assessments less than **25% per year increase do not**

21 **require a homeowner vote**). However, a nearly 100% increase in assessments is exorbitant and

22 extortionate – and homeowners did not approve.

23
24         **NRS 116.3115  Assessments for common expenses; funding of**
           **adequate reserves; collection of interest on past due**
25         **assessments; calculation of assessments for particular types of**
           **common expenses; notice of meetings regarding assessments**
26         **for capital improvements**…

27         2.  Except for assessments under subsections 4 to 7, inclusive:
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

(a) All common expenses, including the reserves, must be assessed against all the units in accordance with the allocations set forth in the declaration pursuant to subsections 1 and 2 of NRS 116.2107.

(b) The association shall establish adequate reserves, funded on a reasonable basis, for the repair, replacement and restoration of the major components of the common elements. The reserves may be used only for those purposes, including, without limitation, repairing, replacing and restoring roofs, roads and sidewalks, and must not be used for daily maintenance. The association may comply with the provisions of this paragraph through a funding plan that is designed to allocate the costs for the repair, replacement and restoration of the major components of the common elements over a period of years if the funding plan is designed in an actuarially sound manner which will ensure that sufficient money is available when the repair, replacement and restoration of the major components of the common elements are necessary.

Arbitrator's decision <u>Friedrich v. Rancho Bel Air Homeowner's Association (Carson City, NV)</u> also reinforces the fact that boards obtain a favorable vote from residents to implement special assessments. *See* Exhibit 7

## **FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS - UNEQUALLY ENFORCED "DEBT" – ACTS OF OMISSION/FRAUD/MISREPRESENTATION**

Furthermore, the defendants have engaged in an act or omission prohibited by the FDCPA. 15 U.S.C. § 1692 et seq. this alleged "debt" is **unequally enforced**. Furthermore, Defendants even admit that a homeowner was allowed certain "accommodations" for paying the assessment. Plaintiff made this same request, and was denied. *See* Exhibit 8.

Defendants even admit a homeowner was provided special accommodations. *See also* Defendants' Motion to Dismiss Exhibit "D" ¶19.

Lakeside Plaza Condominium Association Board Directors instituted a nearly $400,000 special assessment against homeowners without a required homeowner vote. Defendants even admit that a minority of people chose **not** to pay the reserve *See* Defendants' Motion to Dismiss (3:3-4), and yet, there are only 2 foreclosures proceedings (including the foreclosure of

– 24 –

1  Plaintiff's home). *See* Exhibit 9. There are 6 other homeowners with liens (one as far back as

2  January 2006), however, these homeowners have no foreclosures (notices of default) recorded

3  against their properties.

4       Furthermore, Plaintiff is prepared to present witnesses who will testify they did not pay

5  the illegal special assessment in its entirety, and yet, they, too, have **no** liens, **no** foreclosures

6  against their homes –again, unequal enforcement.

7       Nevada Revised Statute ("NRS") **116.2107 provides that a homeowners association**

8  **CC&Rs (Declaration) may not discriminate in favor (of certain units)**:

9

10       **NRS 116.2107  Allocation of allocated interests.**
         1.  The declaration must allocate to each unit:

11       (a)     In a condominium, a **fraction or percentage of undivided**

12       **interests in the common elements and in the common expenses**
         **of the association** (**NRS 116.3115**) and a portion of the votes in

13       the association;…

14       **2.**     The declaration must state the formulas used to establish

15       allocations of interests. **Those allocations may not discriminate**
         **in favor of units owned by the declarant or an affiliate of the**

16       **declarant. (emphasis added).**

17

18       Only **one day** after Plaintiff Moulton filed her Complaint against Defendants, Defendant

19  Lakeside Plaza Condominium Association then, in turn, sued co-defendant Eugene Burger

20  Management Corporation[2]. Lakeside Plaza Condo v. Eugene Burger Mgt, Case No. CV07-

21  02674, Second Judicial District Court State of Nevada, Washoe County. *See* Exhibit 10

---

22

23       [2] Defendant Eugene J. Burger, was previously up on criminal indictments (case later settled allegedly per
     Rule of Lenity) charging six counts of theft from a program receiving federal funds and aiding and abetting

24  (18U.S.C. § 666(a)(1)(A); six counts of money-laundering and aiding and abetting in violation of 18 U.S.C. §
     1956(a)(1)(B)(i); thirty-three counts of violating the Anti-Kickback Act and aiding and abetting (41 U.S.C. § 53 and

25  18 U.S.C.; and one count of obstruction of justice and aiding and abetting in violation of 18 U.S.C. § 1505. The
     indictment alleged that Burger was the owner of Eugene Burger Management Corporation ("EBMC"), a property

26  management company which was the management agent for **50 - 70 multi-family housing developments in
     several states**. United States v. BURGER, 2000 U.S. Dist. LEXIS 22066 (N.D.Cal.).

27       Burger, yet again, was implicated in another matter involving a conviction for insurance fraud. United
     States Department of Housing and Urban Development *Office of Inspector General Semiannual Report to Congress*

28  *April 1, 2002 - September 30, 2002*

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1   Lakeside Plaza Condominium Association's complaint alleges EBMC's non-uniform

2   enforcement of their collection policies:

3

4           <u>Lakeside Plaza Condominium Association v. EBMC</u> Complaint ¶ 9:

5           Defendant EBMC knew that a homeowners association **may not**
            **apply different collection policies to different members** and
6           knew that the adoption of any policy is within the sole discretion of
7           the Board of Directors of Lakeside Plaza." *See* Exhibit 10

8           <u>Lakeside Plaza Condominium Association v. EBMC</u> Complaint ¶ 27:
            The community manager is required to remind an Association to
9           comply with all laws in accordance with its obligations of NAC
10          116.300(14). *See* Exhibit 10

11          <u>Lakeside Plaza Condominium Association v. EBMC</u> Complaint ¶ 30:
12          Defendant EBMC knew, or should have known, that the very nature of
            the common interest community prohibits any disparate treatment of
13          members. *See* Exhibit 10

14          <u>Lakeside Plaza Condominium Association v. EBMC</u> Complaint ¶ 17:
15          On information and belief, taking the actions that it did, defendant
            EBMC acted for reasons of self-interest and gain. *See* Exhibit 10
16

17      This case, along with other Lakeside Plaza homeowners' litigation [3] regarding the

18  illegally imposed special assessment, proves there are serious triable issues regarding this matter.

19

20  **<u>FAIR DEBT COLLECTION PRACTICES ACT VIOLATION - NO VALIDATION OF</u>**

21  **<u>ALLEGED DEBT</u>**

22      First and foremost, an illegal, invalid debt renders foreclosure illegal. Defendants have

23  yet to VALIDATE any debt owed as required by Fair Debt Collection Practices Act to this Court

24  or to Plaintiff. Defendants claim in their Motion to Dismiss that approximately $4,000 is due,

25  and yet, their own exhibit shows only approximately $1,600 due. *See* Defendants' Motion to

26  _____

27  [3] <u>Friedman v. Lakeside Plaza Condo</u>, Case No. CV07-01774, Second Judicial District Court State of
28  Nevada, Washoe County) – Lakeside Plaza condominium owner's lawsuit to revoke the nearly $400,000
    assessment illegally assessed Lakeside Plaza homeowners without a required homeowner vote.

1  Dismiss Exhibit "C" The $4000 needs to be **validated and proven** – Defendants fail to validate
2  this "debt" even to this Court.

3  　　　　Furthermore, Defendants and Defendant Gayle Kern have provided varying amounts due.
4  A letter dated January 9, 2007 from Defendant Karen Brigg/EBMC demanded Plaintiff pay in
5  full $1,761.25. *See* Exhibit 11

6  　　　　January 15, 2007, Defendant Frank Perau emailed a letter to Plaintiff in violation of
7  FDCPA (i.e. misrepresentation of "debt" amount due, retaliation and threats of additional legal
8  fees to attempting to get validation of said "debt", etc.. *See* Exhibit 12 Perau's email stated:

9  　　　　　　　First, EBMC should not have sent you the "delinquent notice" that
10  　　　　　　　you received.  Your account has already been forwarded to our
　　　　　　　　legal counsel to begin the collection of your past due assessments.

