SHERYL MOULTON
IN PRO PER
P.O. Box 223581
Carmel, CA  93922
Telephone: (408) 840-2907

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

SHERYL MOULTON, individually and on behalf of all others similarly situated,

        Plaintiffs,

   vs.

EUGENE BURGER MANAGEMENT CORPORATION, a California Corporation; EUGENE J. BURGER; KEVIN BERG; KAREN BRIGG; PHIL FRINK & ASSOCIATES, INC.; PHILLIP E. FRINK; GAYLE A. KERN, LTD; GAYLE A. KERN; ULLA CHRISTENSEN, both as individual and Lakeside Plaza Board Director; MICHAEL GRADY, both as individual and Lakeside Plaza Board Director; DANIEL JOSEPH, both as individual and Lakeside Plaza Board Director; FRANK A. PERAU, both as individual and Lakeside Plaza Board Director; RICH SVIHLA, both as individual and Lakeside Plaza Board Director; LAKESIDE PLAZA CONDOMINIUM ASSOCIATION; and DOES 1-500.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV07-05861 JW

**[AMENDED]**

# EMERGENCY

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

[Code Civ. Proc. §§526, 527, 528]; or provisional [Civ. Code §3420;

**EXPEDITED CONSIDERATION REQUESTED – Illegal Home (Non-Judicial) Foreclosure Sale Scheduled February 6, 2008**

– 1 –

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1  **TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

2          Plaintiff, today, January 31, 2008, attempted to obtain a payoff amount from the

3  Defendants regarding the HOA foreclosure/special assessment matter. Defendants refuse to

4  provide Plaintiff a payoff amount.

5          In fact, the last correspondence (received today, January 31, 2008 from Defendant Phil

6  Frink) *See* Exhibit #6 – states he is waiting for co-defendant, Gayle Kern, Esq. to provide a

7  payoff amount. Defendants have scheduled to sell Plaintiff's home by way of non-judicial

8  foreclosure WEDNESDAY, FEBRUARY 6, 2008, and yet, they refuse to provide a payoff

9  amount.

10          It is Plaintiff's contention Defendants' failure to provide a payoff is simply part of their

11  scam to illegally foreclose on homes and reap huge profits from this criminal activity. Plaintiff

12  has plenty of evidence proving Defendants (specifically Gayle Kern, Phil Frink, and Eugene

13  Burger Management Corporation) have foreclosed on many other homeowners in this same

14  manner.

15          Plaintiff contends the fact Defendants have provided varying payoff amounts, and refuse

16  to provide a payoff amount, is a CLEAR VIOLATION of Fair Debt Collection Practices Act. It

17  is clear this Court is the only means to prevent this illegal foreclosure sale scheduled for

18  Wednesday, February 6 -as Defendants are operating in BAD FAITH by refusing Plaintiff a

19  payoff amount to prevent the foreclosure sale of her home scheduled for Wednesday, February 6.

20          Plaintiff respectfully requests this Court to grant her Ex Parte Temporary Restraining

21  Order enjoining all defendants, and its agents, servants, employees, officers, representatives,

22  successors, partners, assigns, and any and all persons acting in concert or participating with

23  them, from selling and/or foreclosing on Plaintiff's home that is scheduled for Wednesday,

24  February 6.

25

26

27

28

[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION

Plaintiff apologizes to this Court for delay of this motion, however, Plaintiff just became aware only a few days ago of the impending illegal foreclosure sale of her home scheduled for February 6. *See* Exhibit 1. Plaintiff pro se has been suffering from bronchitis/flu. *See* Docket #46, Exhibit 1.

Plaintiff pro se, hereby, applies ex parte for a Temporary Restraining Order, and Order to Show Cause Re: Preliminary Injunction, enjoining Defendants from selling her home by means of non-judicial foreclosure.

Should this Court grant Plaintiff's Temporary Restraining Order, this Court will also be protecting the interests of 2 security lienholders - Chase Mortgage and a California security interest holder, and the interest of Plaintiff's tenant who cannot be displaced by this illegal foreclosure scam.

The Court inquired why Plaintiff has yet to serve California defendants Eugene Burger[1], Eugene Burger Corporation and Karen Brigg – there is good cause as Plaintiff had previously filed *In Forma Pauperis*, which was denied by this Court. Plaintiff does not <u>yet</u> have financial means to have these California defendants served. Plaintiff is medically disabled, has been unemployed for the past year, earns income of less than $1,000 per month, and is in debt over $130,000 (including mortgage). Her income is less than $1,000 monthly, and yet, she runs negative nearly $2,000 monthly for mortgage, rent, legal costs and fees, and bills. Plaintiff moved out of her condo several months ago due to threats by some of the defendants and is not only paying a mortgage, HOA dues, but is also paying rent. Plaintiff will serve remaining California defendants when she has the financial means to do so.