11
12  　　　　　　　Second, the information contained in the "delinquent notice" was
　　　　　　　　incorrect.  The clerk that sent the notice indicates that you have a
13  　　　　　　　delinquent sum of $1,761.25.  That amount is the "total" amount
　　　　　　　　owed on your account (as shown on the ledger).  You have missed
14  　　　　　　　your last five (5) payments for the Reserve Fund Assessment.  That
　　　　　　　　delinquency is $709.90 ($141.98 x 5).
15

16  　　　　　　　However, upon examining your ledger I noticed that EBMC's
　　　　　　　　accounting department had failed to post additional charges to your
17  　　　　　　　account and that will be dealt with on Tuesday, January 16.  You
　　　　　　　　see, pursuant to NRS 116.3115(6) **the association has the right to**
18  　　　　　　　**assess all expenses to an owner for all costs that arise out of**
　　　　　　　　**that owner's misconduct.**  You should have been charged for all
19  　　　　　　　attorney's fees/costs that the association incurred to write you
　　　　　　　　letters regarding your violations of our governing documents and
20  　　　　　　　to notice you of and to attend your hearing as a result of those
　　　　　　　　violations.  Again, those charges will be added and you will
21  　　　　　　　receive a new statement of your account.
22

23  　　　The January 15, 2007 letter from Defendant Perau stated a delinquency of $709.90,
24  　　　　One month later, a letter dated February 15, 2007 from Defendant Gayle Kern entitled
25  "Notice of Intent to Proceed with Notice of Delinquent Assessment and Foreclosure" stated "Our
26  records reflect that as of February 1, 2007, you owe the amount of $1,040.24 for the Special
27  Reserve Assessment through February. *See* Exhibit 13 Unfortunately, you have failed to make
28  arrangements or bring the account current. In addition you are now responsible for attorney's

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  fees and costs in the amount of $205.00 for a total now due of $1,245.24" – a difference of

2  $535.34, and yet all these discrepant varying total amounts due, and no validation under FDCPA.

3      FDCPA provides that a letter used by attorneys in debt collection, that made **blanket**

4  **statement of different amounts** that debtors might owe depending on when their delinquent

5  payments began, did not "state amount of debt owed," in context of Fair Debt Collection

6  Practices Act (FDCPA), since letter put those debtors that were not delinquent in making

7  payments at risk of being deceived that they owed full amount when, in fact, they may not.

8  Consumer Credit Protection Act, § 809(a)(1), as amended, 15 U.S.C.A. §1692g(a)(1).

9      Plaintiff's lawsuit is not the only legal action taken against these Defendants for this

10  wrongful, fraudulent assessment. *See* <u>Friedman v. Lakeside Plaza Condo, CV07-01774 District</u>

11  <u>Court, Reno, Nevada.</u> *See* also Defendants' Motion to Dismiss Exhibit "D".

12      Furthermore, Plaintiff and other Lakeside Plaza homeowners have been refused access to

13  financial records (or copies thereof) and refused financial records for several years' of

14  assessments totaling approximately $1,000,000 (including nearly $1/2 million from an illegally

15  assessed special assessment). Defendants' refusal to provided financial records is a blatant and

16  willful violation of Fair Debt Collection Practices Act, federal and state laws. Defendants'

17  refusal to Lakeside Plaza financial records seems to suggest it is perfectly fine to accept

18  homeowners' money, but just not account for how/where homeowners' money it is spent.

19          **NRS 116.31175 Maintenance and availability of books,**
           **records and other papers of association: General**
20          **requirements; exceptions; general records concerning certain**
           **violations; enforcement by Ombudsman; limitations on**
21          **amount that may be charged to conduct review.**
           1.     Except as otherwise provided in this subsection, the
22          executive board of an association shall, upon the written request of
           a unit's owner, make available the books, records and other papers
23          of the association for review during the regular working hours of
           the association, including, without limitation, all contracts to which
24          the association is a party and all records filed with a court relating
           to a civil or criminal action to which the association is a party.
25
26
27          (c) Must be maintained in an organized and convenient filing
           system or data system that allows a unit's owner to search and
28

---

– 28 –

review the general records concerning violations of the governing documents.

(b) The minutes of a meeting of the executive board which must be maintained in accordance with NRS 116.31083.

**NRS 116.31177  Maintenance and availability of certain financial records of association; provision of copies to units' owners and Ombudsman.**

1.  The executive board of an association shall maintain and make available for review at the business office of the association or some other suitable location within the county where the common-interest community is situated or, if it is situated in more than one county, within one of those counties:

(a) The financial statement of the association;

(b) The budgets of the association required to be prepared pursuant to NRS 116.31151; and

(c) The study of the reserves of the association required to be conducted pursuant to NRS 116.31152.

2.  The executive board shall provide a copy of any of the records required to be maintained pursuant to subsection 1 to a unit's owner or the Ombudsman within 14 days after receiving a written request therefore. The executive board may charge a fee to cover the actual costs of preparing a copy, but not to exceed 25 cents per page.

(Added to NRS by 1999, 2997; A 2003, 2246)

**NRS 116.3118  Maintenance and availability of certain financial records necessary to provide information required for resale of units; right of units' owners to inspect, examine, photocopy and audit records of association.**

1.  The association shall keep financial records sufficiently detailed to enable the association to comply with NRS 116.4109.

2.  All financial and other records of the association must be:

(a) Maintained and made available for review at the business office of the association or some other suitable location within the county where the common-interest community is situated or, if it is situated in more than one county, within one of those counties; and

(b) Made reasonably available for any unit's owner and his authorized agents to inspect, examine, photocopy and audit.

(Added to NRS by 1991, 571; A 1995, 2231; 2003, 2247)

**NRS 116.31183  Retaliatory action prohibited.**  An executive board, a member of an executive board or an officer, employee or agent of an association shall not take, or direct or encourage

– 29 –

another person to take, any retaliatory action against a unit's owner because the unit's owner has:

1.  Complained in good faith about any alleged violation of any provision of this chapter or the governing documents of the association; or

2.  Requested in good faith to review the books, records or other papers of the association.

(Added to NRS by 2003, 2218)

## FAIR DEBT COLLECTION PRACTICES ACT DEEMS HOMEOWNER ASSOCIATION FEES & ASSESSMENTS AS "DEBTS"

The HOA sought to dismiss on the ground that HOA dues are not "consumer debt" arising out of a "transaction" under the FDCPA.  Ninth Circuit, stated that FDCPA "debt" is not limited to credit extensions, claiming because the services provided by the HOA in exchange for dues are primarily for personal, family, or household purposes, the HOA dues constitute "consumer debt."

In the context of the Fair Debt Collection Practices Act (FDCPA), a "debt" is created whenever a transaction creates an obligation to pay; a "transaction" must involve, at a minimum, some kind of business dealing or other consensual obligation. Consumer Credit Protection Act, § 803, as amended, 15 U.S.C.A. § 1692a.

Condominium assessments are debts within the definition of the FDCPA. Ladick v. Van Gemert, 146 F.3d 1205, 1207 (10th Cir.), cert. denied, 525 U.S. 1002, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998); Newman v. Boehm, Pearlstein and Bright, Ltd., 119 F.3d 477, 482 (7th Cir.1997); Fuller v. Becker and Poliakoff, P.A., 192 F.Supp.2d 1361, 1368 (M.D.Fla.2002); Thies v. Law Offices of William A. Wyman, 969 F.Supp. 604, 608 (S.D.Cal.1997); Bryan v. Clayton, 698 So.2d 1236, 1237 (Fla. 5th DCA 1997), rev. denied, 707 So.2d 1123 (Fla.1998), cert. denied, 524 U.S. 933, 118 S.Ct. 2334, 141 L.Ed.2d 706 (1998).