---

[1] Eugene Burger is a property manager who is no stranger to the Ninth Circuit. Eugene Burger has been up on federal criminal indictments in 1999 U.S. District Court California Northern District (San Francisco) CRIMINAL DOCKET FOR CASE #: 3:99-cr-00439-SI-ALL for including but not limited to: six counts of theft from a program receiving federal funds and aiding and abetting (18 U.S.C. § 666(a)(1)(A) & § 2); six counts of money-laundering and aiding and abetting in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and § 2; thirty-three counts of violating the Anti-Kickback Act and aiding and abetting (41 U.S.C. § 53 and 18 U.S.C. § 2); and one count of obstruction of justice and aiding and abetting in violation of 18 U.S.C. § 1505 and § 2.

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1      Plaintiff Sheryl Moulton ("Plaintiff" or "Moulton") applies ex parte to this Court for a

2 temporary restraining order and preliminary injunction enjoining defendants Eugene Burger

3 Management Corporation, a California Corporation; Eugene J. Burger; Kevin Berg; Karen

4 Brigg; Phil Frink & Associates, Inc.; Phillip E. Frink; Gayle A. Kern, Ltd; Gayle A. Kern; Ulla

5 Christensen, both as individual and Lakeside Plaza Board Director; Michael Grady, both as

6 individual and Lakeside Plaza Board Director; Daniel Joseph, both as individual and Lakeside

7 Plaza Board Director; Frank A. Perau, both as individual and Lakeside Plaza Board Director;

8 Rich Svihla, both as individual and Lakeside Plaza Board Director; Lakeside Plaza

9 Condominium Association; and Does 1-500, and its agents, servants, employees, officers,

10 representatives, successors, partners, assigns, and any and all persons acting in concert or

11 participating with them (collectively, "Defendants"), from non-judicially foreclosing upon the

12 Plaintiff's home, located at 1000 Beck Street #366, Reno, Nevada.

13      Because the homeowners' association assessment is illegal as a matter of law, Plaintiff

14 should be preliminarily and permanently enjoined from proceeding with this foreclosure.

15      This application is based upon the attached memorandum of points and authorities,

16 declaration of plaintiff, and such other and further relief, both oral and documentary as may be

17 considered at time of hearing.

18

19

20 Dated: January 31, 2008                Respectfully submitted,

21                                 SHERYL MOULTON

22                                 By:_____*/s/Sheryl Moulton*_____

23                                   Sheryl Moulton

24                                   In Pro Per

25

26

27

28

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION**
2  **FOR ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION AND**
3  **TEMPORARY RESTRAINING ORDER**
4
5  **I.    STATEMENT OF FACTS**
6        Plaintiff, today, January 31, 2008, attempted to obtain a payoff amount from the
7  Defendants regarding the HOA foreclosure/special assessment matter. Defendants refuse to
8  provide Plaintiff a payoff amount.
9        In fact, the last correspondence (received today, January 31, 2008 from Defendant Phil
10 Frink) *See* Exhibit #6 – states he is waiting for co-defendant, Gayle Kern, Esq. to provide a
11 payoff amount. Defendants have scheduled to sell Plaintiff's home by way of non-judicial
12 foreclosure WEDNESDAY, FEBRUARY 6, 2008, and yet, they refuse to provide a payoff
13 amount.
14       It is Plaintiff's contention Defendants' failure to provide a payoff is simply part of their
15 scam to illegally foreclose on homes and reap huge profits from this criminal activity. Plaintiff
16 has plenty of evidence proving Defendants (specifically Gayle Kern, Phil Frink, and Eugene
17 Burger Management Corporation) have foreclosed on many other homeowners in this same
18 manner.
19       Plaintiff contends the fact Defendants have provided varying payoff amounts, and refuse
20 to provide a payoff amount, is a CLEAR VIOLATION of Fair Debt Collection Practices Act. It
21 is clear this Court is the only means to prevent this illegal foreclosure sale scheduled for
22 Wednesday, February 6 -as Defendants are operating in BAD FAITH by refusing Plaintiff a
23 payoff amount to prevent the foreclosure sale of her home scheduled for Wednesday, February 6.
24       Plaintiff respectfully requests this Court to grant her Ex Parte Temporary Restraining
25 Order enjoining all defendants, and its agents, servants, employees, officers, representatives,
26 successors, partners, assigns, and any and all persons acting in concert or participating with
27 them, from selling and/or foreclosing on Plaintiff's home that is scheduled for Wednesday,
28 February 6.

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1    Plaintiff apologizes to this Court for delay of this motion, however, Plaintiff just became

2    aware only a few days ago of the impending illegal foreclosure sale of her home to take place

3    February 6. *See* Exhibit 1. Plaintiff pro se has been suffering from bronchitis/flu. *See* Docket

4    #46, Exhibit 1.