Because no offer or extension of credit is required, an obligation to pay association dues is covered by the FDCPA. Caron v. Charles E. Maxwell, P.C., 48 F.Supp.2d 932, 935 (D.Ariz.1999). As long as a transaction creates an obligation to pay, a debt is created for

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE; LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  purposes of the FDCPA.; Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 924 (11th

2  Cir.1997).

3       The court noted that Riter had been overturned by the Seventh Circuit in Newman v.

4  Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477 (7th Cir. 1997) (past-due condominium fees are

5  a debt under the FDCPA because assessments used to improve or maintain commonly-owned

6  areas qualify as personal, family, or household uses and confer a direct benefit on residents). The

7  court held that the fact that many households may use or benefit from a common area does not

8  logically diminish the primary nature of the service.

9       The court analogized to a consumer debt owed to a health club, whose facilities are

10 jointly used by many. Newman v. Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477 (7th Cir.

11 1997)

12      However, in Bass v. Stolper, Kiritzinsky, Brewster & Neider, S.C., 111 F.2d 1322, 1326

13 (7th Cir. 1997), the Seventh Circuit ruled that FDCPA debt need not involve an extension of

14 credit. All that is required is a transaction creating an obligation to pay (e.g., a dishonored

15 check). The court held that the purchase of the homes was the underlying "transaction," even if

16 the precise amount and timing of future dues had not yet been determined.

17      The court also held that the subject of the transaction, as well as the intended use of the

18 dues, satisfied the "personal, family, or household purpose" requirement, even if the dues were

19 used to improve or maintain commonly-owned areas and more than a single household stood to

20 benefit. The HOA's argued that the dues were more like taxes, which are not considered "debts"

21 under the FDCPA because they generally are used for communal rather than personal, family, or

22 household purposes. The court held, however, that the dues here had a more specific household

23 purpose than taxes collected by a governmental entity because they served to improve and

24 maintain commonly-owned areas used by each unit owner.

25      Ladick v. Gemert, 146 F.3d 1205 (10th Cir. 1998): A homeowner sued an HOA law firm

26 over demand letters for condominium fees that allegedly failed to include the "validation notice"

27 required by section 1692g of the FDCPA, and failed to disclose that the law firms were

28 attempting to collect a debt and that any information obtained would be used for that purpose, as

– 31 –

1   required by section 1692e(11). The law firm argued that the condo fee was more like a tax than a

2   debt, because the HOA was similar to a municipality. The court noted that in <u>Snow v. Riddle</u>,

3   143 F.2d 1350 (10th Cir. 1998), the Tenth Circuit had followed the Seventh Circuit and several

4   other courts in ruling that FDCPA debt did not require an extension of credit. (<i>See</i> also <u>Duffy v.</u>

5   <u>Landberg</u>, 133 F.3d 1120, 1123-24 (8th Cir. 1998); <u>Charles v. Lundgren & Assoc., P.C.</u>, 119

6   F.3d 739, 742 (9th Cir. 1997); <u>Brown v. Budget Rent-A-Car Sys., Inc.</u>, 119 F.3d 922, 924 (11th

7   Cir. 1997).) The court also held that the dues arose out of a "transaction," rejecting the HOA's

8   argument that the homeowner's condo purchase agreement was a transaction or agreement with

9   the previous homeowner rather than with the HOA itself.

10       Following the Seventh Circuit's reasoning in <u>Newman</u> and the Virginia district court's

11   reasoning in Thies, the court held that the obligation to pay condo assessments arises in

12   connection with the purpose of the condo itself. The court also followed the reasoning of

13   <u>Newman</u> and <u>Thies</u> in concluding that the assessment has a primarily personal, family, or

14   household purpose despite its communal aspects.

15       Maintenance assessments from recreational property memberships were "debts," subject

16   to Fair Debt Collection Practices Act (FDCPA), on basis that assessments were for personal or

17   family purposes; interests that consumers bought in recreational vehicle parks were for personal

18   or family purposes, consumers' maintenance assessments arose out of purchase of interest in

19   parks, and assessments were used to maintain parks for benefit of parks. Consumer Credit

20   Protection Act, § 803, as amended, 15 U.S.C.A. § 1692a.

21

22   **DEFENDANTS GAYLE A. KERN, LTD, GAYLE A. KERN, PHIL FRINK &**

23   **ASSOCIATES, INC., PHILLIP E. FRINK ARE DEBT COLLECTORS**

24       Because Congress repealed the exemption for attorneys who collected a debt as an

25   attorney on behalf of and in the name of a client in an earlier version of this statute, Congress

26   intended that lawyers be subject to the Fair Debt Collection Practices Act (FDCPA) whenever

27   they meet the "debt collector" definition. Consumer Credit Protection Act, § 803, as amended, 15

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  U.S.C.A. § 1692a. *See also* <u>Heintz v. Jenkins</u>, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d

2  395 (1995).

3     Consumers established that attorneys "regularly collected or attempted to collect debts"

4  and were "debt collectors," for purposes of Fair Debt Collection Practices Act (FDCPA), where

5  attorneys admitted that they did collection and foreclosure work and listed collection and

6  foreclosure as their practice areas in firm profile. Consumer Credit Protection Act, § 803, as

7  amended, 15 U.S.C.A. § 1692a.

8     Language used in letter by attorneys in debt collection, that stated that debtors would

9  incur "a substantial amount of attorney's fees and costs, which debtors are personally liable for

10  and which can also constitute a judgment against any property debtors own, was a "false

11  representation" and "misleading" to a least sophisticated consumer, in context of Fair Debt

12  Collection Practices Act (FDCPA), since an unsophisticated consumer would have very likely

13  interpreted letter to mean that there was no chance in prevailing once lawsuit was filed.

14  Consumer Credit Protection Act, § 807, as amended, 15 U.S.C.A. § 1692e.

15     January 15, 2007, Defendant Frank Perau emailed a letter to Plaintiff stating, "Your

16  account has already been forwarded to our legal counsel to begin the collection of your past due

17  assessments." *See* Exhibit 12. In a February 15, 2007 letter from Defendant Gayle Kern, she

18  directed Plaintiff to make payment at her law office: "Payment of $1,245.24 must be made to the

19  Lakeside Plaza Condominium Association, care of my address identified above at 5421 Kietzke

20  Lane, Suite 200, Reno, NV 89511." *See* Exhibit 13

21     Defendant Gayle Kern regularly serves as a "collection agent" for homeowners

22  associations (many of them managed by Eugene Burger Management Corporation), upon

23  information and belief. She also regularly processes condominium liens and foreclosures –

24  thereby, constituting a "collection agent" under Fair Debt Collection Practices Act ("FDCPA").

25     A law firm that is occasionally engaged in collection activities is considered a "collector"

26  *See* 131 Cong Rec. H10534-H10536 (daily ed., Dec. 2, 1985), *See* also <u>National Consumer Law

27  Center, Fair Debt Collection</u> 4.2.2., 4.2.6.3 (Boston: 2d ed. 1991 & 1994 Supp.).

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  **HOMESTEAD DECLARATION VIOLATION – INVALID CONDO RIDER RENDERS**
2  **LIEN AND FORECLOSURE INVALID**

3      January 31, 2006, Plaintiff recorded a Homestead Declaration on her property. *See*
4  Exhibit 14. Plaintiff's original property purchase was $130,500. Homestead Exemption provides
5  for up to $350,000 exemption. A new bill was recently signed protecting up to $550,000.

6      A Condominium Rider between Lakeside Plaza Condominium Association, Century 21,
7  and Plaintiff was recorded November 15, 2005, on Plaintiff's home title. *See* Exhibit 15.
8  However, Chase Mortgage now holds the mortgage on Plaintiff's home, and, upon belief and
9  information, no new condominium rider was agreed upon by Chase Mortgage and there is
10  allegedly **no prior consent** with Chase Mortgage, rendering the present Condo Rider as null and
11  void – as Century 21 no longer owns the home loan.