5    This application is made by Plaintiff Sheryl Moulton who is medically disabled and

6    living on a limited monthly income. Ms. Moulton's only asset is her home located at 1000 Beck

7    St. #366, Reno, Nevada, where she has lived for nearly 2 years. Plaintiff seeks by this application

8    to stop the non-judicial foreclosure sale of her home over an illegal special assessment by

9    Lakeside Plaza Condominium Association.

10    In November 2005, a deed of trust condo rider which was placed on her home in by

11    defendant Lakeside Plaza Condominium Association. *See* Exhibit 2.

12    In 2006, Defendants Lakeside Plaza Condominium Association, and its board directors,

13    allegedly on advice of legal counsel, Gayle Kern, decided to assess homeowners nearly $1/2

14    million. The nearly $1/2 million assessment was made without a homeowner vote as required by

15    Lakeside Plaza CC&Rs *See* Exhibit 3, state law (governor's veto of assessments without

16    homeowner vote) *See* Exhibit 4, and an arbitration decision ruling that assessments <u>require</u>

17    homeowner vote. *See* Exhibit 5. There was <u>NO</u> homeowner vote to allow for the $1/2 million

18    assessment.

19    Plaintiff contends she will prevail on the merits of this case and should be granted a

20    temporary restraining order against the non-judicial foreclosure sale of her home scheduled for

21    February 6. Plaintiff contends she will prevail on the merits of this case for the following:

22    injunctive and declaratory relief, breach of contract, retaliation, non-uniform enforcement,

23    tortious interference with real estate sale, breach of fiduciary duty, conversion, defamation,

24    extortionate extension of credit, Fair Debt Collection Practices Act 15 U.S.C**.** §1692, et seq. ,

25    fraud, conspiracy to defraud, fraudulent recordation of an illegal foreclosure/lien, negligence,

26    RICO Act U.S.C. §§1961, 1962 1964, et seq. violations, unconscionability, unfair business

27    practice, and Restatement Of Torts §§ 549*,* 552, 652.

28

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1    Furthermore, the assessment and non-judicial foreclosure are unequally enforced against

2    Plaintiff, but not other homeowners – Plaintiff has witnesses and other evidence to this effect.

3    Defendants' actions constitute fraud. This is fraud – and it is illegal. That is why Plaintiff

4    disputes this assessment and non-judicial foreclosure sale by Lakeside Plaza Condominium

5    Association.

6    The extraordinary relief is sought in this application because Defendant Lakeside Plaza

7    seeks to non-judicially foreclose on Plaintiff's home for an amount yet to be validated as

8    required by Fair Debt Collection Practice Act. Defendants have provided Plaintiff many various

9    discrepant quotes from $2,205.22 *See* Exhibit 1 to up to $4,000 (*See* Defendants' Motion to

10   Dismiss Page 6, 23) all without any verification or itemization as <u>required</u> by Fair Debt

11   Collection Practices Act.

12   Because the homeowners' association assessment is illegal as a matter of law, Plaintiff

13   should be preliminarily and permanently enjoined from proceeding with this foreclosure.

14   Plaintiff is also seeking damages against Defendants for conspiracy to defraud her, fraud

15   in fact for a fraudulent lien and foreclosure. She is seeking permanent injunction and restitution

16   against Defendants for unfair business practices.

17

18   **II.    LEGAL STANDARD**

19   The Ninth Circuit has stated that "the moving party may meet its burden by

20   demonstrating either:

21       (1) a combination of probable success on the merits and the
22       possibility of irreparable injury or
         (2) that serious questions are raised and the balance of hardships
23       tips sharply in its favor." <u>Los Angeles Mem'l Coliseum Comm'n
         v. Nat'l Football League</u>, 634 F.2d 1197, 1201 (9th Cir. 1980).

24

25       These formulations are not different tests but represent two points
         on a sliding scale in which the degree of irreparable harm increases
26       as the probability of success on the merits decreases." <u>Big Country
         Foods, Inc. v. Bd. of Educ. of the Anchorage School Dist</u>., 868
27       F.2d 1085, 1088 (9th Cir. 1989).

28

– 7 –

1     Federal Rule of Civil Procedure 65 allows district courts the discretion to grant

2  preliminary relief prior to the adjudication of the underlying dispute Quince Orchard Valley

3  Citizens Assoc., Inc. v. Hodel, 872 F.2d 75, 78 (4th Cir.1989). "The standard for issuing a

4  temporary restraining order is identical to the standard for issuing a preliminary injunction."

5  Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc., 236 F. Supp. 2d 1152, 1154 (D. Haw.

6  2002).

7     In determining whether to grant a temporary restraining order, the court considers the

8  following factors:

9         (1)      the likelihood of plaintiff's success on the merits;

10        (2)      the possibility of plaintiff's suffering irreparable injury if relief is not granted;

11        (3)      the extent to which the balance of hardships favors the respective parties; and

12        (4)      in certain cases, whether the public interest will be advanced by the provision

13                 of preliminary relief. United States v. Odessa Union Warehouse Co-op, 833

14                 F.2d 172, 174 (9th Cir. 1987).

15

16        In Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193-95 (4th Cir.1977), the

17  Fourth Circuit established the standard for preliminary relief. The Blackwelder hardship

18  balancing test requires that the court consider:

19        (1)      the likelihood of irreparable harm to the movant if the preliminary injunction

20                 is denied;

21        (2)      the likelihood of harm to the nonmovant if the requested relief is granted;

22        (3)      the likelihood that the movant will succeed on the merits; and

23        (4)      public interest.