12      Plaintiff contends per NRS 115.010(3)(b), Chase Mortgage is allegedly not a party
13  consenting to the condo rider to Plaintiff's mortgage, nor does the condo rider provide for a
14  successor clause, thereby rendering the present condo rider as null and void, and associated liens
15  and foreclosures as null and void. Therefore, without prior consent by Chase Mortgage,
16  Plaintiff's home cannot be foreclosed upon, as provided by the Homestead Declaration which
17  protects Plaintiff's home from a forced a sale:

18      **Section 1.  NRS 115.010** is hereby amended to read as follows:
19          115.010  1.  The homestead is not subject to forced sale on
20      execution or any final process from any court, except as otherwise
        provided by subsections 2, 3 and 5, and NRS 115.090 [.] *and*
        *except as otherwise required by federal law*....
21          3.  Except as otherwise provided in subsection 4, the exemption
22      provided in subsection 1 does not extend to process to enforce the
        payment of obligations contracted for the purchase of the property,
23      or for improvements made thereon, including any mechanic's lien
        lawfully obtained, or for legal taxes, or for:
24          (a) Any mortgage or deed of trust thereon executed and given;
25              or
26          **(b) Any lien to which prior consent has been given through**
            **the acceptance of property subject to any recorded**
27          **declaration of restrictions, deed restriction, restrictive**
            **covenant or equitable servitude, specifically including**

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1

2

**any lien in favor of an association pursuant to NRS 116.3116 or 117.070, (emphasis added)**

3

4

Furthermore, February 5, 2007, a second mortgage transacted in California was recorded

5

against Plaintiff's property. Again, the condo rider has no legal effect on this second mortgage,

6

nor was there prior consent by the second mortgagee. This California security interest against

7

Plaintiff's property takes a first charge over the "debt" and wrongful foreclosure in question.

8

**CONSTITUTIONAL RIGHTS VIOLATIONS, JUDICIAL MISCONDUCT, MALICIOUS**

9

**PROSECUTION –MUST BE HEARD IN FORUM OTHER THAN NEVADA COURTS**

10

**FOR A FAIR HEARING**

11

12

**QUESTION FINANCIALS + QUESTION ASSESSMENTS**

13

**= DEATH THREATS, ARREST THREATS**

14

August 17, 2006, John Coleman, a Eugene Burger Management Corporation contractor

15

and co-defendant Frank Perau's good friend, made death threats to Plaintiff and her friend.

16

Plaintiff has a Reno Police report, audio recording, and witness of the incident. EBMC's

17

contractor, John Coleman made the death threats to Plaintiff and her friend allegedly to

18

intimidate Plaintiff from further investigating Lakeside Plaza financials (which are managed by

19

Eugene Burger Management Corporation).

20

March 5, 2007, Plaintiff was directed to view financials records at Gayle A. Kern's. Per

21

NRS 116.31175, the financials may be reviewed during the regular working hours, Plaintiff, on a

22

break from work, made an attempt to validate the "debt" in question and review finances,

23

however, this invitation was insincere and merely a sham to further harass and intimidate

24

Plaintiff from obtaining financial records.

25

Instead, Gayle Kern's office called the police on Plaintiff. *See* Exhibit 16. Plaintiff has

26

witness and evidence of the police call. *See* Exhibit 16

27

This call to police is a blatant violation of state and federal law (Fair Debt Collection

28

Practices Act § 1692 & NRS 116.31183):

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1
2
3
4
5
6
7
8

> **NRS 116.31183  Retaliatory action prohibited.**  An executive board, a member of an executive board or an officer, employee or agent of an association shall not take, or direct or encourage another person to take, any retaliatory action against a unit's owner because the unit's owner has:
>
> 1.  Complained in good faith about any alleged violation of any provision of this chapter or the governing documents of the association; or
>
> 2.  Requested in good faith to review the books, records or other papers of the association.
>
> (Added to NRS by <u>2003, 2218</u>)

9
10
11
12
13
14
15
16
17

August 9, 2007, nearly one year later after the EBMC contractor's death threat, Plaintiff was wrongfully detained by Reno Police while in the company of friends on private property at Lakeside Plaza. Plaintiff was singled out –as no one else was detained by Reno Police. Plaintiff alleges this was done by Defendants with the sole intent to further harass and intimidate Plaintiff into not further investigating Lakeside Plaza financials. In fact, a few nights before, Defendant Joseph asked if Plaintiff had ever been "on the bench" [arrested] which suggests the Defendant Joseph (and other defendants) had allegedly intended to conspire to have Plaintiff detained by police with the sole intent to further harass and intimidate Plaintiff into not further investigating Lakeside Plaza financials.

18
19
20
21

A senior couple, Lakeside Plaza homeowners Carol and Gwen Slabotzky (allegedly, on advice of Defendant Gayle Kern, Esq.), were threatened with an Aggravated Harassment Stalking Order by Defendant Perau (allegedly, on advice of Defendant Gayle Kern, Esq.) <u>Perau v. Slabotzky, Sparks, NV Justice Court</u>.

22
23
24
25
26
27

Plaintiff Moulton was also served an Aggravated Harassment Stalking Order <u>Perau v. Moulton, Sparks, NV Justice Court</u> *See* Exhibit 17. This petition was made allegedly, on advice of Defendant Gayle Kern, Esq. allegedly for Plaintiff's questioning of the financial records and illegal special assessments.  An Aggravated Harassment & Stalking Order bears the inherent threat of arrest, loss of liberty, and violations of constitutional rights.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE; LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1    Sparks Police arrived at Plaintiff's door threatening to arrest Plaintiff alleging she could

2    not assert the constitutionally protected Right to Freedom of Speech. Plaintiff has video and

3    audio evidence of the Sparks Police arrest threat.

4    Plaintiff contends, upon belief and information, Defendants Gayle Kern, Defendant Frank

5    Perau and Eugene Burger Management Corporation contractor, John Coleman conspired to

6    abuse judicial process and commit perjury all in an attempt to get Plaintiff arrested.

7    Time and time again, the State of Nevada has violated the constitutional rights of

8    Plaintiff, her friends, and other Lakeside Plaza homeowners. Due to the repeated violations of

9    civil liberties and constitutional rights, Plaintiff returned to her home state of California hoping

10   to achieve justice in this matter. Therefore, because Plaintiff fears loss of liberty returning to

11   Nevada to prosecute this case for fear of false arrest, justice must be found in another venue.

12

13   **VENUE IS PROPER IN CALIFORNIA**

14   Venue is proper as the majority of defendants reside and/or do business in California.

15   Plaintiff is an almost lifelong resident of California. Furthermore, a California real estate security

16   interest is directly affected by the outcome of this case.

17   Venue is proper as time and time again, the State of Nevada has violated the

18   constitutional rights of Plaintiff, her friends, and other Lakeside Plaza homeowners. Plaintiff's

19   contends there will be a possible prejudicial environment if this matter is heard is heard in

20   Nevada. Plaintiff fears loss of liberty and violation of constitutional rights if she returns to

21   Nevada to prosecute this case, therefore, justice must be found in another venue – as she has

22   suffered from Nevada's malicious prosecution, judicial misconduct, death threats, intimidation,

23   and harassment – all in the name of trying to validate a "debt" (illegal special assessment) and

24   for trying to investigate Lakeside Plaza financial records.

25   Given the fact Plaintiff's constitutional rights and liberties have been repeatedly denied

26   by police and local courts, Defendant/attorney Gayle Kern has significant ties to the State of

27   Nevada courts, and Defendant Eugene Burger Management Corporation's Karen Brigg was on

28

– 37 –

1  the Nevada Real Estate Commission -Plaintiff's intent is to have "level playing field" and

2  respectfully requests this Court hear this matter.

3      Plaintiff (an almost lifelong California resident) returned to California to preserve her

4  constitutional rights (as they were continually being denied in Nevada).

5      Federal-court abstention is inappropriate in this case under <u>Younger v. Harris</u>, 401 U.S.

6  37 (1971), as the Supreme Court has held that absent "bad faith, harassment or any other unusual

7  circumstance," federal-court abstention is appropriate where a plaintiff invokes federal

8  jurisdiction as a basis for obtaining injunctive relief against state-court criminal proceedings. *Id*.