24

25        Under the four-part inquiry, "the first two factors regarding the likelihood of irreparable

26  harm to the plaintiff if [the preliminary injunction is] denied, and of the harm to the defendant if

27  [the injunction is] granted are most important." Manning v. Hunt 119 F.3d 254, 263 (4th. Cir.

28  1997)

– 8 –

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1

2  **III.    ARGUMENT**

3      The Plaintiff is entitled to a temporary restraining order because she has demonstrated a

4  likelihood of success on the merits as well as a possibility of irreparable harm. Each of these

5  factors is considered in turn.

6

7  **A.    PLAINTIFF SATISFIES THE TEST FOR AN INJUNCTION**

8      In determining whether to grant a preliminary injunction the court considers the

9  probability of the plaintiff's success on the merits, and whether a greater injury will result to the

10  defendants in granting the injunction than to the plaintiff in refusing it.  Continental Baking Co.

11  v. Katz, 68 Cal.2d 517, 67 Cal. Rptr. 761, 771 (1968).  The balance of injuries is the more

12  important factor, as the Supreme Court made clear in Continental:

13          In the last analysis, the trial court must determine which party is
            the more likely to be injured by the exercise of its discretion . . .
14          [citation] and it must then be exercised in favor of that party
            [citation]. Continental, above, 65 Cal. Rptr. at 771.
15

16      Freeman v. Cavazos, 923 F.2d 1434, 1437 (11th Cir. 1991). Accord Ruiz v. Estelle, 650

17  F.2d 555, 565 (5th Cir. 1981), (per curiam), cert. denied, 460 U.S. 1042 (1983); see also Pine

18  Ridge Recycling, Inc., et al. v. Betts County Georgia, et al., 874 F. Supp. 1383, 1386 (M.D. Ga.

19  1995). Where "'the balance of the equities identified in factors 2, 3, and 4 [above] weighs heavily

20  in favor of granting the stay,'" the movant can satisfy the first factor by showing it has a

21  "'substantial case on the merits.'" Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986),

22  cert. denied, 479 U.S. 889 (1986) (quoting Ruiz v. Estelle, 650 F.2d at 565); accord ("[a]n order

23  maintaining the status quo is appropriate when a serious legal question is presented, when little if

24  any harm will befall other interested persons or the public, and when denial of the order would

25  inflict irreparable injury on the movant.") Ruiz v. Estelle, 650 F.2d at 565, (quoting Washington

26  Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977)).

27  Such is the case here.

28

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS
AND AUTHORITIES; DECLARATION**

1  **B.      LIKELIHOOD OF IRREPARABLE HARM TO PLAINTIFF WITHOUT THE**

2  **PRELIMINARY INJUNCTION**

3          The court finds that there is a possibility that the Plaintiff will suffer irreparable harm if

4  injunctive relief does not issue, such that the Plaintiff has satisfied his burden on this point. *See*

5  Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001)

6  ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding

7  of the possibility of irreparable harm."); *see also* Rodeo Collection, Ltd. v. West Seventh, 812

8  F.2d 1215, 1220 (9th Cir. 1987)

9          Generally, "irreparable injury is suffered when monetary damages are difficult to

10 ascertain or are inadequate." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable

11 Operating Co., 22 F.3d 546, 551 (4th Cir.1994) (quoting Danielson v. Local *275,* 479 F.2d 1033,

12 1037 (2d Cir.1973)). The Fourth Circuit has noted that, "Where the harm suffered by the moving

13 party may be compensated by an award of money damages at judgment, courts generally have

14 refused to find that harm irreparable." Hughes Network Sys., Inc. v. InterDigital Commc'ns

15 Corp., 17 F.3d 691, 694 (4th Cir.1994). However, "[W]hen the failure to grant preliminary relief

16 creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the

17 irreparable injury prong is satisfied." Multi-Channel, 22 F.3d at 552. (citing Merrill Lynch,

18 Pierce, Fenner & Smith v. Bradley, 756 F.2d 1048, 1055 (4th Cir.1985)). The Fourth Circuit has

19 also noted that, "[E]ven where a harm could be remedied by money damages at judgment,

20 irreparable harm may still exist where the moving party's business cannot survive absent a

21 preliminary injunction." Hughes, 17 F.3d at 694.

22          In this case, Plaintiff alleges that without an injunction or temporary restraining order,

23 Plaintiff will be irreparably damaged by the pending foreclosure sale which could result in the

24 loss of her home and the eviction of her tenant.