9  at 53-54.  The matter at hand involves nothing but bad faith, harassment or any other unusual

10  circumstances, therefore, federal abstention would be inappropriate.

11      The Supreme Court later held that "[t]he policies underlying <u>Younger</u> are fully applicable

12  to noncriminal judicial proceedings when important state interests are involved." <u>Middlesex</u>

13  <u>County Ethics Comm'n v. Garden State Bar Ass'n,</u> 457 U.S. 423, 432 (1982).

14  **<u>Younger's</u> abstention criteria**

15      There are three requirements for proper invocation of <u>Younger</u> abstention:

16      (1) there must be on-going state judicial proceedings; (2) those
17      proceedings must implicate important state interests; and (3) there
       must be an adequate opportunity in the state proceedings to raise
18      constitutional challenges." <u>Sun Ref. & Mktg. Co. v. Brennan,</u> 921
       F.2d 635, 639 (6th Cir. 1990) (citation omitted).
19

20      So long as the constitutional claims of respondents can be
       determined in the state proceedings and **so long as there is no**
21      **showing of bad faith, harassment, or some other extraordinary**
       **circumstance that would make abstention inappropriate, the**
22      **federal courts should abstain.**" <u>Middlesex</u>, 457 U.S. at 435. We
       review de novo a district court's decision to abstain. <u>Berger v.</u>
23      <u>Cuyahoga County Bar Ass'n</u>, 983 F.2d 718, 721 (6th Cir. 1993).

24

25      Federal-court abstention does not apply in "bad faith, harassment or any other unusual

26  circumstance[s]".

27      Furthermore, venue is proper in California as a large percentage of the Defendants either

28  reside and/or do business in California. EBMC is headquartered in California, Eugene J. Burger,

– 38 –

upon belief and information resides in California, Karen Brigg, upon belief and information, works and/or resides in California. Daniel Joseph does business in California. Gayle A. Kern, Esq. practices in California. Gayle A. Kern, Ltd. does business in California. Plaintiff resides in California.

Furthermore, February 5, 2007, a second mortgage transacted in California was recorded against Plaintiff's property. Again, the condo rider has no legal effect on this second mortgage, nor was there prior consent by the second mortgagee. This California security interest against Plaintiff's property takes a first charge over the "debt" and wrongful foreclosure in question.

Fair Debt Collection Practices Act provides for the action to be in California, where Plaintiff resides and where the majority of parties reside and/or do business.

**THIS COURT HAS JURISDICTION PER FEDERAL QUESTION – FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA"), RACKEETER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), CONSTITUTIONAL RIGHTS**

Jurisdiction is appropriate in federal court per Fair Debt Collection Practices Act 15 USC 1692k § 813(d):

> (d) An action to enforce any liability created by this title may
> be brought in any appropriate United States district court
> without regard to the amount in controversy, or in any
> other court of competent jurisdiction, within one year from
> the date on which the violation occurs.

This matter includes a federal question jurisdiction, subject matter jurisdiction would lie only if here were diversity jurisdiction, governed by 28 U.S.C. 1332(a)(1).There is **also** diversity in this case. This is a multi-party, multi-state case.

In the future, if this matter becomes a class action, there are many California Lakeside Plaza homeowners that have expressed interest in suing EBMC and/or the Board.

**PERSONAL JURISDICTION IS IN CALIFORNIA**

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

Plaintiff asserts personal jurisdiction in California as the majority of defendants who do business and/or are residents of California and a California security interest exists on Plaintiff's home.

> **California's Long Arm Statute**, Cal. Civ. Proc. Code S 410.10. See <u>Metropolitan Life Ins. Co. v. Neaves</u>, 912 F.2d 1062, 65 (9th Cir.'90). Section 410.10 provides for personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'
>
> 'A court may exercise either general or specific jurisdiction over a nonresident defendant.' <u>Sher v. Johnson</u>, 911 F.2d 1357, 61 (9th Cir.'90).

**Some criteria for invoking local jurisdiction are if a defendant committed 'intentional actions' <u>Core-Vent Corp. v. Nobel...</u>, 11 F.3d 1482, 85 (9th Cir.'93), at 1486.**

## DEFENDANTS/ATTORNEY GAYLE KERN DUAL REPRESENTATION IS A CLEAR CONFLICT OF INTEREST

Gayle Kern, Esq., upon belief and information, has represented EBMC (former Lakeside Plaza property manager), and also serves as counsel for Lakeside Plaza Condominium Association. Kern also serves as resident agent for Phil Frink & Associates. While although, upon belief and information, Kern has represented EBMC, she is representing Lakeside Plaza Condominium Association in a suit against one of her alleged previously clients, EBMC <u>Lakeside Plaza Condo v. Eugene Burger Mgt.</u>, Case No. CV07-02674, Second Judicial District Court State of Nevada, Washoe County. Furthermore, Kern is representing the Defendants, and yet, she, too, is also a co-defendant.

Citing <u>Cendant Corp. Sec. Litin.</u>, 124 F. Supp. 2d 235 (D.N.J. 2000); *see* also <u>Bobokoski v. Bd. of Educ.</u>, No. 90-C-5737, 1991 WL 140I50 (N.D. 111. July 23, 1991).

> In granting a motion to disqualify under Rule 1.7 in a class action securities fraud case, the court in Cendant Corp. held that a lawyer could not represent the named defendant in a case in which it also represented a former officer of that company who was

– 40 –

1
2
3
4
5
6
7
8
9

> a critical and potentially adverse witness in the matter. In describing the many hazards of such a dual representation, the court observed: as a general matter examining one's own client as an adverse witness on behalf of another client, or conducting third party discovery of one client on behalf of another client, is likely to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness; and (3) present a tension between the lawyer's own pecuniary interest in continued employment by the client-witness and the lawyer's ability to effectively represent the litigation client. The first two of these hazards are likely to present a direct adverseness of interest falling within Rule 1.7(a); all three may constitute material limitations on the lawyer's representation, so as to come under Rule 1.7(b).'

10
11
12
13
14

<u>Cendant Corp.</u>, 124 F. Supp. 2d at 241-42 (emphasis omitted) (quoting ABA Formal Opinion No. 92-367 (October 16, 1 992)).8 The court emphasized that Rule 1.7 is violated where there is a mere "possibility of a breach occurring;" actual improper conduct is not required to establish a violation. Id.at 243,244. … the rule is intended not to prevent actual conflicts but to bolster the public's confidence in the integrity of the legal profession. *Id.* at 245.

15
16
17

If Gayle Kern represents the defendants, allegedly she will be violating Nevada Rules of Professional Conduct Rule 1.7-1.8:

18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE; LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1

**Nevada Rules of Professional Conduct**

2

**Rule 1.7.  Conflict of Interest: Current Clients.**
(a) Except as provided in paragraph (b), a lawyer shall not

3

represent a client if the representation involves a concurrent

4

conflict of interest. A concurrent conflict of interest exists if:

5

(1) The representation of one client will be directly adverse
to another client; or

6

(2) There is a significant risk that the representation of one
or more clients will be materially limited by the lawyer's

7

responsibilities to another client, a former client or a third person
or by a personal interest of the lawyer.

8

(b) Notwithstanding the existence of a concurrent conflict of

9

interest under paragraph (a), a lawyer may represent a client if:

10

(1) The lawyer reasonably believes that the lawyer will be
able to provide competent and diligent representation to each
affected client;

11

(2) The representation is not prohibited by law;

12

(3) The representation does not involve the assertion of a
claim by one client against another client represented by the lawyer

13

in the same litigation or other proceeding before a tribunal; and

14

(4) Each affected client gives informed consent, confirmed
in writing.

15

[Added; effective May 1, 2006.]

16

17

**FIDUCIARY EXEMPTION TO ATTORNEY-CLIENT PRIVILEGE**

18

There is a fiduciary exemption to attorney-client privilege. A homeowners association

19

can be compared to the Employee Retirement Income Act ("ERISA") in the sense both require

20

the protection of interests of participants (in the case of HOA, homeowners), both require

21

disclosure and reporting to participants (in the case of HOA, homeowners).