25          In addition, Plaintiff can show that foreclosure would, "be traceable to an action by

26 defendants which the court could prevent by the exercise of its remedial powers." Little Earth of

27 United Tribes, Inc. v. United States Dept. of Housing and Urban Development, 584 F.Supp.

28

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1287, 1289 (D.C.Minn.1983). In <u>Little Earth Tribes,</u> the District Court held that a residents'

council had standing to seek an injunction against a foreclosure sale. *Id* . The Court stated that,

> The question is not ⋯ whether the tenants will be better off if
> foreclosure occurs; the question is, rather, if the threatened injury
> occurs, i.e., foreclosure and eviction, will it be traceable to an
> action by defendants which the court could prevent by the exercise
> of its remedial powers? *Id.*

The same principle applies in the instant case.

## C.    THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION RESTRAINING DEFENDANTS FROM SELLING PLAINTIFF'S HOME

California Code of Civil Procedure section 527(a) provides:

An injunction may be granted at any time before judgment upon a verified complaint, or upon

affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that

sufficient grounds exist.

Under this standard, a preliminary injunction should be issued in the present case.

As Plaintiff is likely to prevail on the merits in this action.  Moreover, concerning the hardships,

defendants will not be harmed by the issuance of the preliminary injunction.  Defendants'

financial interest will still be secure because defendant Lakeside Plaza Condominium

Association allegedly has security interest by way of the deed of trust condo rider recorded in

November 2005.

On the other hand, if the injunction does not issue, Plaintiff will suffer irreparable injury.

Her tenant will be evicted, and as a result, Plaintiff will risk a drastic downward turn in the

quality of her life, to the detriment of her physical health. No amount of monetary relief could

remedy that loss.

***The Process Due Must Be Commensurate with the Importance of the Interest at Stake, and No Property Interest is More Important than Home Ownership.***

Due process, as guaranteed by both the United States Constitution requires "at a

minimum" that the "deprivation of life, liberty or property by adjudication be preceded by notice

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1    and opportunity for hearing appropriate to the nature of the case." <u>Mullane v. Cent. Hanover</u>

2    <u>Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950); *see also* <u>Joint Anti-Fascist Comm. v. McGrath</u>, 341

3    U.S. 123, 170-72 (1951) (Frankfurter, J., concurring)

4         In <u>Mullane</u>, the Supreme Court held that:

5              [A]n elementary and fundamental requirement in *any* proceeding
6              which is to be accorded finality is notice reasonably calculated,
               under all circumstances, to apprise interested parties of the
7              pendency of the action and afford them an opportunity to present
               their objections." 339 U.S. at 314 (emphasis added).
8

9         Plaintiff did not receive proper notice of the impending foreclosure sale and discovered it

10   only a few days ago. Furthermore, Plaintiff has reason to believe that the other 2 security holders

11   – Chase Mortgage and the California security holder never received proper notice of the

12   impending foreclosure sale. This violates the Fourteenth Amendment Constitutional right to due

13   process.

14              The means employed must be such as one desirous of actually
               informing the absentee might reasonably adopt to accomplish it,"
15             that is, they must be "reasonably certain to inform those affected.
               *Id.* at 315.
16

17        Framed in terms of the <u>Mullane</u> standard, the question here is this: Would a reasonable

18   person who really wanted to make sure that Plaintiff received notice and a hearing before her

19   house was sold have done something more than what the defendants did here? Would a

20   reasonable person who had sent notices of the sale by regular and certified mail (at the same time

21   and to the same address), take additional steps when the certified mail was returned unclaimed?

22   <u>Jones v. Flowers</u> holds that the answer is yes—a reasonable person would have done more—and,

23   specifically, a reasonable person would have taken additional steps to notify a homeowner when

24   a notice sent by certified mail was returned unclaimed. 547 U.S. at 229-30. <u>Jones</u> holds that such

25   efforts are "especially" necessary "when, as here, the subject matter of the letter concerns such

26   an important and irreversible prospect as the loss of a house." 547 U.S. at 230. 3 *See* P. Borchers,

27   <u>Jones v. Flowers: An Essay on A Unified Theory of Procedural Due Process</u>, 40 Creighton L.

28   Rev. 343, 349 (2007):

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1
2
3
4
5
6
7

[T]he <u>Mathews</u> cost-benefit analysis is now part of the
constitutional standard for notice. Although the <u>Jones</u> Court did not
cite <u>Mathews</u>, <u>Jones's</u> holding that better efforts are required
especially when 'the subject matter of the letter concerns such an
important and irreversible prospect as the loss of a house' imports
that framework. In other words, the Court was saying . . . that it
would have been a different case had it involved a twenty-five
dollar parking ticket rather than $60,000 worth of equity in a
home. The critical insight of <u>Mathew</u>s is that more is required
when a lot is at stake and there is much room for disagreement.