22

Rules of Professional Conduct require Gayle Kern to avoid contributing to a violation

23

of the Code of Conduct. Defendant Kern's dual representation gives her undeniable influence

24

over how Defendants will respond to discovery and testify at trial. In effect, Defendant Kern's

25

representation of Defendants permits the class to influence Defendants' participation in the case,

26

thus stripping Defendants of her presumed neutrality. *See* Pioneer Hotel, Inc. v. NLRB, 182 F.3d

27

939,944 (D.C. Cir. 1999) (analyzing ex parte contacts  under Canon 3B(7)); Clifford v. United

28

States, 136 F.3d 144, 149 n.6 (D.C. Cir. 1998) (disqualification of judge for impartiality proper

– 42 –

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  under certain circumstances pursuant to Canon 3E(l)); <u>United States v. Barry</u>, 961 F.2d 260, 263

2  (D.C. Cir. 1992) (analyzing out-of-court comments by judge under Canon 3A(6)).

3  <u>Rentclub, Inc.</u>, 811 F. Supp. at 655 (appearance of impropriety arises from inference that

4  attorney induced another to breach a confidence).

5         Defendant Kern's dual representation raises another ethical dilemma in the form of a

6  potential conflict of interest between her clients. Courts have interpreted the rule as presenting an

7  ethical barrier to a lawyer representing both a party in interest and a co-defendant in the same

8  matter. See In re <u>Cendant Corp. Sec. Litin.</u>, 124 F. Supp. 2d 235 (D.N.J. 2000); see also

9  <u>Bobokoski v. Bd. of Educ.</u>, No. 90-C-5737, 1991 WL 140I50 (N.D. 111. July 23, 1991).

10         In granting a motion to disqualify under Rule 1.7 in a class action securities fraud case,

11  the court in Cendant Corp. held that a lawyer could not represent the named defendant in a case

12  in which it also represented a former officer of that company who was a critical and potentially

13  adverse witness in the matter. In describing the many hazards of such a dual representation, the

14  court observed:

15          [A]s a general matter examining one's own client as an adverse

16          witness on behalf of another client, or conducting third party

        discovery of one client on behalf of another client, is likely to

17          pit the duty of loyalty to each client against the duty of loyalty to

        the other; (2) to risk breaching the duty of confidentiality to the

18          client-witness; and (3) present a tension between the lawyer's own

        pecuniary interest in continued employment by the client-witness

19          and the lawyer's ability to effectively represent the litigation client.

        The first two of these hazards are likely to present a direct

20          adverseness of interest falling within Rule 1.7(a); all three may

        constitute material limitations on the lawyer's representation, so as

21          to come under Rule 1.7(b).'

22

23     <u>Cendant Corp</u>., 124 F. Supp. 2d at 241-42 (emphasis omitted) (quoting ABA Formal

24  Opinion No. 92-367 (October 16, 1 992)).8 The court emphasized that Rule 1.7 is violated where

25  there is a mere "possibility of a breach occurring;" actual improper conduct is not required to

26  establish a violation. Id.at 243,244…[T]he rule is intended not to prevent actual conflicts but

27  to bolster the public's confidence in the integrity of the legal profession. Id. at 245.

28         Disqualification motions involving representation of both a witness and a party in the

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1    same matter arise frequently in the criminal context. *See*, e.g, <u>Wheat v. United States</u>, 486 U.S.

2    153, 160 (1988). While conflicts of interest in the criminal arena require a heightened concern

3    for defendants' Sixth Amendment rights, equal judicial caution about permitting counsel to

4    represent witnesses and parties in the same matter applies in civil cases. Compare <u>Perillo v.</u>

5    <u>Johnson,</u> 205 F.3d 775, 808 (5th Cir. 2000) (conflict between former and present clients raised

6    suspicion concerning defense strategies in criminal case) <u>Cendant Corp</u>., supra.

7        Defendant Kern should be disqualified from representing defendants in this matter of

8    conspiracy to defraud, breach of contract, FDCPA, and RICO violations. Defendant Kern co-

9    conspired to threaten Plaintiff's liberty and freedom.

10

11   **SUPPLEMENTAL JURISDICTION**

12       Supplemental jurisdiction is the authority of United States federal courts to hear

13   additional claims substantially related to the original claim even though the court would lack the

14   subject-matter jurisdiction to hear the additional claims independently. 28 U.S.C. § 1367 is a

15   codification of the Supreme Court's rulings on ancillary jurisdiction (<u>Owen Equipment &</u>

16   <u>Erection Co. v. Kroger</u>, 437 U.S. 365 (1978)) and pendent jurisdiction (<u>United Mine Workers of</u>

17   <u>America v. Gibbs</u>, 383 U.S. 715 (1966)) and a superseding of the Court's treatment of pendent

18   party jurisdiction (<u>Finley v. United States</u>, 490 U.S. 545 (1989)).

19       By default, courts have supplemental jurisdiction over "all other claims that are so related

20   . . . that they form part of the same case or controversy" (§ 1367(a)). This means a federal court

21   hearing a federal claim can also hear substantially related state law claims, thereby encouraging

22   efficiency by only having one trial at the federal level rather than one trial in federal court and

23   another in state court.

24   **MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) MUST BE DENIED**

25       In support of its motion to dismiss, Defendants Christensen, Grady, Joseph, Perau &

26   Svihla argue that Plaintiff's claims do not adequately state a claim. However, Defendants

27   provide no authority deviating from the liberal pleading standards under Fed. R. Civ. P. 8.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

Due to "time being of the essence" to prevent the illegal foreclosure of Plaintiff's home, Plaintiff, pro se, hastily drafted the Complaint to prevent the illegal foreclosure of her home

Therefore, in the alternative, Plaintiff respectfully requests leave to amend her complaint.

**FEDERAL RULES OF CIVIL PROCEDURE PROVIDE OTHER MEANS TO DEFINE THE FACTS AND ISSUES**

More extensive pleading of facts is unnecessary because the Federal Rules of Civil Procedure provide other means to define the facts and issues. (Moore's Federal Practice, Civil §8.04[I]). As the U.S. Supreme Court, referencing Fed. R. Civ. P. 8(a)(2), conclusively stated in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992,998, 152 L.Ed. 2d 1(2002):

> This simplified notice pleading standard relies on liberal discovery
> rules and summary judgment motions to define disputed facts and
> issues and to dispose of unmeritous claims.

**CONGRESS INTENDED TO ENCOURAGE, RATHER THAN DISCOURAGE, PRIVATE ENFORCEMENT OF THE LAW**

U.S. Supreme Court, in concurrence with Congress, has allowed some leniency in pleading standards with respect to allegations of fraud in instances where fraud takes place over a duration of time and involves many co-conspirators.

Quoting Justice Stevens in Bell Atlantic Corporation v. Twombly,

> In antitrust cases, [for example]… 'the proof is largely in the hands
> of the alleged conspirators,' . . . dismissals prior to giving the
> plaintiff ample opportunity for discovery should be granted very
> sparingly." Hospital Building Co. v. Trustees of Rex Hospital, 425
> U. S. 738, 746 (1976) (quoting Poller v. Columbia Broadcasting
> System, Inc., 368 U. S. 464, 473 (1962)); see also Knuth v. Erie-
> Crawford Dairy Cooperative Assn., 395 F. 2d 420, 423 (CA3
> 1968) ("The 'liberal' approach to the consideration of antitrust
> complaints is important because inherent in such an action is the
> fact that all the details and specific facts relied upon cannot
> properly be set forth as part of the pleadings"). Bell Atlantic
> Corporation v. Twombly  Id 46

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1

2

3

4

5

6

> Moreover, the fact that the Sherman Act [for instance,] authorizes the recovery of treble damages and attorney's fees for successful plaintiffs indicates that Congress intended to encourage, rather than discourage, private enforcement of the law. *See* <u>Radovich v. National Football League</u>, 352 U. S. 445, 454 (1957) and attorney's fees for successful plaintiffs indicates that Congress intended to **encourage**, rather than discourage, private enforcement of the law. See <u>Radovich v. National Football League</u>, 352 U. S. 445, 454 (1957) (emphasis added) *Id* 45

7

8

9

> But it should go without saying in the wake of <u>Swierkiewicz</u> that a heightened production burden at the summary judgment stage **does not translate into a heightened pleading burden at the complaint stage.** (emphasis added) *Id* 45

10

11

**PRO SE LITIGANTS HELD TO LESS STRINGENT PLEADING STANDARDS**

12

13

14

15

16

Furthermore, Pro se complaints, which are held to less stringent standards than pleadings by lawyers, should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>McDowell v. Del. State Police</u>, 88 F.3d 188, 189 (3d Cir. 1996) (quoting <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)).