8

9   **D.      LIKELIHOOD OF HARM TO THE DEFENDANTS WITH THE INJUNCTION**

10      Plaintiff alleges that the likelihood of harm to the Defendants is minimal. Plaintiff argues

11   that a preliminary injunction would only mean a delay in the foreclosure sale date in order to first

12   determine the validity of the nearly $1/2 million assessment.

13      After weighing the irreparable harm to Plaintiff with the harm to Defendants, the balance

14   favors Plaintiff. <u>Blackwelder Furniture Co. v. Seilig Mfg. Co.</u>, 550 F.2d at 195 (4th Cir. 1977)

15

16   ***Plaintiff Will Suffer Injury if the Court Does Not Issue an Injunction; Defendants Will Not***

17   ***Suffer Irreparable Injury if it Does Issue an Injunction.***

18      Defendants' ongoing violations of the law pose a continuing threat to Plaintiff and other

19   homeowners, and Plaintiff's tenant. Plaintiff is simply requesting this Court enjoin Defendants

20   from engaging in unlawful business practices. Defendants cannot plausibly argue that their

21   interest in continuing to operate without complying with California law and dissipating funds

22   obtained by their violation of the law outweighs the interest of the general public in being

23   protected from such unlawful business practices and in obtaining restitution.

24
25
26
27
28

– 13 –

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS
AND AUTHORITIES; DECLARATION**

1    Even if Defendants could offer evidence demonstrating that they would suffer grave or
2 irreparable harm from a preliminary injunction, and assuming that Defendants could prevail in
3 the balancing of the harms, the Court may nonetheless issue a preliminary injunction. As long as
4 "it appears fairly clear that the plaintiff will prevail on the merits, a trial court might legitimately
5 decide that an injunction should issue even though the plaintiff is unable to prevail in a balancing
6 of the probable harms." (IT Corp. v. County of Imperial, *supra*, 35 Cal.3d at pp.72-73.)
7 It is more than "fairly clear" that Plaintiff will prevail on the merits at trial because

8    Defendants are openly and directly in violation of federal and state laws. Defendants have
9 used United States Postal Service to mail Lakeside Plaza homeowners (a large percentage of
10 them are California residents) fraudulent bills for a nearly $1/2 million special assessment that
11 was never approved by homeowners. This constitutes mail fraud.

12    Despite any alleged harm Defendants might suffer, a temporary restraining order and
13 order to show cause re: preliminary injunction should be issued to stop their illegal practices.

14

15 **F.    PLAINTIFF WILL PREVAIL ON THE MERITS IN THIS ACTION UNDER THE**
16 **LEGAL THEORIES PRESENTED**

17    This ex parte application for the temporary restraining order and preliminary injunction is
18 being directed at defendant Lakeside Plaza Condominium Association and "Defendants".

19    Plaintiff will likely succeed on her claim of Fair Debt Collection Practices Act (FDCPA),
20 15 U.S.C. §§ 1692-1692p, §§ 801-819, injunctive and declaratory relief, breach of contract,
21 retaliation, non-uniform enforcement, tortious interference with real estate sale, breach of
22 fiduciary duty, conversion, defamation, extortionate extension of credit, fraud, conspiracy to
23 defraud, fraudulent recordation of an illegal foreclosure/lien, negligence, RICO Act U.S.C.
24 §§1961, 1962 1964, et seq. violations, unconscionability, unfair business practice, and
25 Restatement Of Torts §§ 549*, 552, 652.

26    This dispute centers around whether the nearly $1/2 million special assessment is valid,
27 which the Defendants are foreclosing under – this assessment was never approved by
28 homeowners (as required by Lakeside Plaza CC&Rs and federal and state law).

– 14 –

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS
AND AUTHORITIES; DECLARATION**

1    The Court should find, however, that Plaintiff has alleged facts which provide at least a

2    " 'question[ ] to the merits so serious, substantial, difficult and
3    doubtful, as to make them fair ground for litigation and thus for
     more deliberative investigation.' " <u>Blackwelder</u>, 550 F.2d at 195
4    (quoting <u>Hamilton Watch Co.</u>, 206 F.2d at 740).

5    Plaintiff has therefore made a sufficient showing of a likelihood of success on the merits.

6

7    **G.    THE PUBLIC INTEREST**

8         The "public interest" aspect of the <u>Blackwelder</u> test encompasses the need to maintain the

9    status quo. <u>Richmond Medical Center for Women v. Gilmore</u>, 11 F.Supp.2d 795, 828

10   (E.D.Va.1998). In the present case, this need favors the Plaintiff. The Defendants will suffer little

11   harm under a preliminary injunction that at most delays their foreclosure action.

12        Plaintiff, however, could suffer much more severe harm in the event of the foreclosure

13   sale. In other words, maintaining the status quo until the validity of the $1/2 million assessment

14   is determined will only inflict minimal harm to Defendants while potentially avoiding much

15   more severe harm to Plaintiff. This is a public interest case as the outcome of this case will affect

16   many other homeowners (many of them California residents).