17

18

19

**PLAINTIFF NEED NOT "IDENTIFY" THE DISPUTED INFORMATION TO STATE A CLAIM UNDER "FDCPA" § 1692, ET SEQ.**

20

21

The statutes itself provides no support for Defendants' position, as it says nothing about identifying the dispute. Fair Debt Collection Practices Acts states:

22

23

> (c) The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

24

25

Furthermore, FDCPA § 1692 claims are not subject to the heightened standards for pleading in Fed.R.Civ.P. 9(b).

26

27

28

– 46 –

**PLEADING NEED NOT BE SPECIFIC PER FED. R. CIV. P. 8(a)(2).**

Whether Kern is liable, and whether the "corporate veil" should be pierced, are factual issues best resolved on summary judgment or at trial. *See* West v. Costen, 558 F.Supp. 564, 584-85 (W.D.Va.1983).

This case presents the antecedent question of what a plaintiff must plead in order to state a claim. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests," Conley v. Gibson, 355 U. S. 41.

Moreover, the complaint does not have to be particularly specific or detailed. Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim." Fed. R. Civ. P. 8(e) calls for the "simple, concise and direct" averments in pleadings. Fed. R. Civ. P. 8(f) states that pleadings are to be construed as to do substantial justice" Regarding what level of detail and specificity is required in complaints, the Sixth Circuit Court of Appeal, in describing the standard of review for a Rule 12(b)(6) motion, stated:

> Under the liberal federal system of notice pleading, all that a plaintiff must do in a complaint is give a defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' Vector Research v. Howard & Howard Atty. P.C., 76 F.3d 692, 697 (6th Cir. 1996).

See also Haines v. Kerner, 404 U. S. 519, 521 (1972) (per curiam), Conley v. Gibson, 355 U. S. 41 (1957).

In Swierkiewicz, 534 U. S., at 511, U.S Supreme Court observed that Rule 8(a)(2) does not contemplate a court's passing on the merits of a litigant's claim at the pleading stage. Rather, the "simplified notice pleading standard" of the Federal Rules "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id., at 512; see Brief for United States et al. as Amici Curiae in Swierkiewicz v. Sorema N. A., O. T. 2001, No. 00–1853, p. 10 (stating that a Rule 12(b)(6) motion is not "an appropriate device for testing the truth of what is asserted or for determining

1    whether a plaintiff has any evidence to back up what is in the complaint" (internal quotation

2    marks omitted)).

3        The Third Circuit relied on Leimer's admonition in Continental Collieries, Inc. v. Shober,

4    130 F. 2d 631 (1942), which the Conley Court also cited in support of its "no set of facts"

5    formulation. In a diversity action the plaintiff alleged breach of contract, but the District Court

6    dismissed the complaint on the ground that the contract appeared to be unenforceable under state

7    law. The Court of Appeals reversed, concluding that there were facts in dispute that went to the

8    enforceability of the contract, and that the rule at the pleading stage was as in Leimer: "No

9    matter how likely it may seem that the pleader will be unable to prove his case, he is entitled,

10   upon averring a claim, to an opportunity to try to prove it." 130 F. 3d, at 635.

11
12       Quoting Justice Stevens in Bell Atlantic Corporation v. Twombly,

13           Leatherman v. Tarrant County Narcotics Intelligence and
             Coordination Unit, 507 U. S. 163 (1993). By requiring a plaintiff
14           to "state with factual detail and particularity the basis for the claim
             which necessarily includes why the defendant-official cannot
15           successfully maintain the defense of immunity." Leatherman, 507
             U. S., at 167 (internal quotation marks omitted). We found this
16           language inconsistent with Rules 8(a)(2) and 9(b) and emphasized
             that motions to dismiss were not the place to combat discovery
17           abuse: "In the absence of [an amendment to Rule 9(b)], federal
             courts and litigants must rely on summary judgment and control of
18           discovery to weed out unmeritorious claims sooner rather than
             later." Id., at 168–169.In ruling on a defendant's motion to dismiss
19           a complaint, the Court "must accept as true all of the factual
             allegations contained in the complaint." Swierkiewicz v. Sorema
20           N. A., 534 U.S., at 514,  Bell Atlantic Corporation Id 43
21
22           Leimer v. State Mut. Life Assur. Co. of Worcester, Mass., 108 F.
             2d 302 (CA8 1940), the plaintiff alleged that she was the
23           beneficiary of a life insurance plan and that the insurance company
             was wrongfully withholding proceeds from her. In reversing the
24           District Court's grant of the defendant's motion to dismiss, the
             Eighth Circuit noted that court's own longstanding rule that, to
25           warrant dismissal, "'it should appear from the allegations that a
             cause of action does not exist, rather than that a cause of action has
26           been defectively stated.'" Id., at 305 (quoting Winget v. Rock-
             wood, 69 F. 2d 326, 329 (CA8 1934)).The Leimer court viewed
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1    the Federal Rules—specifically Rules 8(a)(2), 12(b)(6), 12(e)
2    (motion for a more definite statement), and 56 (motion for
3    summary judgment)—as reinforcing the notion that "there is no
     justification for dismissing a complaint for insufficiency of
4    statement, except where it appears to a certainty that the plaintiff
     would be entitled to no relief under any state of facts which could
5    be proved in support of the claim." 108 F. 2d, at 306. The court
     refuted in the strongest terms any suggestion that the unlikelihood
6    of recovery should deter-mine the fate of a complaint: "No matter
     how improbable it may be that she can prove her claim, she is
7    entitled to an opportunity to make the attempt, and is not required
     to accept as final a determination of her rights based upon
8    inferences drawn in favor of the defendant from her amended
9    complaint." Ibid.  Bell Atlantic Corporation <u>Id</u> 39

10
11        Under the relaxed pleading standards of the Federal Rules, the idea was not to keep
12   litigants out of court but rather to keep them in. The merits of a claim would be sorted out during
13   a flexible pretrial process and, as appropriate, through the crucible of trial. *See* <u>Swierkiewicz</u>,
14   534 S. 506, 508, n. 1 (2002); see <u>Overstreet v. North Shore Corp.,</u> 318 U. S. 125, 127 (1943)

15
16   **FED. R. CIV. P. 12(b)(6) MOTION MUST BE DENIED –AS MOTIONS MUST BE**
17   **CONSTRUED IN LIGHT MOST FAVORABLE TO NON-MOVING PARTY**

18
19        It is well established that in resolving 12(b)(6) motions, the Court must construe the
20   complaint in the light most favorable to the Plaintiff. Cahill v. Liberty Mutual Ins. Co., 89 F.3d
21   336 -338 (9th. Cir. 1996) citing National Wildlife Federation v. Espy, 45 F.3d 1337 (9th Cir.
22   1995). The U.S. Supreme Court express a corollary principle in Conley v. Gibson, 355 U.S. 41,
23   45-46 (1957).

24        A complaint should not be dismissed for failure to state a claim
         <u>unless it appears beyond doubt</u> that the plaintiff can prove no set of
25       facts in support of his claim which would entitle him to relief.
         (emphasis added).