17

18   **H.    NO UNDERTAKING SHOULD BE REQUIRED**

19        While a bond generally is required on the issuance of an injunction, poor litigants are

20   exempt from the requirement, in the court's discretion.  As stated in Code of Civil Procedure

21   section 995.240:

22        The court may, in its discretion, waive a provision for a bond in
23        any action or proceeding and make such orders as may be
          appropriate as if the bond were given, if the court determines that
24        the principal is unable to give the bond because the principal is
          indigent and is unable to obtain sufficient sureties, whether
25        personal or admitted surety insurers. In exercising its discretion the
          court shall take into consideration all factors it deems relevant,
26        including but not limited to the character of the action or
          proceeding, the nature of the beneficiary, whether public or
27        private, and the potential harm to the beneficiary if the provision
          for the bond is waived. See also:  <u>Conover v. Hall</u> (1974) 11 Cal.3d
28        842, 851.

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS
AND AUTHORITIES; DECLARATION**

1    The declaration of plaintiff filed herein shows that is living on meager monthly income

2   of less than $1,000.  Accordingly, plaintiff has demonstrated sufficient indigence to merit waiver

3   of bond. Moreover, an examination of the factors deemed relevant to waiver of bond in CCP

4   section 995.240 above, also mandates a wavier of bond.

5

6   *Harm to Beneficiary if Bond is Waived*

7    In addition, waiver of bond is mandated because no harm will come to the Lakeside Plaza

8   Condominium Association and the Defendants if bond is waived.  Lakeside Plaza Condominium

9   Association's interest will be protected without a bond should it prevail in this action or should

10  they lose.

11   If defendant Lakeside Plaza Condominium Association prevails it will have not lost

12  anything because its recorded deed of trust condo rider will preserve its interest.

13   Thus, a consideration of the elements set forth in CCP section 995.240, as well as

14  equitable considerations, mandates that bond be waived in this action.

15

16  **IV.    CONCLUSION**

17  Based upon the foregoing, Plaintiff respectfully requests that her Ex Parte Application for

18  Temporary Restraining Order, and Order to Show Cause Re: Preliminary Injunction as to

19  Defendants be granted. Based on the record, the Plaintiff has demonstrated both a likelihood of

20  success on the merits and the possibility of irreparable harm. Accordingly, the Plaintiff

21  respectfully requests this Court grant a temporary restraining order and preliminary injunction.

22  For the foregoing reasons, the preliminary and restraining order injunction prayed for should be

23  granted without bond.

24

25  Dated: January 31, 2008                         Respectfully submitted,

26                                                   SHERYL MOULTON

27                                                   By:_____*/s/Sheryl Moulton*_____

28                                                        Sheryl Moulton
                                                         In Pro Per

– 16 –

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1
2
3

**DECLARATION OF SHERYL MOULTON
IN SUPPORT OF EMERGENCY EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION;**

4

I, Sheryl Moulton, declare as follows:

5
6
7
8

1.      I am a pro se Plaintiff, residing in the State of California. At all times relevant hereto, I am responsible for the day-to-day management of this matter. As such, I have personal, firsthand knowledge of the facts stated in this declaration. If called upon to testify, I could and would competently testify to the facts stated herein.

9
10
11

2.      Plaintiff, today, January 31, 2008, attempted to obtain a payoff amount from the Defendants regarding the HOA foreclosure/special assessment matter. Defendants refuse to provide Plaintiff a payoff amount.

12
13
14
15

3.      Tthe last correspondence (received today, January 31, 2008 from Defendant Phil Frink) *See* Exhibit #6 – states he is waiting for co-defendant, Gayle Kern, Esq. to provide a payoff amount. Defendants have scheduled to sell Plaintiff's home by way of non-judicial foreclosure WEDNESDAY, FEBRUARY 6, 2008, and yet, they refuse to provide a payoff amount.

16
17
18
19
20

4.      Plaintiff contends the fact Defendants have provided varying payoff amounts, and refuse to provide a payoff amount, is a CLEAR VIOLATION of Fair Debt Collection Practices Act. It is clear this Court is the only means to prevent this illegal foreclosure sale scheduled for Wednesday, February 6 -as Defendants are operating in BAD FAITH by refusing Plaintiff a payoff amount to prevent the foreclosure sale of her home scheduled for Wednesday, February 6.

21
22
23
24

5.      Plaintiff apologizes to this Court for delay of this motion, however, Plaintiff just became aware only a few days ago of the impending illegal foreclosure sale of her home scheduled for February 6.  *See* Exhibit 1. Plaintiff pro se has been suffering from bronchitis/flu. *See* Docket #46, Exhibit 1.