26
27        This Court must consider Plaintiff's Opposition to Defendants' Motion to Dismiss in "the
28   light most favorable to …the nonmoving part." *See* <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

1   Corp., 475 U.S. 574, 587 (1986). See Adickes v. S.H. Kress & Co., 398 U.S. 144, (1970), and

2   Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

3   **GENUINE ISSUE**

4   There is a genuine issue of material fact which requires trial. Anderson v. Liberty Lobby,

5   Inc. 477 U.S. 242, 248 (1986), Beard v. Whitley County REMC, 840 F.2d 405, 410 (7th Cir.

6   1988).

7   The non-moving party only has to show substantial evidence that a *dispute* of material

8   facts exists, regardless of the strength of that evidence. The facts remain – there is a foreclosure

9   of Plaintiff's home, there are CC&Rs that state a homeowner vote is **required** for special

10  assessments – there was no homeowner vote.

11  "Summary judgment should not be granted `where the non-moving party has not had the

12  opportunity to discover information that is essential to his opposition.'" Committee for the First

13  Amendment v. Campbell, 962 F.2d 1517, 1521-22 (10th Cir. 1992) (*quoting* Anderson v. Liberty

14  Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)).

15

16          "The protection afforded by Rule 56(f) is an alternative to a
            response in opposition to summary judgment under 56(e) and is
17          designed to safeguard against a premature or improvident grant of
            summary judgment." Pasternak v. Lear Petroleum Exploration,
18          Inc., 790 F.2d 828, 833 (10th Cir. 1986) (*quoting* 10A Wright,
            Miller, & Kane, Federal Practice and Procedure §2740 (1983)).
19          *See*, Miller v. United States Department of Transportation, 710
            F.2d 656, 666 (10th Cir. 1983)
20

21          "[D]iscovery is strongly favored and generally denying the right to
            have full discovery on all pertinent issues before a summary
22          judgment is granted would be error, particularly in the face of a
            Rule 56(f) affidavit."
23

24  Consistent with its underlying policy, courts treat Rule 56(f) motions and affidavits

25  liberally: "`Unless dilatory or lacking in merit, the motion should be liberally treated.'"

26  Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1521-22 (*quoting* James W.

27  Moore & Jeremy C. Wicker, Moore's Federal Practice ¶ 56.24 (1988)). *See*, Jensen v. Redev.

28

– 50 –

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1  *Agency*, 998 F.2d 1550, 1554 (10th Cir. 1993); <u>RTC Mortgage Trust 1994-S3 v. Guadalupe</u>
2  <u>Plaza</u>, 918 F.Supp. 1441, 1448 (D.N.M. 1996).

3

4      There is a genuine issue of material fact which requires trial. *Anderson v. Liberty Lobby,*
5  *Inc.* 477 U.S. 242, 248 (1986), *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.
6  1988).

7              **IV.    <u>CONCLUSION</u>**

8      On the basis of the foregoing points and authorities, Plaintiff Sheryl Moulton respectfully
9  requests that this Court deny Defendants' motion in its entirety.

10     Defendant Kern & Gayle A. Kern, Ltd. were properly served pursuant to both state and
11 federal law and is so evidenced.

12     Defendants' significant and systematic contacts with California are continuous such that
13 Defendants could anticipate being hailed into court for any and all causes of action in California.
14 In any event, Defendants' significant contacts with California and this district are related to the
15 Plaintiff's cause of action such that the maintenance of limited jurisdiction over Defendants'
16 comports with fair play and substantial justice.

17     In addition, the balance of factors does not weigh in favor of transferring this action to
18 the District of Nevada. Although it would be more convenient for Defendants to litigate in
19 Nevada, California and California Lakeside Plaza homeowners has a strong interest in seeing this
20 Complaint to its conclusion, and the equities do not weigh in favor of a transfer. The Nevada
21 court would also lack personal jurisdiction over Plaintiff.

22     Furthermore, the opposition to Defendants' Motion to Dismiss is based on the grounds
23 there are several federal questions in this matter -Fair Debt Collection Practices Act, Racketeer
24 Influenced and Corrupt Organizations Act ("RICO") §§1961, 1962 1964, et seq. causing this
25 Court to have proper jurisdiction.  Plaintiff's other causes of action include injunction relief,
26 declaratory relief, breach of contract, retaliation, non-uniform enforcement, tortious interference
27 with real estate sale, breach of fiduciary duty, conversion, defamation, extortionate extension of

28

credit, fraud, conspiracy to defraud, fraudulent recordation of an illegal foreclosure/lien, negligence, unconscionability, unfair business practice, Restatement of Torts §§ 549, 552, 652.

Given Defendants' representations to this Court that none of the Defendants conducted any business in California; and that the Defendants had no connection with California, Plaintiff requests that appropriate sanctions be entered against Defendants under this Court's inherent authority.


Dated: January 9, 2008                    Respectfully submitted,

                                          SHERYL MOULTON

                                          By:_____/s/*Sheryl Moulton*_____
                                                  Sheryl Moulton
                                                  In Pro Per

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1

## **DECLARATION**

2

    I, SHERYL MOULTON, declare as follows:

3

    I am the Plaintiff in this matter representing myself pro se. I am responsible for

4

the day-to-day management of this matter. As such, I have personal, firsthand knowledge of the

5

facts stated in this declaration.

6

    I declare under penalty of perjury under the laws of the United States of America that the

7

foregoing is true and correct, and that this declaration was executed January 9, 2008 in

8

Sunnyvale, California.

9

10

*/s/Sheryl Moulton*
Sheryl Moulton

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

– 53 –

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

**PROOF OF SERVICE**

I, the undersigned, declare that I am over the age of 18, and am not a party to this action. I am employed by:_____PO Box 223642 Carmel, CA  93922_____
_____

On the date below I served a copy, with all exhibits, of the following document(s):

**PLAINTIFF MOULTON'S CONSOLIDATED: NOTICE AND (1) MOTION FOR LEAVE TO AMEND COMPLAINT, (2) MOTION TO DISQUALIFY DEFENDANTS' LEGAL COUNSEL; AND (3) MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, AND EXHIBITS**

on the interested part in this action by placing a true copy thereof addressed to the following:

**SEE ATTACHED SERVICE LIST**

☒ **BY ELECTRONIC MAIL TRANSMISSION (E-MAIL).** I caused a true copy of the foregoing document(s) to be transmitted to each of the parties on the attached service list at the email address as last given by that person on any document which he or she has filed in this action and served upon this office.

☒ **BY ECF.** I caused such documents to be e-filed with the Court which were then served via the ECF filing system.

☐ **BY REGULAR MAIL.** I caused such envelopes to be deposited in the United States mail, at Reno, Nevada with postage thereon fully prepaid, individually addressed to the parties as indicated on the attached service list. I am readily familiar with the practice of collection and processing correspondence in mailing. It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to. (Fed R. Civ. P. 5(b)(2)(B).

☐ **BY FACSIMILE TRANSMISSION.** I caused a true copy of the foregoing document(s) to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

☐ **BY PERSONAL SERVICE:** I caused to be delivered such envelope by hand to the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 9, 2008

_____
/ s / *John Cowell*
John Cowell

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE; LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA

1

**SERVICE LIST**

2

3

Gayle A. Kern                                    Joy Rochelle Graber
4      5421 Kietzke Lane, Suite 200                     Attorney at Law
       Reno, Nevada  89511                              Lemons Grundy & Eisenberg
5      Email: gaylekern@kernltd.com                     6005 Plumas St #300
                                                        Reno, NV 89519
6
       Douglas Alson Sears
7      Matheny Sears Linkert & Jaime
       3638 American River Drive
8      Sacramento, CA 95864
       Email: dsears@mathenysears.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS GAYLE A. KERN'S AND GAYLE A. KERN, LTD.'S
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS FOR INSUFFICIENCY OF SERVICE;
LACK OF PERSONAL JURISDICTION; AND IMPROPER VENUE; OPPOSITION TO JOINDER IN
MOTION TO DISMISS OF DEFENDANTS CHRISTENSEN, GRADY, JOSEPH, PERAU AND SVIHLA