25
26
27
28

6.      The Court inquired why Plaintiff has yet to serve California defendants Eugene Burger, Eugene Burger Corporation, and Karen Brigg – there is good cause as Plaintiff had previously filed *In Forma Pauperis*, which was denied by this Court. Plaintiff does not <u>yet</u> have financial means to have these California defendants served. Plaintiff is medically disabled, has been

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1    unemployed for the past year, earns income of less than $1,000 per month, and is in debt over

2    $130,000 (including mortgage). Her income is less than $1,000 monthly, and yet, she runs

3    negative nearly $2,000 monthly for mortgage, rent, legal costs and fees, and bills.

4    7.    Plaintiff moved out of her condo several months ago due to threats by some of the

5    defendants and is not only paying a mortgage, HOA dues, but is also paying rent. Plaintiff will

6    serve remaining California defendants when she has the financial means to do so.

7    8.    In November 2005, a deed of trust condo rider which was placed on her home in by

8    defendant Lakeside Plaza Condominium Association. *See* Exhibit 2.

9    9.    In 2006, Defendants Lakeside Plaza Condominium Association, and its board directors,

10   allegedly on advice of legal counsel, Gayle Kern, decided to assess homeowners nearly $1/2

11   million. The nearly $1/2 million assessment was made without a homeowner vote as required by

12   Lakeside Plaza CC&Rs *See* Exhibit 3, state law (governor's veto of assessments without

13   homeowner vote) *See* Exhibit 4, and an arbitration decision ruling that assessments <u>require</u>

14   homeowner vote. *See* Exhibit 5. There was <u>NO</u> homeowner vote to allow for the $1/2 million

15   assessment.

16   10.   Plaintiff, upon information and belief contends the assessment and non-judicial

17   foreclosure are unequally enforced against Plaintiff, but not other homeowners – Plaintiff has

18   witnesses and other evidence to this effect. That is why Plaintiff disputes this assessment and

19   non-judicial foreclosure sale by Lakeside Plaza Condominium Association.

20   11.   The extraordinary relief is sought in this application because Defendant Lakeside Plaza

21   seeks to non-judicially foreclose on Plaintiff's home for an amount yet to be validated as

22   required by Fair Debt Collection Practice Act. Defendants have provided Plaintiff many various

23   discrepant quotes from $2,205.22 *See* Exhibit 1 to up to $4,000 (*See* Defendants' Motion to

24   Dismiss Page 6, 23) all without any verification or itemization as <u>required</u> by Fair Debt

25   Collection Practices Act.

26   12.   Plaintiff, upon information and belief contends should this Court grant Plaintiff's

27   Temporary Restraining Order, this Court will also be protecting the interests of 2 security

28

– 18 –

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1   lienholders -  Chase Mortgage and a California security interest holder, and the interest of

2   Plaintiff's tenant who cannot be displaced by this illegal foreclosure scam.

3        I declare under the penalty of perjury that the foregoing is true and correct, and that this

4   declaration was executed January 31, 2008 in Sunnyvale, California.

5

6   _/s/Sheryl Moulton___

7   Sheryl Moulton

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[AMENDED] <u>EMERGENCY</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

I, the undersigned, declare that I am over the age of 18, and am not a party to this action. I am employed by:____ PO Box 223642 Carmel, CA  93922_____
_____

On the date below I served a copy, with all exhibits, of the following document(s):

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

on the interested part in this action by placing a true copy thereof addressed to the following:

### SEE ATTACHED SERVICE LIST

☒ **BY ELECTRONIC MAIL TRANSMISSION (E-MAIL).** I caused a true copy of the foregoing document(s) to be transmitted to each of the parties on the attached service list at the email address as last given by that person on any document which he or she has filed in this action and served upon this office.

☒ **BY ECF.** I caused such documents to be e-filed with the Court which were then served via the ECF filing system.

☐ **BY REGULAR MAIL.** I caused such envelopes to be deposited in the United States mail, at Reno, Nevada with postage thereon fully prepaid, individually addressed to the parties as indicated on the attached service list. I am readily familiar with the practice of collection and processing correspondence in mailing. It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to. (Fed R. Civ. P. 5(b)(2)(B).

☐ **BY FACSIMILE TRANSMISSION.** I caused a true copy of the foregoing document(s) to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

☐ **BY PERSONAL SERVICE:** I caused to be delivered such envelope by hand to the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 31, 2008

_____
/s/*John Cowell*
John Cowell

– 20 –

**[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION**

1

**SERVICE LIST**

2

3   Gayle A. Kern                       Joy Rochelle Graber
4   5421 Kietzke Lane, Suite 200        Attorney at Law
    Reno, Nevada  89511                 Lemons Grundy & Eisenberg
5   Email: gaylekern@kernltd.com        6005 Plumas St #300
                                        Reno, NV 89519
6   Douglas Alson Sears                 (SERVED VIA ECF ONLY
7   Matheny Sears Linkert & Jaime       – NO EMAIL ON FILE WITH COURT)
    3638 American River Drive
8   Sacramento, CA 95864
    Email: dsears@mathenysears.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[AMENDED] EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS
AND AUTHORITIES; DECLARATION